**CLYDE & CO US LLP**
200 Campus Drive
Suite 300
Florham Park, N.J. 07932-0950
(973) 210-6700
Attorneys for Plaintiff, Knights Franchise Systems, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KNIGHTS FRANCHISE SYSTEMS, INC., a Delaware Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>JAIN, INC., an Ohio corporation; ANIL JAIN, an individual; and ASHIMA JAIN, an individual,<br><br>        Defendants. | Civil Action No. 13-<br><br><br>**COMPLAINT** |

Plaintiff Knights Franchise Systems, Inc., by its attorneys, Clyde & Co US LLP, complaining of defendants Jain, Inc., Anil Jain and Ashima Jain, says:

### PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Knights Franchise Systems, Inc. ("KFS") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey.

KFS 13039
1083485v1
1301144

2.     Defendant Jain, Inc., on information and belief, is a corporation organized and existing under the laws of the state of Ohio, with its principal place of business at 38 South Allison Avenue, Xenia, Ohio 45835.

3.     Defendant Anil Jain, on information and belief, is a principal of Jain, Inc. and a citizen of the state of Ohio, residing at 1895 Rich Court, Beaverscreek, Ohio 45432.

4.     Defendant Ashima Jain, on information and belief, is a principal of Jain, Inc. and a citizen of the State of Ohio, residing at 1895 Rich Court, Beaverscreek, Ohio 45432.

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 inasmuch as the plaintiff and all the defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

6.     This Court has personal jurisdiction over Jain, Inc. by virtue of, among other things, section 17.6.3 of the March 26, 2004 franchise agreement by and between Jain, Inc. and KFS (the "Franchise Agreement"), described in more detail below, pursuant to which Jain, Inc. has consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey . . . ."

7.     This Court has personal jurisdiction over Anil Jain and Ashima Jain by virtue of, among other things, the terms of a Guaranty, described in more detail below, pursuant

to which Anil Jain and Ashima Jain acknowledged that they were personally bound by section 17 of the Franchise Agreement.

8.      Venue is proper in this District pursuant to section 17.6.3 of the Franchise Agreement, inasmuch as that provision contains an express waiver by Jain, Inc. of any objection to venue in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Agreements Between The Parties

9.      On or about March 26, 2004, KFS entered into the Franchise Agreement with Jain, Inc. for the operation of a 88-room Knights® guest lodging facility located at 38 South Allison Avenue, Xenia, Ohio 45835, Site No. 13039-99798-3 (the "Facility").  A true copy of the Franchise Agreement is attached hereto as Exhibit A.

10.      Pursuant to section 5 of the Franchise Agreement, Jain, Inc. was obligated to operate a Knights® guest lodging facility for a fifteen-year term.

11.      Pursuant to section 7 and Schedule C of the Franchise Agreement, Jain, Inc. was required to make certain periodic payments to KFS for royalties, system assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, "Recurring Fees").

12.      Pursuant to section 7.3 of the Franchise Agreement, Jain, Inc. agreed that interest is payable "on any past due amount payable to [KFS] under this Agreement at the rate of

1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."

13.     Pursuant to section 3.8 of the Franchise Agreement, Jain, Inc. was required to prepare and submit monthly reports to KFS disclosing, among other things, the amount of gross room revenue earned by Jain, Inc. at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to KFS.

14.     Pursuant to section 3.8 of the Franchise Agreement, Jain, Inc. agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.8 and 4.8 of the Franchise Agreement, Jain, Inc. agreed to allow KFS to examine, audit, and make copies of the entries in these books, records, and accounts.

15.     Pursuant to section 3.10 of the Franchise Agreement, Jain, Inc. was required to obtain and maintain insurance coverage required under the Systems Standards Manual from insurers meeting the standards established in the Manual.

16.     Pursuant to section 11.2 of the Franchise Agreement, KFS could terminate the Franchise Agreement, with notice to Jain, Inc., for various reasons, including Jain, Inc.'s (a) failure to pay any amount due KFS under the Franchise Agreement, (b) failure to remedy any other default of its obligations or warranties under the Franchise Agreement within 30 days after receipt of written notice from KFS specifying one or more defaults under the Franchise Agreement, and/or (c) receipt of two or more notices of default under the Franchise Agreement in any one year period, whether or not the defaults were cured.

- 4 -

17.    Pursuant to section 12.1 of the Franchise Agreement, Jain, Inc. agreed that, in the event of a termination of the Franchise Agreement pursuant to section 11.2, it would pay liquidated damages to KFS in accordance with a formula specified in the Franchise Agreement.

18.    Pursuant to section 17.4 of the Franchise Agreement, Jain, Inc. agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement."

19.    Section 18.1 of the Franchise Agreement specifically set liquidated damages for the Facility at $1,000.00 for each guest room of the Facility Jain, Inc.was authorized to operate at the time of termination.

20.    On or about March 26, 2004, KFS entered into a Satellite Connectivity Services Addendum (the "Satellite Addendum") with Jain, Inc.  A true copy of the Satellite Addendum is attached hereto as Exhibit B.

21.    Pursuant to section 13(c) of the Satellite Addendum, Jain, Inc. agreed that, in the event of a termination of the Satellite Addendum, including by virtue of termination of the Franchise Agreement, it would pay Satellite Addendum Liquidated Damages to KFS in the amount of $1,000.00 within 10 days following the date of termination.

22.     Effective as of the date of the Franchise Agreement, Anil Jain and Ashima Jain provided KFS with a Guaranty of Jain, Inc.'s obligations under the Franchise Agreement. A true copy of the Guaranty is attached hereto as Exhibit C.

23.     Pursuant to the terms of the Guaranty, Anil Jain and Ashima Jain agreed, among other things, that upon a default under the Franchise Agreement, they would "immediately make each payment and perform or cause Franchisee to perform, each unpaid or unperformed obligation of Franchisee under the Agreement."

24.     Pursuant to the terms of the Guaranty, Anil Jain and Ashima Jain agreed to pay the costs, including reasonable attorneys' fees, incurred by KFS in enforcing its rights or remedies under the Guaranty or the Franchise Agreement.

The Defendants' Defaults and Termination

25.     Beginning in 2009, Jain, Inc. repeatedly breached its obligations under the Franchise Agreement by failing to meet its financial and insurance obligations in accordance with the terms of the Franchise Agreement.

26.     By letter dated February 13, 2009, a true copy of which is attached hereto as Exhibit D, KFS advised Jain, Inc. that (a) it was in breach of the Franchise Agreement because it had not obtained, and delivered to KFS, proof of the minimum insurance coverage required by KFS, (b) it had 30 days within which to cure this default in accordance with section 3.10 of the Franchise Agreement, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

27. By letter dated September 24, 2010, a true copy of which is attached hereto as Exhibit E, KFS advised Jain, Inc. that (a) it was in breach of the Franchise Agreement because it owed KFS approximately $27,758.08 in outstanding Recurring Fees, (b) it had 30 days within which to cure this monetary default in accordance with Section 11.1 of the Franchise Agreement, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

28. By letter dated December 9, 2010, a true copy of which is attached hereto as Exhibit F, KFS advised Jain, Inc. that (a) it was in breach of the Franchise Agreement because it owed KFS approximately $33,094.89 in outstanding Recurring Fees, (b) it had 30 days within which to cure this monetary default in accordance with Section 11.1 of the Franchise Agreement, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

29. By letter dated May 31, 2011, a true copy of which is attached hereto as Exhibit G, KFS advised Jain, Inc. that (a) it was in breach of the Franchise Agreement because it owed KFS approximately $41,947.35 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default in accordance with Section 11.1 of the Franchise Agreement, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

30. By letter dated August 26, 2011, a true copy of which is attached hereto as Exhibit H, KFS advised Jain, Inc. that (a) it was in breach of the Franchise Agreement because it had not obtained, and delivered to KFS, proof of the minimum insurance coverage required by

KFS, (b) it had 30 days to cure this default in accordance with section 3.10 of the Franchise Agreement, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

31.    By letter dated October 27, 2011, a true copy of which is attached hereto as Exhibit I, KFS advised Jain, Inc. that (a) it was in breach of the Franchise Agreement because it had not obtained, and delivered to KFS, proof of the minimum insurance coverage required by KFS, (b) it had until November 1, 2011 to cure this default in accordance with section 3.10 of the Franchise Agreement, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

32.    By letter dated November 10, 2011, a true copy of which is attached hereto as Exhibit J, KFS advised Jain, Inc. that (a) it was in breach of the Franchise Agreement because it owed KFS approximately $61,583.96 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default in accordance with Section 11.1 of the Franchise Agreement, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

33.    By letter dated February 22, 2012, a true copy of which is attached as Exhibit K, KFS terminated the Franchise Agreement, effective February 22, 2012, and advised Jain, Inc. that it was required to pay to KFS as liquidated damages for premature termination the sum of $89,000.00 as required under the Franchise Agreement and Satellite Addendum, and all outstanding Recurring Fees through the date of termination.

## FIRST COUNT

34.    KFS repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 33 of the Complaint.

35.    Pursuant to sections 3.8 and 4.8 of the Franchise Agreement, Jain, Inc. agreed to allow KFS to examine, audit, and make copies of Jain, Inc.'s financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

36.    The calculation of the monetary amounts sought by KFS in this action is based on the gross room revenue information supplied to KFS by Jain, Inc. and, to the extent there has been non-reporting, KFS's estimate as to the gross room revenue earned by Jain, Inc.

37.    The accuracy of this estimate cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from Jain, Inc.

**WHEREFORE**, KFS demands judgment ordering that Jain, Inc. account to KFS for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility from the inception through the date of termination of the Franchise Agreement.

## SECOND COUNT

38.    KFS repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 37 of the Complaint.

39.     On February 22, 2012, KFS terminated the Franchise Agreement, effective February 22, 2012, due to Jain, Inc.'s repeated failure to meet its insurance and financial obligations in accordance with the terms of the Franchise Agreement.

40.     Section 12.1 of the Franchise Agreement provides that, in the event of termination of the Franchise Agreement due to action of the Franchisee, Jain, Inc. shall pay liquidated damages to KFS within 30 days of termination.

41.     Section 13(c) of the Satellite Addendum provides that, in the event of a termination of the Satellite Addendum, including by virtue of termination of the Franchise Agreement, Jain, Inc. shall pay Satellite Addendum Liquidated Damages to KFS in the amount of $1,000.00 within 10 days following the date of termination.

42.     As a result of the termination of the Franchise Agreement, Jain, Inc. is obligated to pay KFS liquidated damages in the amount of $89,000.00, as calculated pursuant to sections 12.1 and 18.1 of the Franchise Agreement and section 13(c) of the Satellite Addendum.

43.     Notwithstanding KFS's demand for payment, Jain, Inc. has failed to pay KFS the liquidated damages as required in sections 12.1 and 18.1 of the Franchise Agreement and section 13(c) of the Satellite Addendum.

44.     KFS has been damaged by Jain, Inc.'s failure to pay liquidated damages.

**WHEREFORE**, KFS demands judgment against Jain, Inc. for liquidated damages in the amount of $89,000.00, together with interest, attorneys' fees, and costs of suit.

- 10 -

## THIRD COUNT

45.    KFS repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 44 of the Complaint.

46.    By virtue of the premature termination of the Franchise Agreement, KFS sustained a loss of future revenue over the remainder of the fifteen-year term of the Franchise Agreement.

47.    If the Court determines that Jain, Inc. is not liable to pay KFS liquidated damages as required by sections 12.1 and 18.1 of the Franchise Agreement then, in the alternative, Jain, Inc. is liable to KFS for actual damages for the premature termination of the Franchise Agreement and Satellite Addendum.

48.    KFS has been damaged by Jain, Inc.'s breach of its obligation to operate a Knights® guest lodging facility for the remaining term of the Franchise Agreement.

WHEREFORE, KFS demands judgment against Jain, Inc. for actual damages in an amount to be determined at trial, together with interest, attorneys' fees, and costs of suit.

## FOURTH COUNT

49.    KFS repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 48 of the Complaint.

50.    Pursuant to section 7 and Schedule C of the Franchise Agreement, Jain, Inc. was obligated to remit Recurring Fees to KFS.

51.    Despite its obligation to do so, Jain, Inc. failed to remit certain of the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $72,315.63.

52.    Jain, Inc.'s failure to remit the agreed Recurring Fees constitutes a breach of the Franchise Agreement and has damaged KFS.

**WHEREFORE**, KFS demands judgment against Jain, Inc. for the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $72,315.63, together with interest, attorneys' fees, and costs of suit.

## FIFTH COUNT

53.    KFS repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 52 of the Complaint.

54.    At the time of the termination of the Franchise Agreement, Jain, Inc. was obligated to pay KFS Recurring Fees.

55.    Despite its obligation to do so, Jain, Inc. failed to pay certain of the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $72,315.63.

56.    Jain, Inc.'s failure to compensate KFS constitutes unjust enrichment and has damaged KFS.

**WHEREFORE**, KFS demands judgment against Jain, Inc. for the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $72,315.63, together with interest, attorneys' fees, costs of.

## SIXTH COUNT

57.    KFS repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 56 of the Complaint.

58.    Pursuant to the terms of the Guaranty, Anil Jain and Ashima Jain agreed, among other things, that upon a default under the Franchise Agreement, they would immediately make each payment and perform each obligation required of Jain, Inc. under the Franchise Agreement.

59.    Despite their obligation to do so, Anil Jain and Ashima Jain have failed to make any payments or perform or cause Jain, Inc. to perform each obligation required under the Franchise Agreement.

60.    Pursuant to the Guaranty, Anil Jain and Ashima Jain are liable to KFS for Jain, Inc.'s liquidated damages in the amount of $89,000.00, or actual damages in an amount to be determined at trial, Jain, Inc.'s Recurring Fees due and owing under the Franchise Agreement, in the current amount of $72,315.63.

WHEREFORE, KFS demands judgment against Anil Jain and Ashima Jain for damages in the amount of all liquidated damages or actual damages and Recurring Fees due and owing under the Franchise Agreement, together with interest, attorneys' fees, and costs of suit.

CLYDE & CO US LLP
Attorneys for Plaintiff,
Knights Franchise Systems, Inc.

By: _____
BRYAN P. COUCH

Dated: 9/23/13

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

CLYDE & CO US LLP
Attorneys for Plaintiff,
Knights Franchise Systems, Inc.

By: _____
BRYAN P. COUCH

Dated: 9/23/13

- 14 -

# EXHIBIT A

1134098v1

Location: **Xenia, OH**
Entity No.:_____
Unit No.: _13039_

**KNIGHTS INN
FRANCHISE AGREEMENT**

THIS FRANCHISE AGREEMENT ("Agreement"), dated ___3-26___, 2004, is between KNIGHTS FRANCHISE SYSTEMS, INC., a Delaware corporation ("we", "our" or "us"), and **Jain Inc., a** ___Ohio___ **corporation** ("you"). The definitions of capitalized terms are found in Appendix A. In consideration of the following mutual promises, the parties agree as follows:

1. **License.** We have the exclusive right to license and franchise to you the distinctive "Knights" System for providing transient guest lodging services. We grant to you and you accept the License, effective and commencing on the Opening Date and ending on the earliest to occur of the Term's expiration or a Termination. The License is effective only at the Location and may not be transferred or relocated. You will call the Facility a "Knights Inn." You may adopt additional or secondary designations for the Facility with our prior written consent, which we may withhold, condition, or withdraw on written notice in our sole discretion. You shall not affiliate or identify the Facility with another franchise system, reservation system, brand, cooperative or registered mark during the Term.

2. **Protected Territory.** We will not own, operate, lease, manage, or license anyone but you to operate a Chain Facility in the "Protected Territory", defined in Appendix A from the Effective Date until the earliest to occur of the Term's expiration, a Transfer or a Termination. We may own, operate, lease, manage, franchise or license anyone to operate any Chain Facility located anywhere outside the Protected Territory without any restriction or obligation to you. We may grant Protected Territories for other Chain Facilities that overlap your Protected Territory. You will use any information obtained through the Reservation System to refer guests, directly or indirectly, only to Chain Facilities. This Section does not apply to any Chain Facility located in the Protected Territory on the Effective Date, which we may renew, relicense, allow to expand, or replace with a replacement Facility located within the same trading area having not more than 120% of the guest rooms of the replaced Chain Facility if its franchise with us terminates or is not renewed. The Protected Territory fairly represents the Facility's trading area, and you acknowledge that there are no express or implied territorial rights or agreements between the parties except as stated in this Section.

3. **Your Improvement and Operating Obligations.** Your obligations to improve, operate and maintain the Facility are:

3.1 **Improvements.** You must select and acquire the Location and acquire, equip and supply the Facility in accordance with System Standards. You must provide us with proof that you own or lease the Facility before or within 30 days after the Effective Date. You must begin renovation of the Facility no later than 30 days after the Effective Date. The deadline for completing the pre-opening phase of conversion and renovation, when the Facility must attain a satisfactory pre-

1

opening score under our quality assurance inspection system and be ready to open for business under the System, is 90 days after the Effective Date. All renovations will comply with System Standards, the Approved Plans and any Punch List attached to this Agreement. Your general contractor or you must carry the insurance required under this Agreement during renovation. You must complete the pre-opening renovation specified on the Punch List and the Facility must pass its pre-opening quality assurance inspection and attain a quality assurance score of 350 points before we consider the Facility to be ready to open under the System. You must continue renovation and improvement of the Facility after the Opening Date as the Punch List requires so that the Facility attains a quality assurance score of 370 points on its post-opening quality assurance inspection given within nine (9) months after the Opening Date. We may, in our sole discretion, terminate this Agreement by giving written notice to you (subject to applicable law) if (1) you do not commence or complete the pre-opening or post-opening improvements of the Facility by the dates specified in this Section, or (2) you prematurely identify the Facility as a Chain Facility or begin operation under the System name described in Schedule B in violation of Section 3.3 and you fail to either complete the pre-opening Improvement Obligation or cease operating and/or identifying the Facility under the Marks and System within five days after we send you written notice of default. Time is of the essence for the Improvement Obligation. We may, however, in our sole discretion, grant one or more extensions of time to perform any phase of the Improvement Obligation. You will pay us a non-refundable extension fee of $1.50 per room for each day of any extension of the deadline for completing pre-opening improvements. This fee will be payable to us after each 30 days of the extension. You will pay us the balance of the extension fee outstanding when the Facility opens under the System 10 days after the Opening Date. The grant of an extension will not waive any other default existing at the time the extension is granted.

3.2  **Improvement Plans.** You will create plans and specifications for the work described in Section 3.1 (based upon the System Standards and this Agreement) if we so request and submit them for our approval before starting improvement of the Location. We will not unreasonably withhold or delay our approval, which is intended only to test compliance with System Standards, and not to detect errors or omissions in the work of your architects, engineers, contractors or the like. Our review does not cover technical, architectural or engineering factors, or compliance with federal, state or local laws, regulations or code requirements. We will not be liable to your lenders, contractors, employees, guests, others, or you on account of our review or approval of your plans, drawings or specifications, or our inspection of the Facility before, during or after renovation or construction. Any material variation from the Approved Plans requires our prior written approval. You will promptly provide us with copies of permits, job progress reports, and other information as we may reasonably request. We may inspect the work while in progress without prior notice.

3.3  **Pre-Opening.** You may identify the Facility as a Chain Facility prior to the Opening Date, or commence operation of the Facility under a Mark and using the System, only after first obtaining our approval or as permitted under and strictly in accordance with the System Standards Manual. If you identify the Facility as a Chain Facility or operate the Facility under a Mark before the Opening Date without our express written consent, then in addition to our remedies under Sections 3.1 and 11.2, you will begin paying the Royalty to us, as specified in Section 7.1, from the date you identify or operate the Facility using the Mark. We may delay the Opening Date until you pay the Royalty accruing under this Section.

2

KNIEXC1
146808 10/03

3.4 **Operation.** You will operate and maintain the Facility continuously after the Opening Date on a year-round basis as required by System Standards and offer transient guest lodging and other related services of the Facility (including those specified on Schedule B) to the public in compliance with the law and System Standards. You will keep the Facility in a clean, neat, and sanitary condition. You will clean, repair, replace, renovate, refurbish, paint, and redecorate the Facility and its FF&E as and when needed to comply with System Standards. The Facility will accept payment from guests by all credit and debit cards we designate in the System Standards Manual. You may add to or discontinue the amenities, services and facilities described in Schedule B, or lease or subcontract any service or portion of the Facility only with our prior written consent, which we will not unreasonably withhold or delay.

3.5 **Training.** You (or a person with executive authority) and the Facility's general manager (or other representative who exercises day to day operational authority) will attend the training programs described in Section 4.1 we designate as mandatory for franchisees and/or general managers, respectively. You will train or cause the training of all Facility personnel as and when required by System Standards and this Agreement. You will direct the Facility staff, including the general manager (or your representative if you operate the facility), to attend property opening training. You will pay for all travel, lodging, meals and compensation expenses of the people you send for training programs, the cost of training materials, the fees and other reasonable charges we may impose for training under Section 4.1, and all travel, lodging, meal and facility and equipment rental expenses of our representatives if training is provided at the Facility.

3.6 **Marketing.** You will participate in System marketing programs, including the Directory and the Reservation System. You will obtain and maintain the computer and communications service and equipment we specify to participate in the Reservation System. You will comply with our rules and standards for participation, and will honor reservations and commitments to guests and travel industry participants. You authorize us to offer and sell reservations for rooms and services at the Facility according to the rules of participation and System Standards. You may implement, at your option and expense, your own local advertising. Your advertising materials must use the Marks correctly, and must comply with System Standards or be approved in writing by us prior to publication. You will stop using any non-conforming, out-dated or misleading advertising materials if we so request.

3.6.1 You may participate in any regional marketing, training or management alliance or cooperative of Chain franchisees formed to serve the Chain Facilities in your area. We may assist the cooperative collect contributions. You may be excluded from cooperative programs and benefits if you don't participate in all cooperative programs according to their terms, including making payments and contributions when due.

3.6.2 The Facility must participate in our Chain-wide Internet marketing activities like other marketing programs. You will discontinue any Internet marketing that conflicts, in our reasonable discretion, with Chain-wide Internet marketing activities. You must honor the terms of any participation agreement you sign for Internet marketing. You shall pay when due any fees, commissions, charges and reimbursements relating to Internet marketing activities (i) in which you agree to participate, or (ii) that we designate as mandatory on a Chain-wide basis, provided that the activities carry aggregate fees per transaction of not more than the sum of the

3

full agent commission specified on Schedule C for sales agents, plus 10% of the Chain's reported average daily rate for the preceding calendar year. We may suspend the Facility's participation in Internet marketing activity if you default under this Agreement.

3.7 **Governmental Matters.** You will obtain as and when needed all governmental permits, licenses and consents required by law to construct, acquire, renovate, operate and maintain the Facility and to offer all services you advertise or promote. You will pay when due or properly contest all federal, state and local payroll, withholding, unemployment, beverage, permit, license, property, ad valorem and other taxes, assessments, fees, charges, penalties and interest, and will file when due all governmental returns, notices and other filings. You will comply with all applicable federal, state and local laws, regulations and orders applicable to you and/or the Facility, including those combating terrorism such as the USA Patriot Act and Executive Order 13224.

**3.8 Financial Books & Records; Audits.**

3.8.1 The Facility's transactions must be timely and accurately recorded in accounting books and records prepared on an accrual basis compliant with generally accepted accounting principles of the United States ("GAAP") and consistent with the most recent edition of the Uniform System of Accounts for the Lodging Industry published by the American Hotel & Motel Association, as modified by this Agreement and System Standards. You acknowledge that your accurate accounting for and reporting of Gross Room Revenues is a material obligation you accept under this Agreement.

3.8.2 We may notify you of a date on which we propose to audit the Facility's books and records. You will be deemed to confirm our proposed date unless you follow the instructions with the audit notice for changing the date. You need to inform us where the books and records will be produced. You need to produce for our auditors at the confirmed time and place for the audit the books, records, tax returns and financial statements relating to the Facility for the applicable accounting periods we require under this Agreement and System Standards. If our auditors must return to your location after the first date we confirm for the audit because you violate this Section 3.8.2 or refuse to cooperate with the reasonable requests of our auditors, you must pay us the Audit Fee under Section 4.8 when invoiced. We may also perform an audit of the Facility's books and records without advance notice. Your staff must cooperate with and assist our auditors to perform any audit we conduct.

3.8.3 We will notify you in writing if you default under this Agreement because (i) you do not cure a violation of Section 3.8.2 within 30 days after the date of the initial audit, (ii) you cancel 2 or more previously scheduled audits, (iii) you refuse to admit our auditors for an audit during normal business hours at the place where you maintain the Facility's books and records, or refuse to produce the books and records required under this Agreement and System Standards for the applicable accounting periods, (iv) our audit determines that the books and records you produced are incomplete or show evidence of tampering or violation of generally accepted internal control procedures, or (v) our audit determines that that you have reported to us less than 97% of the Facility's Gross Room Revenues for any fiscal year preceding the audit. Our notice of default may include, in our sole discretion and as part of your performance needed to cure the default under this Section 3.8, an "Accounting Procedure Notice." You must also pay any deficiency in Recurring

4

Fees or other charges we identify and invoice as a result of the audit. The Accounting Procedure Notice requires that you obtain and deliver to us, within 90 days after the end of each of your next three fiscal years ending after the Accounting Procedure Notice, an audit opinion signed by an independent certified public accountant who is a member of the American Institute of Certified Public Accountants addressed to us that the Facility's Gross Room Revenues you reported to us during the fiscal year fairly present the Gross Room Revenues of the Facility computed in accordance with this Agreement for the fiscal year.

3.9 **Inspections.** You acknowledge that the Facility's participation in our quality assurance inspection program (including unannounced inspections) is a material obligation you accept under this Agreement. You will permit our representatives to perform quality assurance inspections of the Facility at any time with or without advance notice. The inspections will commence during normal business hours although we may observe Facility operation at any time. You and the Facility staff will cooperate with the inspector performing the inspection. If the Facility fails an inspection, you refuse to cooperate with our inspector, or you refuse to comply with our published inspection System Standards, then you will pay us when invoiced for any reinspection fee specified in System Standards Manuals (which will not exceed $750) plus the reasonable travel, lodging and meal costs our inspector incurs for a reinspection. We may publish and disclose the results of quality assurance inspections.

3.10 **Insurance.** You will obtain and maintain during the Term of this Agreement the insurance coverage required under the System Standards Manual from insurers meeting the standards established in the Manual. Unless we instruct you otherwise, your liability insurance policies will name Knights Franchise Systems, Inc., Cendant Finance Holding Corporation and Cendant Corporation, their successors and assigns as additional insureds.

3.11 **Conferences.** You (or your representative with executive authority if you are an entity) will attend each Chain conference and pay the Conference Fee we set for the Chain franchisees, if and when we determine to hold a Chain conference. Mandatory recurrent training for franchisees and managers described in Section 4.1.3 (if any) may be held at a conference. The fee will be the same for all Chain Facilities that we license in the United States. You will receive reasonable notice of a Chain conference.

3.12 **Purchasing.** You will purchase or obtain certain items we designate as proprietary or that bear Marks, such as signage, only from suppliers we approve. You may purchase any other items for the Facility from any competent source you select, so long as the items meet or exceed System Standards.

3.13 **Good Will.** You will use reasonable efforts to protect, maintain and promote the name "Knights Inn" and its distinguishing characteristics, and the other Marks. You will not permit or allow your officers, directors, principals, employees, representatives, or guests of the Facility to engage in, conduct which is unlawful or damaging to the good will or public image of the Chain or System. You will participate in Chain-wide guest service and satisfaction guaranty programs we require in good faith for all Chain Facilities. You will follow System Standards for identification of the Facility and to avoid confusion on the part of guests, creditors, lenders, investors and the public as to your ownership and operation of the Facility, and the identity of your owners.

5

KNIEXCl
146808 10/03

3.14  **Facility Modifications.**  You may materially modify, diminish or expand the Facility (or change its interior design, layout, FF&E, or facilities) only after you receive our prior written consent, which we will not unreasonably withhold or delay.  You will pay our Rooms Addition Fee then in effect for each guest room you add once the Facility has 100 rooms.  If we so request, you will obtain our prior written approval of the plans and specifications for any material modification, which we will not unreasonably withhold or delay.  You will not open to the public any material modification until we inspect it for compliance with the Approved Plans and System Standards.

3.15  **Courtesy Lodging.**  You will provide lodging at the "Employee Rate" established in the System Standards Manual from time to time, (but only to the extent that adequate room vacancies exist) to our representatives traveling on business, but not more than three standard guest rooms at the same time.

3.16  **Minor Renovations.**  Beginning three years after the Opening Date, we may issue a "Minor Renovation Notice" to you that will specify reasonable Facility upgrading and renovation requirements (a "Minor Renovation") to be commenced no sooner than 60 days after the notice is issued, having an aggregate cost for labor, FF&E and materials estimated by us to be not more than the Minor Renovation Ceiling Amount.  You will perform the Minor Renovations as and when the Minor Renovation Notice requires.  We will not issue a Minor Renovation Notice within three years after the date of a prior Minor Renovation Notice, or if the three most recent quality assurance inspection scores of the Facility averaged at least 370 points or equivalent and the most recent quality assurance inspection score for the Facility was at least 350 points or equivalent when the Facility is otherwise eligible for a Minor Renovation.

4.  **Our Operating and Service Obligations.**  We will provide you with the following services and assistance:

4.1  **Training.**  We will offer (directly or indirectly by subcontracting with an affiliate or a third party) general manager and owner orientation training, on-site opening training, remedial training and supplemental training.

4.1.1  **General Manager Orientation Training.**  We will offer at a location in the United States we designate a general manager orientation training program.  The program will not exceed two weeks in duration and will cover such topics as System Standards, services available from us, and operating a Chain Facility.  Your initial general manager (or other representative who exercises day to day operational authority) for the Facility must complete this program to our satisfaction no later than 90 days after he/she assumes the position or 90 days after the Opening Date, whichever occurs first.  If we do not offer a place in general manager orientation within that time frame, your general manager must attend the next program held at which we offer a place.  Any replacement general manager must complete general manager orientation within 90 days after he/she assumes the position or the next program available, whichever comes later.  Your general manager for the Facility must complete general manager orientation even if you employ managers at other Chain Facilities who have already received this training.  We charge you tuition of $995 for your first general manager if you open the Facility with our approval and your general manager completes general manager orientation within the time period established under this Agreement.  You must

6

pay the tuition then in effect as disclosed in our latest Uniform Franchise Offering Circular ("UFOC"), but not more than $3,000, if you do not meet these deadlines. For any supplemental or replacement general manager, you must pay the tuition in effect for the program when your manager attends the program. You must also pay for your manager's travel, lodging, meals, incidental expenses, compensation and benefits.

4.1.2 **Owner Orientation Training.** We will offer an owner orientation training program to familiarize you with the System, the Chain, and our services. If this is your first System franchise, you (or a person with executive authority if you are an entity) must attend owner orientation preferably before, but not later than 90 days after the Opening Date. If we do not offer owner orientation training within this time period, you must attend the next program offered. Financial institutions and real estate mortgage investment conduits are exempt from the obligation to attend owner orientation, but may choose to do so at their option. Owner orientation will be no longer than five days. We charge you tuition of $825 if you open the Facility with our approval and attend owner orientation within the time periods established under this Agreement. If you do not open the Facility and attend orientation by such deadlines, you must pay the tuition then in effect for this program as disclosed in our latest UFOC, but not more than $3,000. You must also pay your travel, lodging, meal and incidental expenses.

4.1.3 **On-Site Opening Training.** We will provide at the Facility or another agreed location, and your staff must attend, on-site opening training (at our discretion as to length and scheduling) to assist you in opening the Facility. There is currently no charge for the initial training program. You will pay the cost of any site used if the Facility is not available and the rent for any equipment we need. You must provide lodging for our trainers at your expense. You must also pay, at our request, the reasonable travel, meal and out-of-pocket expenses incurred by our trainers for on-site opening training.

4.1.4 **Remedial Training.** We may require you, your general manager and/or your staff to participate in on-site remedial training if the Facility fails multiple quality assurance inspections and/or experiences significant complaints to our guest services department, as a condition to avoiding termination or to resumption of reservation service. You must pay the tuition in effect for this program when it is offered to you, and you must provide lodging for our trainers. As of March 31, 2003, tuition for remedial on-site training is $450 per day, which must be paid before the training commences. We may increase the tuition charge in the future. The length of the remedial training could be up to five days, depending on the severity of the quality assurance and/or customer service issues.

4.1.5 **Supplemental Training.** We may offer other mandatory or optional training programs for reasonable tuition or without charge. This training could be held in our U.S. training center or other locations. You will pay for your representative's travel, lodging, meals, incidental expenses, compensation and benefits and any tuition charge we establish for this training. This training may be held in conjunction with a Chain Lodging conference. We may offer, rent or sell to you video tapes, computer discs or other on-site training aids and materials, or require you to buy them at reasonable prices. We may also offer Internet-based training via the Chain's intranet website.

4.1.6 **Cancellation Fees.** We will charge you a cancellation fee of 50% of the tuition for a program

7

if you cancel your participation less than 15 days before it is scheduled to be held. If you fail to attend a training program as scheduled without notifying us in advance, your cancellation fee will be 100% of the tuition for the program. These fees are non-refundable and you will also be charged the full tuition in effect for the program when you reschedule your training.

4.2 **Reservation System.** We will operate and maintain (directly or by subcontracting with an affiliate or one or more third parties) a computerized Reservation System or such technological substitute(s) as we determine, in our discretion. We will use the System Assessment Fees for the acquisition, development, support, equipping, maintenance, improvement and operation of the Reservation System. We will provide software maintenance for the software we license to you to connect to the Reservation System if your Recurring Fee payments are up to date. The Facility will participate in the Reservation System, commencing with the Opening Date, for the balance of the Term, unless and until a Termination occurs. We have the right to provide reservation services to lodging facilities other than Chain Facilities or to other parties. We will not offer callers to our general consumer toll free reservation telephone number the opportunity to make reservations for other lodging chains in the United States.

4.3 **Marketing.**

4.3.1 We will use the System Assessment Fees, in our sole discretion, to promote public awareness and usage of Chain Facilities by implementing advertising, promotion, publicity, market research and other marketing programs, training programs, and related activities, production and distribution of Chain publications and directories of hotels. We will determine in our discretion: (i) The nature and type of media placement; (ii) The allocation (if any) among international, national, regional and local markets; and (iii) The nature and type of advertising copy, other materials and programs. We or an affiliate may be reimbursed from System Assessment Fees for the reasonable direct and indirect costs, overhead or other expenses of providing marketing services. We are not obligated to supplement or advance funds available from System Assessment Fees to pay for marketing activities. We do not promise that the Facility or you will benefit directly or proportionately from marketing activities.

4.3.2 We may, at our discretion, implement special international, national, regional or local promotional programs (which may or may not include the Facility) and may make available to you (to use at your option) media advertising copy and other marketing materials for prices which reasonably cover the materials' direct and indirect costs.

4.3.3 We will publish the Chain Directory. We will include the Facility in the Chain Directory after it opens if you submit the information we request on time, and you are not in default under this Agreement at the time we must arrange for publication. We will supply Directories to you for display at locations specified in the System Standards Manual or policy statements. We may assess you a reasonable charge for the direct and indirect expenses (including overhead) of producing and delivering the Directories.

4.4 **Purchasing.** We may offer optional assistance to you with purchasing items used at or in the Facility. Our affiliates may offer this service on our behalf. We may restrict the vendors authorized to sell proprietary or Mark-bearing items in order to control quality, provide for consistent service or

8

obtain volume discounts. We will maintain and provide to you lists of suppliers approved to furnish Mark-bearing items, or whose products conform to System Standards.

4.5 **The System.** We will control and establish requirements for all aspects of the System. We may, in our discretion, change, delete from or add to the System, including any of the Marks or System Standards, in response to changing market conditions. We may, in our discretion, permit deviations from System Standards, based on local conditions and our assessment of the circumstances.

4.6 **Consultations and Standards Compliance.** We will assist you to understand your obligations under System Standards by telephone, mail, during quality assurance inspections, through the System Standards Manual, at training sessions and during conferences and meetings we conduct. We will provide telephone and mail consultation on Facility operation and marketing through our representatives. We may, in our sole discretion offer to provide, and you may, at your option, obtain the services of our architects and interior designers. You must pay the fees and expenses described in Section 7.5 for these services. We will offer you access to any Internet website we may maintain to provide Chain franchisees with information and services, subject to
any rules, policies and procedures we establish for its use and access and to this Agreement. We may limit or deny access to any such website while you are in default under this Agreement.

4.7 **System Standards Manual and Other Publications.** We will specify System Standards in the System Standards Manual, policy statements or other publications. We will lend you one copy of the System Standards Manual promptly after we sign this Agreement. We will send you any System Standards Manual revisions and/or supplements as and when issued. We will send you all other publications for Chain franchisees and all separate policy statements in effect from time to time.

4.8 **Inspections and Audits.** We have the unlimited right to conduct unannounced quality assurance inspections of the Facility and its operations, records and Mark usage to test the Facility's compliance with System Standards and this Agreement, and the audits described in Section 3.8. We may access the reports and data stored in the Facility's property management system (if any) provided that we do not unreasonably interfere with the normal functioning of the property management system. We have the unlimited right to reinspect if the Facility does not achieve the score required on an inspection. We may impose a reinspection fee and will charge you for our costs as provided in Section 3.9. You will pay us an "Audit Fee" of $300.00 when we invoice you for an Audit Fee under Section 3.8. We may increase the Audit Fee on a Chain-wide basis to cover any increases in our audit costs to not more than $500.00, effective any time after December 31, 2005. Our inspections are solely for the purposes of checking compliance with System Standards.

5. **Term.**

5.1 The Term begins on the Effective Date and expires at the end of the fifteenth License Year, unless and until a Termination occurs. Some of your duties and obligations will survive termination or expiration of the License and this Agreement.

6. **Application and Initial Fees.** We should receive from you a non-refundable Application Fee

9

KNIEXCI
146808 10/03

of $1,000.00. You will pay us a non-refundable Initial Fee in the amount of **$5,000, $3,000 is due when you sign this Agreement, which is fully earned when we sign this Agreement, $3,000 shall be due on or before June 30, 2004 as evidenced by a Promissory Note attached hereto.**

### 7. Additional Fees, Taxes and Interest.

7.1     You will pay us certain Recurring Fees each month payable in U.S. dollars (or such other currency as we may direct if the Facility is outside the United States) ten days after the month in which they accrue, without billing or demand. These fees include the following:

7.1.1   A "Combined Fee" equal to five percent (5%) of the accrued Gross Room Revenues generated by the Facility in that month. The Combined Fee consists of (i) a Royalty to compensate us for granting you the License and the opportunity to use the System, and (ii) a System Assessment Fee for advertising, public relations, marketing, training, reservation and other related services and programs. The Combined Fee accrues from the earlier of the Opening Date or the date you operate the Facility under a Mark without our consent, until the end of the Term.

7.1.2   A "Reservation Fee" of an amount equal to $1.00 for each confirmation number generated that represents a reservation of one or more guest rooms at the Facility originated or processed through the Reservation System that was originated by a caller to our general consumer toll-free reservation telephone number, less an amount equal to $1.00 for each such confirmation number cancelled that month that represents a reservation of one or more guest rooms at the Facility that was originated by a caller to our general consumer toll-free reservation telephone number.

7.1.3   You will also pay or reimburse us for "Additional Charges" consisting of travel and other agent commissions paid for certain reservations at the Facility and a "GDS Fee" levied to pay for reservations for the Facility originated or processed through the Global Distribution System, the Internet and other reservation systems and networks. We may charge a reasonable service fee for this service. We may increase or adjust the travel agent commissions, GDS Fees, service charges, and other fees in the future on not less than 60 days prior written notice. We may charge Chain Facilities using the System outside the United States for reservation service using a different formula.

7.2   You will pay to us "Taxes" equal to any federal, state or local sales, gross receipts, use, value added, excise or similar taxes assessed against us on the Combined Fee by the jurisdictions where the Facility is located, but not including any income tax, franchise or other tax for the privilege of doing business by us in your State. You will pay Taxes to us when due.

7.3   "Interest" is payable when you receive our invoice on any past due amount payable to us under this Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid.

7.4   If a Transfer occurs, your transferee or you will pay us our then current Application Fee and a "Relicense Fee" equal to the Initial Fee we would then charge a new franchisee for the Facility.

KNIEXCI
146808 10/03

7.5 <u>Supplemental fees</u> are payable for certain additional services you elect for us to provide to you or the Facility.

7.5.1  You will pay us on a time and materials basis for the services of our architects and interior design personnel that you request to assist you. The rate for these services as of the Effective Date is $50.00 per hour. We may change this rate without notice to you, but we will notify you about any different rate that we will charge before you incur any fees for any requested services. Payments for these services will be due when invoiced.

7.5.2  You must pay the reasonable travel, lodging and meal expenses of our Property Training Program trainers, designers and architects in addition to the fees described above. You (or your representative) may not attend the Management Training Program, and we will not perform Property Training Program or design services if you do not pay the fees and charges under this Section 7.5 when due. Tuition and fees paid under Section 4.1 and this Section 7.5 will not be refundable.

## 8. Indemnifications.

8.1  Independent of your obligation to procure and maintain insurance, you will indemnify, defend and hold the Indemnitees harmless, to the fullest extent permitted by law, from and against all Losses and Expenses, incurred by any Indemnitee for any investigation, claim, action, suit, demand, administrative or alternative dispute resolution proceeding, relating to or arising out of any transaction, occurrence or service at, or involving the operation of, the Facility, any payment you make or fail to make to us, any breach or violation of any contract or any law, regulation or ruling by, or any act, error or omission (active or passive) of, you, any party associated or affiliated with you or any of the owners, officers, directors, employees, agents or contractors of you or your affiliates, including when you are alleged or held to be the actual, apparent or ostensible agent of the Indemnitee, or the active or passive negligence of any Indemnitee is alleged or proven. You have no obligation to indemnify an Indemnitee if a court of competent jurisdiction makes a final decision not subject to further appeal that the Indemnitee directly engaged in willful misconduct or intentionally caused the property damage or bodily injury that is the subject of the claim In that case, you will be reimbursed for the expenses you incur to indemnify the Indemnitee. This exclusion from the obligation to indemnify shall not, however, apply if the property damage or bodily injury resulted from the use of reasonable force by the Indemnitee to protect persons or property.

8.2  You will respond promptly to any matter described in the preceding paragraph, and defend the Indemnitee. You will reimburse the Indemnitee for all costs of defending the matter, including reasonable attorneys' fees, incurred by the Indemnitee if your insurer or you do not assume defense of the Indemnitee promptly when requested, or separate counsel is appropriate, in our discretion, because of actual or potential conflicts of interest. We must approve any resolution or course of action in a matter that could directly or indirectly have any adverse effect on us or the Chain, or could serve as a precedent for other matters.

8.3  We will indemnify, defend and hold you harmless, to the fullest extent permitted by law, from and against all Losses and Expenses incurred by you in any action or claim arising from your proper

11

use of the System alleging that your use of the System and any property we license to you is an infringement of a third party's rights to any trade secret, patent, copyright, trademark, service mark or trade name. You will promptly notify us in writing when you become aware of any alleged infringement or an action is filed against you. You will cooperate with our defense and resolution of the claim. We may resolve the matter by obtaining a license of the property for you at our expense, or by requiring that you discontinue using the infringing property or modify your use to avoid infringing the rights of others.

### 9. Your Assignments, Transfers and Conveyances.

9.1 **Transfer of the Facility.** This Agreement is personal to you (and your owners if you are an entity). We are relying on your experience, skill and financial resources (and that of your owners and the guarantors, if any) to sign this Agreement with you. You may finance the Facility and grant a lien, security interest or encumbrance on it without notice to us or our consent. If a Transfer is to occur, the transferee or you must comply with Section 9.3 and 9.6. Your License is subject to termination when the Transfer occurs. The License is not transferable to your transferee, who has no right or authorization to use the System and the Marks when you transfer ownership or possession of the Facility. The transferee may not operate the Facility under the System, and you are responsible for performing the post-termination obligations in Section 13. You and your owners may, only with our prior written consent and after you comply with Sections 9.3 and 9.6, assign, pledge, transfer, delegate or grant a security interest in all or any of your rights, benefits and obligations under this Agreement, as security or otherwise. Transactions involving Equity Interests that are not Equity Transfers do not require our consent and are not Transfers.

9.2 **Public Offerings and Registered Securities.** You may engage in the first registered public offering of your Equity Interests only after you pay us a public offering fee equal to $25,000. Your Equity Interests (or those of a person, parent, subsidiary, sibling or affiliate entity, directly or indirectly effectively controlling you), are freely transferable without the application of this Section if they are, on the Effective Date, or after the public offering fee is paid, they become, registered under the federal Securities Act of 1933, as amended, or a class of securities registered under the Securities Exchange Act of 1934, as amended, or listed for trading on a national securities exchange or the automated quotation system of the National Association of Securities Dealers, Inc. (or any successor system), provided that any tender offer for at least a majority of your Equity Interests will be an Equity Transfer subject to Section 9.1.

9.3 **Conditions.** We may, to the extent permitted by applicable law, condition and withhold our consent to a Transfer when required under this Section 9 until the transferee and you meet certain conditions. If a Transfer is to occur, the transferee (or you, if an Equity Transfer is involved) must first complete and submit our Application, qualify to be a franchisee in our sole discretion, given the circumstances of the proposed Transfer, provide the same supporting documents as a new license applicant, pay the Application and Relicense Fees then in effect, sign the form of Franchise Agreement we then offer in conversion transactions and agree to renovate the Facility as described below. We must also receive general releases from you and each of your owners, and payment of all amounts then owed to us and our affiliates by you, your owners, your affiliates, the transferee, its owners and affiliates, under this Agreement or otherwise. We will require renovation of the Facility to meet our entry standards for conversion of existing facilities into Chain Facilities effective when

12

the Transfer occurs. Our consent to the transaction will not be effective until these conditions are satisfied.

9.4 **Permitted Transferee Transactions.** You may transfer an Equity Interest or effect an Equity Transfer to a Permitted Transferee without obtaining our consent, renovating the Facility or paying a Relicense Fee or Application Fee. No Transfer will be deemed to occur. You also must not be in default and you must comply with the application and notice procedures specified in Sections 9.3 and 9.6. Each Permitted Transferee must first agree in writing to be bound by this Agreement, or at our option, execute the Franchise Agreement form then offered prospective franchisees. No transfer to a Permitted Transferee shall release a living transferor from liability under this Agreement or any guarantor under any Guaranty of this Agreement. You must comply with this Section if you transfer the Facility to a Permitted Transferee. A transfer resulting from a death may occur even if you are in default under this Agreement.

9.5 **Attempted Transfers.** Any transaction requiring our consent under this Section 9 in which our consent is not first obtained shall be void, as between you and us. You will continue to be liable for payment and performance of your obligations under this Agreement until we terminate this Agreement, all your financial obligations to us are paid and all System identification is removed from the Facility.

9.6 **Notice of Transfers.** You will give us at least 30 days prior written notice of any proposed Transfer or Permitted Transferee transaction. You will notify us when you sign a contract to Transfer the Facility and 10 days before you intend to close on the transfer of the Facility. We will respond to all requests for our consent and notices of Permitted Transferee transactions within a reasonable time not to exceed 30 days. You will notify us in writing within 30 days after a change in ownership of 25% or more of your Equity Interests that are not publicly held or that is not an Equity Transfer, or a change in the ownership of the Facility if you are not its owner. You will provide us with lists of the names, addresses, and ownership percentages of your owner(s) at our request.

10. **Our Assignments.** We may assign, delegate or subcontract all or any part of our rights and duties under this Agreement, including by operation of law, without notice and without your consent. We will have no obligations to you after you are notified that our transferee has assumed our obligations under this Agreement except those that arose before we assign this Agreement.

11. **Default and Termination.**

11.1 **Default.** In addition to the matters identified in Sections 3.1 and 3.8, you will be in default under this Agreement if (a) you do not pay us when a payment is due, (b) you do not perform any of your other obligations when this Agreement and the System Standards Manual require, or (c) if you otherwise breach this Agreement. If your default is not cured within ten days after you receive written notice from us that you have not filed your monthly report, paid us any amount that is due or breached your obligations regarding Confidential Information, or within 30 days after you receive written notice from us of any other default (except as noted below), then we may terminate the License or this Agreement if the Opening Date has not occurred by written notice to you. We will not exercise our right to terminate if you have completely cured your default, or until any waiting

13

period required by law has elapsed. In the case of quality assurance default, if you have acted diligently to cure the default but cannot do so and have entered into a written improvement agreement with us within 30 days after the failing inspection, you may cure the default within 90 days after the failing inspection. We may terminate the License if you do not perform that improvement agreement.

11.2 **Termination.** We may terminate the License, or this Agreement if the Opening Date has not occurred, effective when we send written notice to you or such later date as required by law or as stated in the default notice, when (1) you do not cure a default as provided in Section 11.1, (2) you discontinue operating the Facility as a "Knights Inn", (3) you do or perform, directly or indirectly, any act or failure to act that in our reasonable judgment is or could be injurious or prejudicial to the goodwill associated with the Marks or the System, (4) you lose possession or the right to possession of the Facility, (5) you (or any guarantor) suffer the termination of another license or franchise agreement with us or one of our affiliates, (6) you intentionally maintain false books and records or submit a materially false report to us, (7) you (or any guarantor) generally fail to pay debts as they come due in the ordinary course of business, (8) you, any guarantor or any of your owners or agents misstated to us or omitted to tell us a material fact to obtain or maintain this Agreement with us, (9) you receive two or more notices of default from us in any one year period (whether or not you cure the defaults), (10) a violation of Section 9 occurs, or a Transfer occurs before the relicensing process is completed, (11) you or any of your Equity Interest owners contest in court the ownership or right to franchise or license all or any part of the System or the validity of any of the Marks, (12) you, any guarantor or the Facility is subject to any voluntary or involuntary bankruptcy, liquidation, dissolution, receivership, assignment, reorganization, moratorium, composition or a similar action or proceeding that is not dismissed within 60 days after its filing, (13) you maintain or operate the Facility in a manner that endangers the health or safety of the Facility's guests, or (14) you do not satisfy the Improvement Obligation when required under Section 3.1 and we are authorized to terminate this Agreement.

11.3 **Casualty and Condemnation.**

11.3.1 You will notify us promptly after the Facility suffers a Casualty that prevents you from operating in the normal course of business, with less than 75% of guest rooms available. You will give us information on the availability of guest rooms and the Facility's ability to honor advance reservations. You will tell us in writing within 60 days after the Casualty whether or not you will restore, rebuild and refurbish the Facility to conform to System Standards and its condition prior to the Casualty. This restoration will be completed within 180 days after the Casualty. You may decide within the 60 days after the Casualty, and if we do not hear from you, we will assume that you have decided, to terminate the License, or this Agreement if the Opening Date has not occurred, effective as of the date of your notice or 60 days after the Casualty, whichever comes first. If such a termination occurs, you will pay all amounts accrued prior to termination and follow the post-termination requirements in Section 13. You will not be obligated to pay Liquidated Damages if the Facility will no longer be used as an extended stay or transient lodging facility after the Casualty.

11.3.2 You will notify us in writing within 10 days after you receive notice of any proposed Condemnation of the Facility, and within 10 days after receiving notice of the Condemnation date.

14

This Agreement will terminate on the date the Facility or a substantial portion is conveyed to or taken over by the condemning authority.

11.3.3 The exclusive territory covenant in Section 2 terminates when you give us notice or you are deemed to give us notice of any proposed Condemnation or that you will not restore the Facility after a Casualty.

11.4 **Other Remedies.** We may suspend the Facility from the Reservation System for any default or failure to pay or perform under this Agreement or any other written agreement with us relating to the Facility, discontinue Reservation System referrals to the Facility for the duration of such suspension, and may divert previously made reservations to other Chain Facilities after giving you notice of your non-performance, non-payment or default. All System Assessment Fees accrue during the suspension period. Reservation service will be restored after you have fully cured any and all defaults and failures to pay and perform. We may deduct points under our quality assurance inspection program for your failure to comply with this Agreement or System Standards. We may omit the Facility from the Directory if you are in default on the date we must determine which Chain Facilities are included in the Directory. You recognize that any use of the System not in accord with this Agreement will cause us irreparable harm for which there is no adequate remedy at law, entitling us to injunctive and other relief. We may litigate to collect amounts due under this Agreement without first issuing a default or termination notice. Our consent or approval may be withheld if needed while you are in default under this Agreement or may be conditioned on the cure of all your defaults.

11.5 **Your Remedies.** If we fail to issue our approval or consent as and when required under this Agreement within a reasonable time of not less than 30 days after we receive all of the information we request, and you believe our refusal to approve or consent is wrongful, you may bring a legal action against us to compel us to issue our approval or consent. To the extent permitted by applicable law, this action shall be your exclusive remedy. We shall not be responsible for direct, indirect, special, consequential or exemplary damages, including, but not limited to, lost profits or revenues.

## 12. Liquidated Damages.

12.1 Generally. If we terminate the License under Section 11.2, or you terminate this Agreement (except under Section 11.3 or as a result of our default which we do not cure within a reasonable time after written notice), you will pay us Liquidated Damages within 30 days following the date of Termination. If Termination occurs during the last two License Years of the Term, Liquidated Damages will be the lesser of (i) the amount specified in Section 18.1, or (ii) the average daily fees based on a percentage of Gross Room Revenues accruing under Section 7.1 during the 12 full calendar months preceding the month in which Termination occurs multiplied by the number of days remaining in the unexpired Term (the "Ending Period") at the date of Termination. You will also pay any applicable Taxes assessed on such payment. Before the last two License Years, Liquidated Damages will be as **set forth in Section 18.1.** If we terminate this Agreement under Section 3 before the Opening Date, you will pay us within 10 days after you receive our notice of termination Liquidated Damages equal to one-half the amount payable under the preceding sentence. Liquidated Damages are

15

paid in place of our claims for lost future Recurring Fees under this Agreement. Our right to receive other amounts due under this Agreement is not affected.

12.2 **Condemnation Payments.** In the event a Condemnation is to occur, you will pay us Recurring Fees for a period of one year after we receive the initial notice of condemnation described in Section 11.3, or until the Condemnation occurs, whichever is longer. You will pay us Liquidated Damages equal to the average daily Recurring Fees for the one year period preceding the date of your condemnation notice to us multiplied by the number of days remaining in the one year notice period if the Condemnation is completed before the one year notice period expires. This payment will be made within 30 days after Condemnation is completed (when you close the Facility or you deliver it to the condemning authority). You will pay no Liquidated Damages if the Condemnation is completed after the one year notice period expires, but you must pay Recurring Fees when due until Condemnation is completed.

13. **Your Duties At and After Termination.** When the License or this Agreement terminates for any reason whatsoever:

13.1 **System Usage Ceases.** You will immediately stop using the System to operate and identify the Facility. You will remove all signage and other items bearing any Marks and follow the other steps detailed in the System Standards Manual for changing the identification of the Facility. You will promptly paint over or remove the Facility's distinctive System trade dress, color schemes and architectural features. You shall not identify the Facility with a confusingly similar mark or name, or use the same colors as the System trade dress for signage, printed materials and painted surfaces. You will cease all Internet marketing using any marks to identify the Facility.

13.2 **Other Duties.** You will pay all amounts owed to us under this Agreement within 10 days after termination. You will owe us Recurring Fees on Gross Room Revenues accruing while the Facility is identified as a "Knights Inn", including the System Assessment Fees for so long as the Facility receives service from the Reservation System. We may immediately remove the Facility from the Reservation System and divert reservations as authorized in Section 11.4. We may notify third parties that the Facility is no longer associated with the Chain. We may also, to the extent permitted by applicable law, and without prior notice enter the Facility, and any other parcels, remove software (including archive and back-up copies) for accessing the Reservation System, all copies of the System Standards Manual, Confidential Information, equipment and all other personal property of ours, and paint over or remove and purchase for $10.00, all or part of any interior or exterior Mark-bearing signage (or signage face plates), including billboards, whether or not located at the Facility, that you have not removed or obliterated within five days after termination. You will promptly pay or reimburse us for our cost of removing such items, net of the $10.00 purchase price for signage. We will exercise reasonable care in removing or painting over signage. We will have no obligation or liability to restore the Facility to its condition prior to removing the signage. We shall have the right, but not the obligation, to purchase some or all of the Facility's Mark-bearing FF&E and supplies at the lower of their cost or net book value, with the right to set off their aggregate purchase price against any sums then owed us by you.

13.3 **Advance Reservations.** The Facility will honor any advance reservations, including group bookings, made for the Facility prior to termination at the rates and on the terms established when

16

the reservations are made and pay when due all related travel agent commissions.

13.4 **Survival of Certain Provisions.** Sections 3.8 (as to audits, for 2 years after termination), 3.13, 7 (as to amounts accruing through termination), 8, 13, 15, and 17 survive termination of the License and this Agreement, whether termination is initiated by you or us, even if termination is wrongful.

**14. Your Representations and Warranties.** You expressly represent and warrant to us as follows:

14.1 **Quiet Enjoyment and Financing.** You own, or will own prior to commencing improvement, or lease, the Location and the Facility. You will be entitled to possession of the Location and the Facility during the entire Term without restrictions that would interfere with your performance under this Agreement, subject to the reasonable requirements of any financing secured by the Facility. You have, when you sign this Agreement, and will maintain during the Term, adequate financial liquidity and financial resources to perform your obligations under this Agreement.

14.2 **This Transaction.** You and the persons signing this Agreement for you have full power and authority and have been duly authorized, to enter into and perform or cause performance of your obligations under this Agreement. You have obtained all necessary approvals of your owners, Board of Directors and lenders. No executory franchise, license or affiliation agreement for the Facility exists other than this Agreement. Your execution, delivery and performance of this Agreement will not violate, create a default under or breach of any charter, bylaws, agreement or other contract, license, permit, indebtedness, certificate, order, decree or security instrument to which you or any of your principal owners is a party or is subject or to which the Facility is subject. Neither you nor the Facility is the subject of any current or pending merger, sale, dissolution, receivership, bankruptcy, foreclosure, reorganization, insolvency, or similar action or proceeding on the date you execute this Agreement and was not within the three years preceding such date, except as disclosed in the Application. You will submit to us the documents about the Facility, you, your owners and your finances that we request in the Franchise Application (or after our review of your initial submissions) before or within 30 days after you sign this Agreement. To the best of your knowledge, neither you, your owners (if you are an entity), your officers, directors or employees or anyone else affiliated or associated with you, whether by common ownership, by contract, or otherwise, has been designated as, or is, a terrorist, a "Specially Designated National" or a "Blocked Person" under U.S. Executive Order 13224, in lists published by the U.S. Department of the Treasury's Office of Foreign Assets Control, or otherwise.

14.3 **No Misrepresentations or Implied Covenants.** All written information you submit to us about the Facility, you, your owners, any guarantor, or the finances of any such person or entity, was or will be at the time delivered and when you sign this Agreement, true, accurate and complete, and such information contains no misrepresentation of a material fact, and does not omit any material fact necessary to make the information disclosed not misleading under the circumstances. There are no express or implied covenants or warranties, oral or written, between we and you except as expressly stated in this Agreement.

**15. Proprietary Rights.**

17

15.1  **Marks and System.** You will not acquire any interest in or right to use the System or Marks except under this Agreement. You will not apply for governmental registration of the Marks, or use the Marks or our corporate name in your legal name, but you may use a Mark for an assumed business or trade name filing.

15.2  **Inurements.** All present and future distinguishing characteristics, improvements and additions to or associated with the System by us, you or others, and all present and future service marks, trademarks, copyrights, service mark and trademark registrations used and to be used as part of the System, and the associated good will, shall be our property and will inure to our benefit. No good will shall attach to any secondary designator that you use.

15.3  **Other Locations and Systems.** We and our affiliates each reserve the right to own, in whole or in part, and manage, operate, use, lease, finance, sublease, franchise, license (as licensor or franchisee), provide services to or joint venture (i) distinctive separate lodging or food and beverage marks and other intellectual property which are not part of the System, and to enter into separate agreements with you or others (for separate charges) for use of any such other marks or proprietary rights, (ii) other lodging, food and beverage facilities, or businesses, under the System utilizing modified System Standards, and (iii) a Chain Facility at or for any location outside the Protected Territory. You acknowledge that we are affiliated with or in the future may become affiliated with other lodging providers or franchise systems that operate under names or marks other than the Marks. We and our affiliates may use or benefit from common hardware, software, communications equipment and services and administrative systems for reservations, franchise application procedures or committees, marketing and advertising programs, personnel, central purchasing, approved supplier lists, franchise sales personnel (or independent franchise sales representatives), etc.

15.4  **Confidential Information.** You will take all appropriate actions to preserve the confidentiality of all Confidential Information. Access to Confidential Information should be limited to persons who need the Confidential Information to perform their jobs and are subject to your general policy on maintaining confidentiality as a condition of employment or who have first signed a confidentiality agreement. You will not permit copying of Confidential Information (including, as to computer software, any translation, decompiling, decoding, modification or other alteration of the source code of such software). You will use Confidential Information only for the Facility and to perform under this Agreement. Upon termination (or earlier, as we may request), you shall return to us all originals and copies of the System Standards Manual, policy statements and Confidential Information "fixed in any tangible medium of expression," within the meaning of the U.S. Copyright Act, as amended. Your obligations under this subsection commence when you sign this Agreement and continue for trade secrets (including computer software we license to you) as long as they remain secret and for other Confidential Information, for as long as we continue to use the information in confidence, even if edited or revised, plus three years. We will respond promptly and in good faith to your inquiry about continued protection of any Confidential Information.

15.5  **Litigation.** You will promptly notify us of (i) any adverse or infringing uses of the Marks (or names or symbols confusingly similar), Confidential Information or other System intellectual

18

property, and (ii) or any threatened or pending litigation related to the System against (or naming as a party) you or us of which you become aware. We alone handle disputes with third parties concerning use of all or any part of the System. You will cooperate with our efforts to resolve these disputes. We need not initiate suit against imitators or infringers who do not have a material adverse impact on the Facility, or any other suit or proceeding to enforce or protect the System in a matter we do not believe to be material.

15.6 **The Internet.** You may use the Internet to market the Facility subject to this Agreement and System Standards. You shall not use, license or register any domain name, universal resource locator, or other means of identifying you or the Facility that uses a Mark or any image or language confusingly similar to a Mark without our consent. You will assign to us any such identification at our request without compensation or consideration. You must make available through the Reservation System and the Chain website all rates you offer to the general public via Internet marketing arrangements with third parties. You must participate in the Chain's best available rate on the Internet guarantee or successor program. The content you provide us or use yourself for any Internet marketing must be true, correct and accurate, and you will notify us in writing promptly when any correction to the content becomes necessary. You shall promptly modify at our request the content of any Internet marketing material for the Facility you use, authorize, display or provide to conform to System Standards. Any use of the Marks and other elements of the System on the Internet inures to our benefit under Section 15.2.

## 16. Relationship of Parties.

16.1 **Independence.** You are an independent contractor. You are not our legal representative or agent, and you have no power to obligate us for any purpose whatsoever. We and you have a business relationship based entirely on and circumscribed by this Agreement. No partnership, joint venture, agency, fiduciary or employment relationship is intended or created by reason of this Agreement. You will exercise full and complete control over and have full responsibility for your contracts, daily operations, labor relations, employment practices and policies, including, but not limited to, the recruitment, selection, hiring, disciplining, firing, compensation, work rules and schedules of your employees.

16.2 **Joint Status.** If you comprise two or more persons or entities (notwithstanding any agreement, arrangement or understanding between or among such persons or entities) the rights, privileges and benefits of this Agreement may only be exercised and enjoyed jointly. The liabilities and responsibilities under this Agreement will be the joint and several obligations of all such persons or entities.

## 17. Legal Matters.

17.1 **Partial Invalidity.** If all or any part of a provision of this Agreement violates the law of your state (if it applies), such provision or part will not be given effect. If all or any part of a provision of this Agreement is declared invalid or unenforceable, for any reason, or is not given effect by reason of the prior sentence, the remainder of the Agreement shall not be affected. However, if in our judgment the invalidity or ineffectiveness of such provision or part substantially impairs the value of this Agreement to us, then we may at any time terminate this

19

Agreement by written notice to you without penalty or compensation owed by either party.

17.2 **Waivers, Modifications and Approvals.** If we allow you to deviate from this Agreement, we may insist on strict compliance at any time after written notice. Our silence or inaction will not be or establish a waiver, consent, course of dealing, implied modification or estoppel. All modifications, waivers, approvals and consents of or under this Agreement by us must be in writing and signed by our authorized representative to be effective. We may unilaterally revise Schedule C when this Agreement so permits.

17.3 **Notices.** Notices will be effective if in writing and delivered (i) by facsimile transmission with confirmation original sent by first class mail, postage prepaid, (ii) by delivery service, with proof of delivery, or (iii) by first class, prepaid certified or registered mail, return receipt requested, to the appropriate party (x) at its address stated below or as it may otherwise designate by notice, or (y) by such other means as to result in actual or constructive receipt by the person or office holder designated below. The parties may also communicate via electronic mail between addresses to be established by notice. You consent to receive electronic mail from us. Notices shall be deemed given on the date delivered or date of attempted delivery, if refused.

Knights Franchise Systems, Inc.:
Our address: 1 Sylvan Way, P.O. Box 278, Parsippany, New Jersey 07054-0278
Attention: Vice President-Franchise Administration; Fax No. (973) 496-5359

Your name: **Jain Inc.,**
Your address: **38 South Allison Ave., Xenia, OH 45385,**
Attention: **Anil Jain;**
Your fax No.: .

17.4 **Remedies.** Remedies specified in this Agreement are cumulative and do not exclude any remedies available at law or in equity. The non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement.

17.5 **Miscellaneous.** This Agreement is exclusively for the benefit of the parties. There are no third party beneficiaries. No agreement between us and anyone else is for your benefit. The section headings in this Agreement are for convenience of reference only.

17.6 **Choice of Law; Venue; Dispute Resolution.**

17.6.1 This Agreement will be governed by and construed under the laws of the State of New Jersey, except for its conflicts of law principles. The New Jersey Franchise Practices Act will not apply to any Facility located outside the State of New Jersey.

17.6.2 The parties shall attempt in good faith to resolve any dispute concerning this Agreement or the parties' relationship promptly through negotiation between authorized representatives. If these efforts are not successful, either party may attempt to resolve the dispute through non-binding mediation. Either party may request mediation through the National Franchise Mediation Program,

20

KNIEXCI
146808 10/03

using the procedures employed by the CPR Institute for Dispute Resolution, Inc. We will provide you with the contact address for that organization. The mediation will be conducted by a mutually acceptable and neutral third party. If the parties cannot resolve the dispute through negotiation or mediation, or choose not to negotiate or mediate, either party may pursue litigation.

17.6.3 You consent and waive your objection to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey for all cases and controversies under this Agreement or between we and you.

17.6.4 **WAIVER OF JURY TRIAL. THE PARTIES WAIVE THE RIGHT TO A JURY TRIAL IN ANY ACTION RELATED TO THIS AGREEMENT OR THE RELATIONSHIP BETWEEN THE FRANCHISOR, THE FRANCHISEE, ANY GUARANTOR, AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS.**

17.7 **Special Acknowledgments.** You acknowledge the following statements to be true and correct as of the date you sign this Agreement, and to be binding on you.

17.7.1 You received our Uniform Franchise Offering Circular ("UFOC") for prospective franchisees at least 10 business days before, and a copy of this Agreement and all other agreements we are asking you to sign at least 5 business days before, signing this Agreement and paying the Initial Fee to us. You have received our UFOC at least 10 business days before you paid any fee to us or signed any contract with us.

17.7.2 Neither we nor any person acting on our behalf has made any oral or written representation or promise to you on which you are relying to enter into this Agreement that is not written in this Agreement. You release any claim against us or our agents based on any oral or written representation or promise not stated in this Agreement.

17.7.3 This Agreement, together with the exhibits and schedules attached, is the entire agreement superseding all previous oral and written representations, agreements and understandings of the parties about the Facility and the License.

17.7.4 You acknowledge that no salesperson has made any promise or provided any information to you about projected sales, revenues, income, profits or expenses from the Facility except as stated in Item 19 of the UFOC or in a writing that is attached to this Agreement.

17.7.5 You understand that the franchise relationship is an arms' length, commercial business relationship in which each party acts in its own interest.

18. **Special Stipulations.** The following special stipulations apply to this Agreement and supersede any inconsistent or conflicting provisions. These are personal to you and are not transferable or assignable except to a Permitted Transferee.

21

KNIEXCl
146808 10/03

18.1 **Liquidated Damages.** Liquidated Damages payable under Section 12.1 for a Termination that occurs before the last two License Years will be One Thousand Dollars ($1,000.00) for each guest room of the Facility you are authorized to operate at the time of Termination.

18.2 **Your Additional Termination Right.** You may terminate the License without cause or penalty effective only on the third or sixth anniversary of the Opening Date provided you give us at least six (6) months prior written notice of termination and you are not in default under this Agreement at the time notice must be given or at the effective date of termination. You will pay no Liquidated Damages if you satisfy the conditions of the preceding sentence and you perform the post termination obligations specified in this Agreement within 10 days after the effective date of termination. Your rights under this Section will automatically terminate without notice if and as of the date (i) a Termination occurs, (ii) you fail to cure any default under this Agreement within the time permitted, if any, in the notice of default we send you, or (iii) after the Facility satisfies the Improvement Obligation, the Facility scores more than 275 (or its then equivalent) on a quality assurance inspection and then fails to achieve a score of less than 275 (or its then equivalent) in a reinspection to be performed no sooner than 30 days after the initial inspection. You will not exercise this right if the Facility is then financed under a program in which the United States Small Business Administration ("SBA") guarantees the financing or its repayment unless you first obtain SBA's consent.

18.3 **Our Additional Termination Right.** We may terminate the License without cause or penalty effective only on the third or sixth anniversary of the Opening Date provided we give you at least six (6) months prior written notice of termination. You will perform the post termination obligations specified in this Agreement within 10 days after the effective date of termination. You will pay no Liquidated Damages in the event that we terminate the License under this Section and you perform the post termination obligations specified in this Agreement within 10 days after the effective date of termination. We will not exercise this right if you notify us that the Facility is then financed under a program in which the United States Small Business Administration ("SBA") guarantees the financing or its repayment unless we first obtain SBA's consent.

18.4 **Reduced Relicense Fee.** If you are not then in default under this Agreement, the Relicense Fee for a Transfer will be $1,000 if we receive the written Transfer request before the ~~third~~ Fifth anniversary of the Opening Date. After that anniversary, the Relicense Fee will be as specified in Section 7.4.

18.4 **Contract Rooms.** The parties acknowledge that you presently have a contract dated September 5, 2004 to rent guest rooms to Central State University (the "Central State Agreement"). From September 5, 2004 through January 1, 2005 (the "Contract Room Period"), you will only be required to keep 50 rooms in inventory per day, and may exclude up to 38 guest rooms per day from the Knights Inn reservation system ("Contract Rooms") as well as exclude the revenue generated by said guest rooms from Gross Room Revenues as defined under this License Agreement. Upon the expiration of the Contract Room Period, the Contract Rooms shall be added to the inventory and the revenue generated from these guest rooms will be included in Gross Room Revenues. You must accurately account for all Facility room revenues during and after the Contract Room Period. You must report the Central State Agreement revenue each month and include copies of your invoices to the contract party with your monthly franchise report of Gross Room Sales together with the

22

supporting documentation you send them under the contract.  You will give us copies of the contract and all amendments when adopted by the parties.  All rooms, including the Central State Agreement rooms, must meet System Standards when they are added to the Knights Inn inventory. These rooms are subject to our inspection during the entire term of this Agreement to ensure compliance with this section.

18.5 **Transfer Rights.**  If you are not in default under this Agreement, at any time before the Opening Date of the Facility, you may assign this Agreement at the same time as you convey the Facility to an entity in which you or the persons listed on Schedule B as the original owners of your Equity Interests are to be owners of at least 51% of the Equity Interests of the entity and retain control over the entity so that change of control, as defined in an Equity Transfer (Appendix A) does not occur.  The transferee and you must sign and deliver to us the Assignment and Assumption Agreement in the form attached as an exhibit to this Agreement before you transfer the Facility.  No Application or Relicense Fees will be charged.  The accounts of the transferee and you must be current at the time of transfer, or we will not recognize the transfer. The transferee must submit an application on our standard form and its organizational agreement or charter with the Assignment and Assumption Agreement.  We will not recognize the transfer as effective until these documents are completed and delivered to us.  The transferee must send us a copy of the warranty deed conveying the Facility within 30 days after its delivery.

23

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first stated above.

**WE:**
**KNIGHTS FRANCHISE SYSTEMS, INC.**

By: _____
                Vice President

Attest: _____
                Assistant Secretary

**YOU, as Franchisee:**
**JAIN INC.**

By: _____
            (Vice) President

Attest: _____

24

KNIEXCl
146808 10/03

## APPENDIX A

### DEFINITIONS

Agreement means this Franchise Agreement.

Application Fee means the fee you pay when you submit your Application under Section 6.

Approved Plans means your plans and specifications for constructing or improving the Facility initially or after opening, as approved by us under Section 3.

Casualty means destruction or significant damage to the Facility by act of God or other event beyond your reasonable anticipation and control.

Chain means the network of Chain Facilities.

Chain Facility means a lodging facility we own, lease, manage, operate or authorize another party to operate using the System and identified by the Marks.

Combined Fee means the Royalty and System Assessment Fee stated in Section 7.

Condemnation means the taking of the Facility for public use by a government or public agency legally authorized to do so, permanently or temporarily, or the taking of such a substantial portion of the Facility that continued operation in accordance with the System Standards, or with adequate parking facilities, is commercially impractical, or if the Facility or a substantial portion is sold to the condemning authority in lieu of condemnation.

Conference Fee means the fee we charge for your attendance at a conference for Chain Facilities and their franchisees when and if held.

Confidential Information means any trade secrets we own or protect and other proprietary information not generally known to the lodging industry including confidential portions of the System Standards Manual or information we otherwise impart to you and your representatives in confidence. Confidential Information includes the "Rules of Operation Manual" and all other System Standards manuals and documentation, including those on the subjects of employee relations, finance and administration, field operation, purchasing and marketing, the Reservation System software and applications software.

Design Standards mean standards specified in the System Standards Manual from time to time for design, construction, renovation, modification and improvement of new or existing Chain Facilities, including all aspects of facility design, number of rooms, rooms mix and configuration, construction materials, workmanship, finishes, electrical, mechanical, structural, plumbing, HVAC, utilities, access, life safety, parking, systems, landscaping, amenities, interior design and decor and the like for a Chain Facility.

25

<u>Directory</u> means the general purpose directory we publish listing the names and addresses of Chain Facilities, and at our discretion, other Chain Facilities located outside the United States, Canada and Mexico.

<u>Effective Date</u> means the date we insert in the Preamble of this Agreement after we sign it.

<u>Equity Interests</u> shall include, without limitation, all forms of equity ownership of you, including voting stock interests, partnership interests, limited liability company membership or ownership interests, joint and tenancy interests, the proprietorship interest, trust beneficiary interests and all options, warrants, and instruments convertible into such other equity interests.

<u>Equity Transfer</u> means any transaction in which your owners or you sell, assign, transfer, convey, pledge, or suffer or permit the transfer or assignment of, any percentage of your Equity Interests that will result in a change in control of you to persons other than those disclosed on Schedule B, as in effect prior to the transaction. Unless there are contractual modifications to your owners' rights, an Equity Transfer of a corporation or limited liability company occurs when either majority voting rights or beneficial ownership of more than 50% of the Equity Interests changes. An Equity Transfer of a partnership occurs when a newly admitted partner will be the managing, sole or controlling general partner, directly or indirectly through a change in control of the Equity Interests of an entity general partner. An Equity Transfer of a trust occurs when either a new trustee with sole investment power is substituted for an existing trustee, or a majority of the beneficiaries convey their beneficial interests to persons other than the beneficiaries existing on the Effective Date. An Equity Transfer does <u>not</u> occur when the Equity Interest ownership among the owners of Equity Interests on the Effective Date changes without the admission of new Equity Interest owners. An Equity Transfer occurs when you merge, consolidate or issue additional Equity Interests in a transaction which would have the effect of diluting the voting rights or beneficial ownership of your owners' combined Equity Interests in the surviving entity to less than a majority.

<u>Facility</u> means the Location, together with all improvements, buildings, common areas, structures, appurtenances, facilities, entry/exit rights, parking, amenities, FF&E and related rights, privileges and properties constructed at the Location, as modified with our consent.

<u>FF&E</u> means furniture, fixtures and equipment.

<u>FF&E Standards</u> means standards specified in the System Standards Manual for FF&E and supplies to be utilized in a Chain Facility.

<u>Food and Beverage</u> means any restaurant, catering, bar/lounge, entertainment, room service, retail food or beverage operation, continental breakfast, food or beverage concessions and similar services offered at the Facility.

<u>Gross Room Revenues</u> means gross revenues attributable to or payable for rentals of guest rooms at the Facility, including all credit transactions, whether or not collected, but excluding separate charges to guests for Food and Beverage, room service, telephone charges, key forfeitures and entertainment; vending machine receipts; and federal, state and local sales, occupancy and use taxes.

26

Improvement Obligation means your obligation to construct and complete the Facility, in accordance with the Approved Plans and System Standards, as described in Section 3.

Indemnitees means us, our direct and indirect parent, subsidiary and sister corporations, and the respective officers, directors, shareholders, employees, agents and contractors, and the successors, assigns, personal representatives, heirs and legatees of all such persons or entities.
Initial Fee means the fee you are to pay for signing this Agreement as stated in Section 6.

License means the non-exclusive license to operate the type of Chain Facility described in Schedule B only at the Location, using the System and the Mark we designate in Section 1.

License Year means:

(i) *If the Opening Date occurs on the first day of a month*: the period beginning on the Opening Date and ending on the day immediately preceding the first anniversary of the Opening Date, and each subsequent one year period; or

(ii) *If the Opening Date does not occur on the first day of a month:* the period beginning on the Opening Date and ending on the first anniversary of the last day of the month in which the Opening Date occurs, and each subsequent one year period.

Liquidated Damages means the amounts payable under Section 12, set by the parties because actual damages will be difficult or impossible to ascertain on the Effective Date and the amount is a reasonable pre-estimate of the damages that will be incurred and is not a penalty.

Location means the parcel of land situated at **38 South Allison Ave., Xenia, OH** , as more fully described in Schedule A.

Losses and Expenses means (x) all payments or obligations to make payments either (i) to or for third party claimants by any and all Indemnitees, including guest refunds, or (ii) incurred by any and all Indemnitees to investigate, respond to or defend a matter, including without limitation investigation and trial charges, costs and expenses, attorneys' fees, experts' fees, court costs, settlement amounts, judgments and costs of collection; and (y) the "Returned Check Fee" we then specify in the System Standards Manual ($20.00 on the Effective Date) if the drawee dishonors any check that you submit to us.

Maintenance Standards means the standards specified from time to time in the System Standards Manual for repair, refurbishment and replacement of FF&E, finishes, decor, and other capital items and design materials in Chain Facilities.

Marks means, collectively (i) the service marks associated with the System published in the System Standards Manual from time to time including, but not limited to, the name, design and logo for "Knights Inn" and other marks; and (ii) trademarks, trade names, trade dress, logos and derivations, and associated good will and related intellectual property interests.

27

KNIEXCI
146808 10/03

Marks Standards means standards specified in the System Standards Manual for interior and exterior Mark-bearing signage, advertising materials, china, linens, utensils, glassware, uniforms, stationery, supplies, and other items, and the use of such items at the Facility or elsewhere.

Minor Renovation means the repairs, refurbishing, repainting, and other redecorating of the interior, exterior, guest rooms, public areas and grounds of the Facility and replacements of FF&E we may require you to perform under Section 3.16.

Minor Renovation Ceiling Amount means $1,000.00 per guest room.

Minor Renovation Notice means the written notice from us to you specifying the Minor Renovation to be performed and the dates for commencement and completion given under Section 3.16.

Opening Date means the date on which we authorize you to open the Facility for business identified by the Marks and using the System.

Operations Standards means standards specified in the System Standards Manual for cleanliness, housekeeping, general maintenance, repairs, concession types, food and beverage service, vending machines, uniforms, staffing, employee training, guest services, guest comfort and other aspects of lodging operations.

Permitted Transferee means (i) any entity, natural person(s) or trust receiving from the personal representative of an owner any or all of the owner's Equity Interests upon the death of the owner, if no consideration is paid by the transferee or (ii) the spouse or adult issue of the transferor, if the Equity Interest transfer is accomplished without consideration or payment, or (iii) any natural person or trust receiving an Equity Interest if the transfer is from a guardian or conservator appointed for an incapacitated or incompetent transferor.

Punch List means the list of upgrades, updates, improvements, repairs, repainting, refurbishing and replacements we prepare and require for an existing facility to convert to a Chain Facility or as part of the Transfer process.

Protected Territory means **an area to include one mile radius from the front door of the Facility.**

Recurring Fees means the Combined Fee, the Reservation Fee and the Additional Charges as stated in Section 7.

Relicense Fee means the fee your transferee or you pay to us under Section 7 when a Transfer occurs.

Reservation Fee means the fee you pay to us for each confirmation number generated that represents a reservation of one or more guest rooms at the Facility originated or processed through the Reservation System that was originated by a caller to our general consumer toll-free reservation telephone number.

28

Reservation System or "Central Reservation System" means the system for offering to interested parties, booking and communicating guest room reservations for Chain Facilities described in Section 4.2.

Rooms Addition Fee means the fee we charge you for adding guest rooms to the Facility.

Royalty means the monthly fee you pay to us for use of the System under Section 7.1. "Royalties" means the aggregate of all amounts owed as a Royalty.

System means the comprehensive system for providing guest lodging facility services under the Marks as we specify, which at present includes only the following: (a) the Marks; (b) other intellectual property, including Confidential Information, System Standards Manual and know-how; (c) marketing, advertising, publicity and other promotional materials and programs; (d) System Standards; (e) training programs and materials; (f) quality assurance inspection and scoring programs; and (g) the Reservation System.
System Assessment Fee means the fee charged under Section 7 to pay for the cost of the System's marketing, advertising, public relations, Reservation System, training and other services.

System Standards means the standards for participating in the Chain and using the System published in the System Standards Manual, including but not limited to Design Standards, FF&E Standards, Marks Standards, Operations Standards, Technology Standards and Maintenance Standards and any other standards, policies, rules and procedures we promulgate about System operation and usage.

System Standards Manual means the Standards of Operation and Design Manual and any other manual we publish or distribute specifying the System Standards.

Taxes means the amounts payable under Section 7.2 of this Agreement.

Technology Standards means standards specified in the System Standards Manual for local and long distance telephone communications services, telephone, telecopy and other communications systems, point of sale terminals and computer hardware and software for various applications, including, but not limited to, front desk, rooms management, records maintenance, marketing data, accounting, budgeting and interfaces with the Reservation System to be maintained at the Chain Facilities.

Term means the period of time during which this Agreement shall be in effect, as stated in Section 5.

Termination means a termination of the License under Sections 11.1 or 11.2 or your termination of the License or this Agreement.

Transfer means (1) an Equity Transfer, (2) you assign, pledge, transfer, delegate or grant a security interest in all or any of your rights, benefits and obligations under this Agreement, as security or otherwise without our consent as specified in Section 9, (3) you assign (other than as collateral security for financing the Facility) your leasehold interest in (if any), lease or sublease all or any part of the Facility to any third party, (4) you engage in the sale, conveyance, transfer, or donation of

29

KNIEXCl
146808 10/03

your right, title and interest in and to the Facility, (5) your lender or secured party forecloses on or takes possession of your interest in the Facility, directly or indirectly, or (6) a receiver or trustee is appointed for the Facility or your assets, including the Facility. A Transfer does not occur when you pledge or encumber the Facility to finance its acquisition or improvement, you refinance it, or you engage in a Permitted Transferee transaction.

"You" and "Your" means and refers to the party named as franchisee identified in the first paragraph of this Agreement and its Permitted Transferees.

"We", "Our" and "Us" means and refers to Knights Franchise Systems, Inc., its successors and assigns.

30

KNIEXCI
146808 10/03

## SCHEDULE A

(Legal Description of Facility)

31

KNIEXC1
146808 10/03

## SCHEDULE B

### PART I: YOUR OWNERS

| Name | Ownership Percentage | Type of Equity Interest |
|------|---------------------|-------------------------|
| Anil Jain | 50% | common stock |
| Ashima Jain | 50% | common stock |

### PART II: THE KNIGHTS INN FACILITY:

Primary designation of Facility: **Knights Inn**

Number of approved guest rooms: **88**.

Parking facilities (number of spaces, description): **88**.

Other Amenities, services and facilities:

PART III:    DESCRIPTION AND SCHEDULE OF RENOVATIONS TO BE COMPLETED AS THE IMPROVEMENT OBLIGATION:

[Punch List to be Attached]

32

KNIEXC1
146808  10/03

MAR-24-2004 16:15        CENDANT /PROP.OPENING                9734968782    P.02/10



### FRANCHISOR: KNIGHTS FRANCHISE SYSTEM, INC.
### "SCHEDULE B PART III"
### PUNCHLIST FOR CONVERSION
### AUGUST 6, 2003
### (Revised on March 24, 2004)

| **FACILITY** | **TIER** | **GUESTROOMS** |
|---|---|---|
| Allendale Inn | Inn | 78 Rentable |
| 38 S. Allison Avenue | | 10 Unrentable |
| Xenia, Ohio 45385 | | 88 Total |

| **OWNER/APPLICANT** | **SALESPERSON** |
|---|---|
| Anil Jain | Linda Bigi |
| (973) 324-4961 | (973) 626-2526 |

**Q.A. REPRESENTATIVE**
Curt Keeton

### PROPERTY CONDITION SUMMARY

This 15 year-old property consists of two rectangular, single-story, double loaded, exterior corridor buildings constructed of wood with a painted wood façade. Building exteriors, public areas and guestrooms will require upgrading to comply with Company standards. 10 rooms are currently down for complete renovations. Prior to re-entering the system, total renovation of all FF&E to comply with Company specifications is required. There are 6 units that have kitchenettes. Property was built as an original Knights Inn and is the former Knights Inn #13039. Additional landscaping will be required to enhance curb appeal.

The property is located 15 miles southeast of Dayton, Ohio on US 35 and is surrounded by several businesses, restaurants and stores. The market consists of 30% commercial, 10% leisure tourist and 60% local clientele. Area competition includes a Holiday Inn and the Regency Inn.

| | **EXISTING** | **STANDARD** |
|---|---|---|
| Lobby Dimensions: | 288 SF | |
| Guestroom Dimensions: | 288 SF | 288 SF |

### COMPLETION TIME

All items listed in this punchlist must be completed before opening as a Knights Inn.

2

Allendale Inn
Xenia, Ohio

> *All Knights Inn properties are required to be in compliance with all items outlined in the Standards of Operations and Design Manual. Following is a partial, but by no means complete, listing.*

- All Property Managers must attend the Knight School Training sponsored by the Company. New managers must attend no later than 6 months after assignment.
- Franchisees for new properties – first time joining the Knights system – must attend the New Owner's Orientation sponsored by the Company. New owners must attend the first available orientation class within 60 days of signing the Franchise Agreement.
- Knights Inn exterior signage per Company specifications.
- Dumpster enclosure to conceal from guests' view.
- Facilities to assist the handicapped in accordance with Local, State and Federal codes, regulations and ordinances.
- A hotel function cylindrical knob lock and 1" throw separate keyed deadbolt (keyed for emergency access only) per Company standards and providing it meets state and local codes.
- A one-way viewer in all guestroom entrance doors.
- A self-closing device on all interior guestroom entrance doors.
- A one way, doorknob latchset and a separate, non-keyed, 1" deadbolt lock on all connecting room doors. Operating knobs must be located on room side only with flush plates between doors.
- A minimum of two framed pictures per room with glass front, (20" x 24" minimum) or one large picture (30" x 30" minimum) is required. All artwork must coordinate with other room furnishings.
- Hard-wired smoke detectors with a backup system. This system may be a battery within the unit or a generator capable of restoring power in the event of an outage.
- A minimum of 25% of guestrooms must be prepared and designated as non-smoking rooms.
- A GFCI (Ground Fault Circuit Interrupter) outlet in vanity areas is required.
- Company requires that all properties maintain housekeeping at the highest levels. We strongly recommend that the property implement housekeeping training programs to ensure customer satisfaction.
- Logo supplies must be available at the entry inspection but may not be placed in the guestrooms until official opening.

MAR-24-2004  16:16        CENDANT /PROP.OPENING                    9734968782    P.04/10

3

Allendale Inn
Xenia, Ohio

---

*In addition, the following renovations are required for this site.*

---

## PROPERTY SIGNAGE

1.    Signage must be purchased from a vendor approved in advance by the Franchisor, and may not be installed without prior written approval from the Property Openings Department. **Your License Agreement controls your use of signage and timing of installation.** All existing signage (building, high-rise, channel letters, billboards, etc.) must be removed. **Modification of the existing signage or face replacement may be acceptable if approved by the Brand Identity Department.**

2.    Remove neon "OPEN" sign from lobby window.

---

## PROPERTY EXTERIOR

1.    Upgrade building exteriors to include:
      a.    Paint building exteriors (doors, fascia, soffits, and storefronts). Contact the Design and Development Department at (973) 496-2525 for recommended color schemes.
      b.    Replace light fixtures where broken or missing.
      c.    Professionally clean and chemically treat walkways to eliminate stains.
      d.    Replace or paint fire extinguisher boxes where rusted or peeling.

2.    Replace torn canopy at lobby entrance with a new logo'd style. Contact the Brand Identity Department at (973) 496-8427 for assistance. **To be completed no later than 30 days after opening.**

3.    Additional landscaping will be required by adding seasonal hearty flowers to the entrance and perimeter areas to add color to the existing greenery. Recommend installing flower boxes or potted plants to the lobby entrance. Manicure existing landscaping (i.e. trees) to eliminate overgrowth. Strongly recommend using a professional landscaping firm. For additional assistance contact the Design and Development Department of Knights Inn at (973) 496-2525.

4.    Reseal and stripe parking lot.

4

Allendale Inn
Xenia, Ohio

---

## PUBLIC AREAS

1. Upgrade Lobby/Front Desk Area to include the following: **To be completed no later than 30 days after opening.**
   a. Provide new seating package to include tables. Breakfast tables and chairs are not acceptable as lobby furniture if breakfast is not provided. Adequate seating must be provided in the lobby area. Sofas and chairs must be commercial grade and fabric upholstered. **If a Continental breakfast is served, the existing tables/chairs are acceptable.**
   b. Recommend installing a decorative area rug for the seating area.

2. Upgrade public restrooms to include:
   a. Replace wallcovering. Company requires either vinyl wallcovering, an approved textured finish or a good, quality durable paint.
   b. Deep clean, regrout and seal ceramic tile flooring. Recaulk as needed.

3. Deep clean bin type ice machine. The existing bin style ice machine is acceptable until condition grades a "C" on any future Quality Assurance evaluation. Upon replacement, the installation of one sanitary self-dispensing type ice machine is required.

4. Upgrade commercial laundry to include:
   a. Repair/paint stained ceiling.
   b. Cover exposed lights.
   c. Replace worn flooring. Company requires the installation of .085 commercial grade sheet vinyl or ceramic tile. (Recommend "6-8" ceramic tile). **To be completed no later than 6 months of opening.**
   d. Remove non-essential items (i.e. storage items) to eliminate cluttered appearance.

---

## PROPERTY MANAGEMENT SYSTEM REQUIREMENTS

1. A Company approved Property Management System (PMS) is required. Requirements are below, or as specified in your License Agreement.
   a. Dot matrix printers will require a paper hole for the bottom feed of forms.
   b. A space for the file server must be made in the front desk area or in an area which is accessible 24-hours a day including the ability for the night auditor to utilize it.

Allendale Inn
Xenia, Ohio

---

### PROPERTY MANAGEMENT SYSTEM REQUIREMENTS CONTINUED

c.    Space must be located near the file server for any interface equipment that will be needed, i.e.: call accounting and Point of Sale (POS) terminals. When considering the placement of this equipment remember that it will need electrical outlets and that the interface vendor will need to run cable from the interface equipment to the Property Management System (PMS).

2.    Hardware power requirements are as follows:
a.    Proper electrical connections must be in place or the Property Management System will not be installed. Refer to the Installation Guide for specifications.
b.    One Uninterrupted Power Supply (UPS) unit will be supplied with the package. The UPS must be placed at least three feet from the file server.
c.    The file server and its monitor will plug into the UPS using 2 of its power outlets.
d.    Each workstation will require 2 power outlets.
e.    Each printer and modem will require 1 power outlet each.
f.    The UPS will require 1 Dedicated power outlet on its own dedicated circuit breaker.

3.    Telephone line requirements are as follows:
a.    Two dedicated telephone lines with their own phone numbers are required. Three are recommended. No other modems, fax machines, etc are to be connected to these phone lines. For the third phone line, used for Internet access, we will allow a line to run through your phone switch.
b.    Two modems will be supplied with the package.

4.    Interface vendors must be contacted in advance to insure that they will meet the requirements. The franchisee is responsible for arranging any required interface upgrades that may be necessary and for the testing of these upgrades.

5.    All cable must be from a Company approved vendor. Refer to the Installation Guide for specifications.

6

Allendale Inn
Xenia, Ohio

---

**GUESTROOMS/BATHS** *(Rooms Inspected):* #133, #136, #145, #150, #116, #112, #223, #218, #214, #254, #247, #239

---

1.  Property has 10 rooms totally down (5 for renovations and 5 for storage). It has been approved that these rooms be stripped of all F F & E and in an unrentable condition. Good quality draperies are required to be installed and closed at all times to prevent the rooms from appearing vacant. Quality Assurance will inspect these rooms in all future Quality Assurance evaluations to verify that rooms are in an unrentable condition. Prior to these rooms entering the system, total renovation of all F F & E is required.

2.  Upgrade guestroom entrance doors to include:
    a.  Remove indicator locks and domestic style latch sets. Company requires a hotel function cylindrical knob lock and 1" throw separate keyed deadbolt (keyed for emergency access only) per Company standards and providing it meets state and local codes.
    b.  Install secondary locks (chains or U-bars).
    c.  Replace room numbers and provide where missing. A logo'd or non-logo'd plaque style is required.

3.  Provide a one way, doorknob latchset and a separate, non-keyed, 1" deadbolt lock on all connecting room doors. Operating knobs must be located on room side only with flush plates between doors. Remove slide bars and refinish doors to a like new condition.

4.  Ensure all rooms are equipped with hard-wired smoke detectors with a backup system. This system may be a battery within the unit or a generator capable of restoring power in the event of an outage.

5.  Renovate guestrooms to include the following:
    a.  All furniture, finishes and fixtures must coordinate with other room furnishings.
    b.  Replace wallcovering. Company requires either vinyl wallcovering, an approved textured finish or a good quality, durable paint.
    c.  Paint ceilings to eliminate stains and mildew as in room #150.
    d.  Replacement of pictures is required. A minimum of two framed pictures per room with glass front, (20" x 24" minimum) or one large picture (30" x 30" minimum) is required. All artwork must coordinate with other room furnishings.
    e.  Replace carpet to eliminate all that have burn marks, stains, matted or is sculptured as in rooms #150, #223 or #214. Company requires minimum 28- ounce cut pile carpet with padding. Carpet must also be wall to wall. Sculptured carpet is not acceptable.
        Professionally clean balance of carpets to ensure a like new appearance.

MAR-24-2004  16:18          CENDANT /PROP.OPENING                    9734968782   P.08/10

7

Allendale Inn
Xenia, Ohio

## GUESTROOMS/BATHS CONTINUED

    f.    **Replace furniture packages where needed to eliminate all damaged and/or stained pieces to include leisure chairs. A minimum of one credenza/armoire, a framed wall mirror, one headboard per bed, and one free standing night stand for a two bedded room, two for a single bedded room is required. A writing surface is required to consist of either a desk or an activity table. Two comfortable fabric upholstered chairs per room are required.**

    g.    Remove/replace worn and stained sofas. Sofas must be fabric upholstered.

    h.    **Ensure all rooms are furnished with 2 lamps per headboard wall and a light at leisure area. All wall-mounted lamps must have wire covers or molding, loose cords are not acceptable. Lamp package must be neutral and contemporary (i.e. brass). The use of red or other colors of anodized metal is not recommended. Replacement of all lampshades is required. Lampshades must match in style, texture and color. Single bedded rooms are allowed to have one headboard light source only.**

    i.    Replace worn televisions with 20" remote controlled televisions. Recommend installing 25". Remote controlled televisions are required.

    j.    Replace broken or damaged HVAC grills. Ensure all HVAC units are in good working order.

    k.    Replace bedspreads to eliminate all that are fading, worn or thinning. Each bed must have a quilted bedspread of an appropriate size for the bed.

    l.    Replace worn and flat pillows.

    m.    **Replace draperies to eliminate all that are permanently stained, damaged and/or without blackout capability.** New draperies must have blackout capabilities, be pleated to double fullness, provide for overlapping of panels and must be baton or mechanically operated. Draperies that do not have blackout capabilities are not acceptable.

    n.    Replace bedsets (mattress and boxsprings) to eliminate all that are stained, sagging or have loss of support as in rooms #133, #112, and #239.

6.    Renovate bath area to include the following:

    a.    Refinish/repair/replace vanities, sinks, cabinets to eliminate chipped edges, stained or cracked finishes or missing cabinet fronts. Corian, cultured marble or a light, neutral laminate are acceptable options. Removal of cabinets is an acceptable option.

    b.    Replace de-silvering vanity mirrors. Mirrors must extend the length of the vanity.

    c.    Replace plumbing fixtures/trim (sinks and tubs) where tarnished or corroded (faucets, drains rings, etc.). In addition, provide all hot/cold water indicators where missing.

    d.    Replace rusted stack type towel racks with towel bar/shelf units.

MAR-24-2004  16:18          CENDANT /PROP.OPENING                    5734368782    P.09/10

8

Allendale Inn
Xenia, Ohio

## GUESTROOMS/BATHS CONTINUED

e.   Replace wallcovering to eliminate all that have stains, peeling or buckling. Company requires either vinyl wallcovering, an approved textured finish or a good quality, durable paint.

f.   Repair/paint stained and mildewed ceilings.

g.   Replace bathroom flooring where worn, discolored or stained. Company requires the installation of .085 commercial grade sheet vinyl (recommend minimum of 2" single color ceramic tile).

h.   Repair and maintain air vents to eliminate excessive noise.

i.   Provide light covers where missing as in room #150.

j.   Refinish tubs to eliminate burn marks. If refinishing cannot restore tubs to a like "new" condition, replacement will be required.

k.   Replace rusted shower rods and broken shower rod covers throughout.

l.   Replace/provide toilet lids where worn or missing. Toilet seat/lid combinations are required.

9

Allendale Inn
Xenia, Ohio

---

HANDWRITTEN OR UNAUTHORIZED REVISIONS TO THIS PUNCHLIST ARE NOT
VALID AND DO NOT BIND THE FRANCHISOR. ANY AND ALL REVISIONS TO THIS
PUNCHLIST MUST BE MADE AND APPROVED BY THE FRANCHISOR'S QUALITY
ASSURANCE DEPARTMENT.

---

This Punchlist identifies items that require action due to meet the Franchisor's standards. The
Franchisor does not warrant that completion of the items on this Punchlist will cause the
converting facility to be in compliance with any applicable federal, state, local codes, ordinances
or regulations. You (and your architect, contractor and engineer, if applicable) are solely
responsible for conforming the Facility to the requirements of federal, state and local codes,
ordinances and regulations that may apply to your site.

This Punchlist has been prepared on the basis of a random sample inspection of the Facility on
the date specified. The owner is responsible for meeting all Franchisor Standards. All repairs,
replacements and improvements must cause the item to meet or exceed the Franchisor's standards
published in the Standards of Operation and Design Manual.

This Punchlist will be subject to revision at the discretion of the Franchisor if the condition of the
facility changes materially or the License (Franchise) Agreement to which this is attached is
executed more than 90 days after the date of the Punchlist. Note, that ordinary wear and tear,
particularly during busy seasons, may result in the need for additional work to meet entry
standards of the Franchisor. Also, this Punchlist may become null and void if the property does
not enter the System within 180 days after the punchlist date or as otherwise specified by the
license (franchise) agreement.

**This Punchlist is subject to revision by the Franchise Review Committee and should not be
considered to be final until the License Agreement for the inspected facility is executed by
the Company.**

NOTE: Any item on this Punchlist that is not required to be completed prior to opening as a
Knights Inn will continue to be evaluated for appearance and condition during all Quality
Assurance inspections conducted before the date when completion is required.

**This Punchlist was revised on March 24, 2004. All previous copies are invalid.**
1.    revised on 8/13/03 by: ams          2.    revised on 3/24/04 by: ams

Signed: _____          Date: __3/24/04__

Print Name: _____
OH XENIA ALLENDALE INN CV KI
JD/JD/JD

## KNIGHTS FRANCHISE SYSTEMS, INC.
### SCHEDULE C
#### June 2003

Other Fees

A.    GDS and Internet Booking Fees

**June - August 2003**

We will charge you under our Central Commission Payment Program either a GDS Fee or an Internet Booking Fee for reservations processed through the global distribution systems ("GDS"), including any operated by an affiliate, or the Internet for your Facility. The GDS Fee described in Section 7 is $4.50 per reservation processed through any GDS or through any Internet website powered by a GDS. Other Internet-originated reservations, including the Chain's website, carry fees of $2.50 per reservation booked. GDS and Internet originated reservations may also carry a commission if the originator qualifies. If a guest cancels a GDS or Internet-originated reservation using the same source as was used to originate the reservation, you will not be charged the applicable fee.

**Effective September 1, 2003**

We will charge you under our Central Commission Payment Program either a GDS Fee or an Internet Booking Fee for reservations processed through a GDS, including any operated by an affiliate, or the Internet for your Facility. The GDS Fee described in Section 7 is $4.50 per reservation processed through any GDS or through any Internet website powered by a GDS. Internet-originated reservations carry fees of $3.50 per reservation booked through sources other than GDS powered websites or our Chain website. GDS and Internet-originated reservations may also carry a commission if the originator qualifies. If a guest cancels a GDS or Internet-originated reservation using the same source as was used to originate the reservation, you will not be charged the applicable fee.

B.    Additional Reservation System Charges

Agency and other commissions are typically 10% of the Gross Room Revenues generated by each reservation booked by an agency or other qualifying originator, plus our service charge of .75% of commissionable revenue. We may raise the agency commission to up to 15% of Gross Room Revenues from time to time for certain Chain-wide promotions, plus our service charge of .75% of commissionable revenue upon 20 days prior written notice. Such increases will apply only to reservations booked after we announce the increased commission unless we specify otherwise. The general sales agent commission (also known as the international sales office commission) is 15% of the Gross Room Revenues generated by each reservation originated in an area served by a general sales agent/international sales office and includes the agency commission.

We may assess you for additional fees or commissions charged us by distribution channels,

33

travel intermediaries and retailers. We also charge you an annual website maintenance fee of $40 and may charge additional fees for performing other website related services. By accepting reservations from the GDS, Internet, travel agencies and other intermediaries, you agree to participate in our Central Commission Payment Program and to reimburse us for any fees or commissions we pay to them on your behalf.

We will offer you the opportunity to participate in certain Internet distribution channel marketing and reservation activity with third parties including our affiliates. If you participate in this activity, you will offer rooms for sale through an electronic distribution channel on which you will be paid a net, non-commissionable rate if and when the rooms are sold through the distribution channel. For providing and managing this activity we may receive commissions from the Internet distribution channels based upon the mark-up or room rates that they receive for renting your rooms. We will allocate these commissions to Royalties and System Assessment Fees in the same proportion as the standard rates for these fees set forth in Section 7.1.

We or an affiliate may charge you a commission of up to 10% of the Gross Room Revenues generated from consumed reservations booked by members of affinity groups and organizations participating in our Member Benefits sales program. We or our affiliate usually pays a portion of this commission to the affinity group or organization in exchange for promoting the Member Benefits program to its members.

We reserve the right to increase or modify travel agent commissions, GDS Fees, Internet Booking Fees, service charges and any other fee and to add other fees and charges for new services, in our sole discretion as to amount or formula from time to time but with at least 60 days prior written notice, to reflect changes in the fully allocated costs of providing Reservation System services.

C.      Special Marketing Assessment

We will charge you a Special Marketing Assessment for your participation in any frequent guest rewards program that we designate as a mandatory marketing program. Under this program, program members staying at qualifying rates at Chain Facilities will earn points which will be redeemable for free stays at Chain Facilities and for other travel and merchandise awards. The Special Marketing Assessment will be 5% of the Gross Room Revenues accruing from each qualifying stay at the Facility. You will be billed monthly in arrears for qualifying stays by program members during the preceding month.

D.      Guest Services Assessment

If the number of guest complaints per 1,000 occupied roomnights about you or the Facility in a calendar year exceed the "Annual Facility Allotment" we establish with the approval of the Knights Inn Franchisee Advisory Board, you will be charged a "First Assessment" of $10.00 for each additional complaint received during that year. You will be contacted when the complaint is received and you will be responsible to resolve the complaint to the satisfaction of the guest. If any complaint for which you have received a First Assessment is not resolved to the satisfaction of the

34

Certification of ADA Compliance
Facility Evaluation
146808  10/03

complaining guest within 14 business days after referral to you and the guest contacts us again to seek resolution, you will be charged a "Second Assessment" of $25.00, plus the costs we incur to settle the matter with the guest. You will be informed of your Annual Facility Allotment when it is established.  The amounts of the First and Second Assessments may be changed on a Chain-wide basis at any time upon 60 days advance notice, with the approval of the Knights Inn Franchisee Advisory Board.

35

# EXHIBIT B

Location: Xenia, OH
Site: /3039

## SATELLITE CONNECTIVITY SERVICES ADDENDUM

This Satellite Connectivity Services Addendum (the "Addendum") by and between KNIGHTS FRANCHISE SYSTEMS, INC. ("we," "our," "us") and **Jain Inc.** ("you," "your") is dated _3-26_, 2064 (the "Addendum Effective Date"). This Addendum is part of the Franchise Agreement (the "Agreement") between you and us.

Notwithstanding anything to the contrary set forth in the Agreement, the following provisions shall supercede and apply:

1. Services. Our affiliate has entered into an agreement with Hughes Network Systems, Inc. ("HNS") under which we are authorized to provide our franchisees with satellite-based Internet connectivity services. The specific satellite communications services ("Services") and related equipment necessary for the proper functioning of the Services ("Equipment") are listed in Schedule 1 of this Addendum. We will furnish to you the Services and Equipment (collectively, the "VSAT System") for the Facility. Once installed, you will access the Central Reservation System, the Central Data Warehouse, the Email Network and the Brand Information Source (as those terms are defined in the Software and Services Agreement) using only the VSAT System, except in emergencies, while this Addendum remains in effect.

2. Site Inspection. You will reasonably cooperate with us and HNS to determine how the Equipment will be installed. You will furnish us or HNS with any information requested in order to complete the installation. We or HNS, in our sole discretion, will determine the placement of the Equipment at the Facility, which is intended to ensure the optimal performance of the Services.

3. Installation. HNS will install the Equipment at the Facility during regular business hours, when possible. HNS may install, at its sole discretion, anti-icing equipment to protect the Equipment at the Facility at no additional cost to you. If anti-icing equipment is installed, you must provide, at your expense and prior to the installation date, a source of 110V GFCI 20-amp non-dedicated circuit AC power that is readily available at the antenna site. If your installation involves more than two access devices, or additional Equipment, cabling or costs beyond the standard installation package, we may charge you for the charges we incur with HNS to complete installation of the VSAT System, plus an administrative charge of nor more than $50.00. You will allow installation personnel reasonable access to all areas of the Facility necessary to perform the installation. You will obtain in advance, if necessary, any required permits, approvals or consents from any governmental authority, your landlord or mortgagee to install the Equipment at the Facility, including access to the premises of a third-party, if necessary, to complete the installation. You will permit the installation of certain Equipment on the roof or attached to the exterior walls of the Facility. You will furnish to the installation personnel, free of charge, adequate electrical power, local telephone service, water and other utilities necessary to perform the installation. If (a) you postpone a scheduled installation with less than seven (7) days prior written notice to us, or (b) an installation is delayed or aborted

1

because you did not comply with this Section 3 (collectively, a "Cancellation"), you will pay us an Installation Cancellation Charge of $1,000.00 within five (5) days after our written notice to you. If a second Cancellation occurs, you will be in default under this Addendum. You must then cure this default within thirty (30) days after you receive written notice from us. Toll-free access to the Central Reservation System will be unavailable to you while you are in default under this Addendum.    We will provide and will reprogram your property management system or property terminal unit to dial a working telephone number for Central Reservation System access, which may cause you to incur toll charges.

4.    Operations; Authorizations. (a) Once installed, you will not move the Equipment without our prior written consent.    You will maintain the Equipment according to the environmental conditions we specify.    Upon reasonable prior notice, you will give us or HNS reasonable access to inspect the Equipment.

(b)    You will maintain, at your expense, any necessary permits and licenses required for your use of the VSAT System.

(c)    After the Start Date, we will provide through HNS the Services during the Term so long as you are not in default under this Addendum or the Agreement.

5.    Support and Maintenance. After the Equipment is installed and Service commences, we will provide you a toll-free number for reporting VSAT System problems. You will contact the number promptly when and if you experience any problems with the VSAT System, or if any casualty affects the VSAT System. We or HNS will work with you to determine if the problem requires support or maintenance services. The support and maintenance services we or HNS will provide you are listed in Schedule 2 to this Addendum. You will allow maintenance personnel reasonable access to all areas of the Facility necessary to perform these services.

6.    Monthly Charges.    You will pay to us for the VSAT System a Monthly Service Charge of $150.00 for the period (the "Install Period") beginning on the Start Date and ending at the end of 60 full months after the Start Date, or such lesser amount as we determine to charge all similarly situated licensees in our sole discretion for any subsequent period of time and so notify you in writing. The "Start Date" is the date the Equipment has been installed at the Facility and the VSAT System begins operating. Charges will begin to accrue on the Start Date. We will invoice you for the Monthly Service Charge in advance each month. We will charge you a pro-rated amount of the Monthly Service Charge for the portion of a calendar month in which the Start Date occurs if it is not the first day of the month. You will pay the invoice amount to us upon receipt. You will also pay any excise, sales, use or other taxes assessed in connection with the VSAT System. We may apply any amounts received to any outstanding invoices in any order. We may, after we give you at least 30 days advance written notice, increase the Monthly Service Charge during the term of this Addendum by an amount that reflects the actual price increase to us in the rates HNS charges us for the VSAT System and the cost of providing any related support or maintenance services. If we increase your Monthly Service Charge, we will also apply these increases to all other similarly situated Chain Licensees.

7. Term. This Addendum will be effective from the date of execution by you and us and

2

KNIEXCI
146808 10/03

shall continue in full force and effect for a period (the "Initial Term") ending on the last day of the sixtieth (60th) month, starting on the first day of the month following the Start Date (the "Term Start Date"), unless earlier terminated in accordance with the terms of this Addendum or the Agreement. At the end of the Initial Term, this Addendum shall renew (a "Renewal Term") on a quarterly basis until either you or we give written notice of termination to the other party at least ninety (90) days before the end of the Initial Term or any subsequent Renewal Term.

8. <u>Software</u>. (a) We assign to you HNS' non-exclusive licenses to use the operating systems in connection with the VSAT System (the "Software"), subject to the conditions and limitations in this Addendum. The Software licenses are found on the packaging of the Equipment. The Software may be used only in conjunction with the VSAT System at the Facility, at no other location, and for the sole purpose of obtaining the Services in connection with the operation of your franchise with us. You may not disclose, reverse engineer, alter, add to, modify or copy the Software for any reason. You may not, directly or indirectly, distribute, sell, assign, transfer, offer, disclose, lease or license the Software to a third party.

(b) Title to and ownership of the Software shall remain with us or those entities that have authorized us to sublicense and use them, free of any claim or right of yours or the holder of any security interest, lien or encumbrance on the Facility or any of your other property. If any person attempts to establish any legal right in the Software, you will promptly notify us in writing.

9. <u>Title to Equipment; Risk of Loss; Insurance</u>. HNS or its designee retains title to the Equipment. You have no right, title, or interest in the Equipment other than as specified in this Addendum. The Equipment is not intended to be a fixture or permanently attached to any real property. You will not allow any security interest, landlord's lien, or any other lien or encumbrance to be placed on or attach to the Equipment. If any person attempts to establish any legal right in or to the Equipment, you will promptly notify us in writing. We or HNS may, at our option, mark, label or otherwise identify the Equipment. You will not remove or deface such identification. You bear the entire risk of loss, theft, damage or destruction of any installed Equipment from any cause whatsoever, unless we or HNS directly caused the loss, damage or destruction. You will promptly notify us if the Equipment is damaged for any reason. You will maintain "all-risk" fire and extended casualty (including any acts of nature such as lightning, wind, rain, snow, flood, fire and hail) insurance for the Equipment during the Initial Term and any Renewal Term of at least $25,000, and you name us, Cendant Corporation, Cendant Finance Holding Corporation, their successors and assigns as additional insureds. You will furnish us, prior to installation of the VSAT System, with a certificate of insurance showing the insurance coverage is in effect, the named insured and additional insureds. You must furnish us with an updated certificate of insurance each year when renewed and every time a change is made in your insurance policy or insurance carrier.

10. <u>Force Majeure</u>. If performance by you, HNS or us is delayed or prevented because of strikes, inability to procure labor or materials, defaults of suppliers or subcontractors, delays or shortages of transportation, failure of power or telephone transmissions, restrictive governmental laws or regulations, weather conditions, or other reasons beyond the reasonable control of the party, then performance of such acts will be excused and the period for performance will be extended for a period equivalent to the period of such delay. Delays or failures to pay resulting from lack of funds

3

KNIEXC1
146808 10/03

will not be deemed delays beyond your reasonable control.

11. No Warranties; Security; Indemnity. (a)  WE MAKE NO WARRANTY WHATSOEVER, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY ABOUT THE VSAT SYSTEM, ITS MERCHANTABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, OR ITS CONFORMANCE TO SPECIFICATIONS OF ANY ORDER OR DOCUMENTATION.

(b)  We do not warrant any connection to or transmission over the VSAT System, other than as specified in this Addendum. Your use of any information obtained through the Services is at your own risk. We deny any responsibility for the accuracy or quality of the information obtained through the Services. We do not warrant that the VSAT System will be operate uninterrupted or error-free.

(c)  You may not use the VSAT System to take any actions or make any statements that (i) infringe on another party's copyright, patent, trademark, trade secret or other proprietary rights or rights of publicity or privacy; (ii) violate any applicable law, statute, ordinance or regulation; (iii) are defamatory, trade libelous or threatening; (iv) are pornographic or obscene; (v) violate any laws regarding unfair competition, discrimination or false advertising; (vi) result in the distribution of viruses, Trojan horses, worms, time bombs, cancelbots, chain letters or other similar harmful or deleterious programming routines; or (vii) result in the unauthorized entry to any other network, machine or device accessible through the Services. You are responsible for all content transmitted from the VSAT System using the Services.

(d)  You are responsible for user access security for the VSAT System, and any unauthorized use of the VSAT System. You must authorize and supervise the users of the VSAT System. We may not provide user access security. However, we and HNS will use reasonable efforts to assist you with detecting and identifying a possible security breach.

(e)  We or HNS may, at our sole discretion, institute security controls on the Services to protect the confidentiality, privacy, integrity and availability of your information and our information. These controls include (i) requiring users to utilize unique identification and authorization; (ii) limiting certain levels of access to persons you authorize; (iii) implementing access controls on all data, software or other file-system objects to limit access to only authorized users; (iv) ensuring the integrity of all data stored or processed; and (v) preventing the loss of data processed or transferred.

(f)  You acknowledge that the VSAT System is specifically authorized for the Facility's commercial use only, and is not intended for personal Internet use by your personnel or Chain guests. We or HNS may, at our sole discretion, institute filters, screens, traps or other devices on the Services and block certain Internet content from being received at or transmitted from the Facility.

(g)  You will indemnify and hold harmless us, our affiliates, successors and assigns and each of the respective directors, officers and employees associated with them against all claims of employees, agents, guests, and all other persons and entities, arising out of your operation, use or

4

non-use of the VSAT System, including any content disseminated from the VSAT System at the Facility. We will not be liable to you or any other person or entity for personal injury, personal loss or property loss, including but not limited to, damage to the Facility, as a result of your operation, use or non-use of the Services and Equipment.

12. Temporary Internet Service. If installation of the VSAT System at the Facility is delayed when your Facility opens as a Chain Facility, you must subscribe, on a temporary basis, to the Internet access service we designate if it offers a local point of presence where the Facility is located. However, in certain locations you may be obligated to pay additional Internet access charges if your usage exceeds certain specified limits. If our designated supplier does not offer service in your area, you must subscribe to another Internet service provider, at your cost, until local Internet access service is available from our designated supplier so you can access our information sources available to franchisees over the Internet. You will be responsible for all charges for local access and long distance telecommunications, except the direct charges of any toll-free service we offer.

13. Default; Termination; Attorney's Fees. (a) If you are in default under Section 11.1 of the Agreement, or any one of the events described in Section 11.2 of the Agreement that gives us the right to terminate occurs, or you violate Section 11(c) of this Addendum, or you violate Section 8 of the Addendum, or you are in default under either Sections 2 or 3 of the Addendum, or the Equipment becomes inoperable by your act or omission, or you assign or transfer, or attempt to assign or transfer the Services or Equipment without our consent, except as permitted under the Agreement, then to the extent permitted by applicable law, we shall have the right to suspend the Service and use of the Equipment, while the default remains uncured. Additionally, if you default under this Addendum and do not cure the default within the time permitted, we may, at our option, terminate only this Addendum and not the Agreement, upon written notice to you.

(b) Upon the termination of this Addendum for any reason, you will permit us or HNS reasonable access to Facility to remove the Equipment. YOU EXPRESSLY WAIVE ANY RIGHT TO NOTICE OF OR A HEARING WITH RESPECT TO REPOSSESSION AND CONSENT TO ENTRY INTO THE FACILITY BY US, HNS OUR OR THEIR AGENTS OR REPRESENTATIVES TO REMOVE THE EQUIPMENT WITHOUT JUDICIAL PROCESS. If you fail or refuse to permit the peaceable entry to take possession of any Equipment, you will be liable for rental of the Equipment at the rate of Five Hundred Dollars ($500.00) per week from the date that we first attempt to retake it.

(c) If we terminate this Addendum under Section 13(a), you will pay us "Addendum Liquidated Damages" of One Thousand Dollars ($1,000.00) within 10 days following the date of termination. Addendum Liquidated Damages are paid in place of our claims for lost future Monthly Service Charges under this Addendum and the costs to de-install the Equipment. You and we acknowledge that actual damages are difficult or impossible to ascertain on the Addendum Effective Date, and the amount of the Addendum Liquidated Damages is a reasonable pre-estimate of the damages that will be incurred and is not a penalty. Our right to receive other amounts due under the Agreement and this Addendum is not affected.

5

KNIEXC1
146808 10/03

(d)    The non-prevailing party will pay the costs and expenses, including reasonable attorneys' fees and the expenses, incurred by the prevailing party to enforce this Addendum.

remainder of page intentionally left blank

6

IN WITNESS WHEREOF, the undersigned have executed this Addendum as of the date set forth above.

**WE:**
**KNIGHTS FRANCHISE SYSTEMS, INC.**

By:_____
                    (Vice) President

YOU, as franchisee:
**JAIN INC.**

By:_____
        **(Vice) President**

7

## SCHEDULE 1
## SERVICES AND EQUIPMENT

The Services are full duplex point-to-multipoint satellite communications between an HNS shared hub (the "Hub") and the Facility. The Services include the following:

1) Provision and operation of the Hub by HNS on a 24 hour per day, 365 day per year basis.

2) Built-in redundancy to ensure a higher level of Service availability in the event of HNS equipment failure.

3) Installation of the Equipment at the Facility.

4) Provision and operation of the space segment of HNS's satellite, including its satellite transponder capacity.

5) Equipment maintenance services specified in Schedule 2 of this Addendum.

The Equipment consists of :

1) DW4010 outdoor satellite antenna, indoor equipment with two ethernet ports, two serial (RS-232) ports, and integrated 40 gigabyte hard drive and caching software license.

2) Ethernet Hub (8 port), including up to 25' of ethernet cabling and connections per device for up to 2 separate devices

3) Anti-icing equipment, where required.

8

KNIEXCI
146808 10/03

## SCHEDULE 2
## SUPPORT AND MAINTENANCE

You will receive the following maintenance and support services:

1) <u>Telephone Support</u>. You may contact HNS' satellite control center 24 hours per day, 365 days per year by calling a toll free telephone access to receive Service support.

2) <u>Corrective Maintenance</u>. If HNS determines that the Equipment is not operating properly, HNS will restore the Equipment to good working condition by performing the following corrective maintenance as required:

   a) Diagnostic testing to determine the existence and cause of the malfunction;
   b) Removal and replacement of any malfunctioning field replaceable Equipment ;
   c) Reorientation (repointing) of the antenna subsystem;
   d) Repair or replacement of Equipment interconnecting cables;
   e) Reloading initializing instructions and recommissioning;
   f) Verification of proper operation and completion of service report; and
   g) Notification to the you, us and the control center that the Equipment has been restored to operational status.

3) <u>Limitations</u>. Maintenance services do not include any of the following services:

   a) Maintenance, repair, or replacement of parts damaged or lost through catastrophe, accident, lightning, theft, misuse, fault, or negligence of the you or causes external to the Equipment, including failure of, or faulty, electrical power or air conditioning, operator error, failure, or malfunction of data communication we or HNS did not provide you, or from any cause other than intended and ordinary use.

   b) Changes, modifications, or alterations in or to the Equipment by anyone other than HNS or us other than HNS-approved upgrades and configuration changes

   c) Deinstallation, relocation, or removal of the Equipment or any accessories, attachments, or other devices

4) <u>Software Maintenance</u>. HNS will correct reported defects in the Software that cause it not to substantially perform in accordance with its applicable specifications as promptly as commercially reasonable at no cost to Customer.

5) <u>Software Maintenance Service Limitations</u>. We and HNS have no responsibility to correct any defects in any Software that are caused by (i) modification of the Software by any person other than us or HNS; (ii) failure to install an update provided by us or HNS within 60 days after we or HNS provide it to you; (iii) misuse or improper installation by you; or (iv) problems in third-party hardware, software, or networking equipment which is manipulated by, interoperates with, or operates in conjunction with the Software.

9

# EXHIBIT C

## GUARANTY

To induce Knights Franchise Systems, Inc. its successors and assigns ("you") to sign the Franchise Agreement (the "Agreement") with the party named as the "Franchisee," to which this Guaranty is attached, the undersigned, jointly and severally ("we, "our" or "us"), irrevocably and unconditionally (i) warrant to you that Franchisee's representations and warranties in the Agreement are true and correct as stated, and (ii) guaranty that Franchisee's obligations under the Agreement, including any amendments and any promissory notes, will be punctually paid and performed.

Upon default by Franchisee and notice from you we will immediately make each payment and perform or cause Franchisee to perform, each unpaid or unperformed obligation of Franchisee under the Agreement. Without affecting our obligations under this Guaranty, you may without notice to us extend, modify or release any indebtedness or obligation of Franchisee, or settle, adjust or compromise any claims against Franchisee. We waive notice of amendment of the Agreement. We acknowledge that Section 17 of the Agreement, including Remedies, Venue, and Dispute Resolution and WAIVER OF JURY TRIAL applies to this Guaranty.

Upon the death of an individual guarantor, the estate of the guarantor will be bound by this Guaranty for obligations of Franchisee to you existing at the time of death, and the obligations of all other guarantors will continue in full force and effect.

IN WITNESS WHEREOF, each of us has signed this Guaranty effective as of the date of the Agreement.

Witnesses:

Guarantors:

_____          _____
                                          **Anil Jain**

_____          _____
                                          **Ashima Jain**

36

KNIEXC1
146808 10/03

# EXHIBIT D



Wyndham Hotel Group
Franchise Administration
1 Sylvan Way
Parsippany, NJ 07054
973 753 6000 Phone
800 880 9445 Fax

February 13, 2009

Mr. Anil Jain
Jain Inc.
38 South Allison Avenue
Xenia, OH 45385
(937) 352-0067

UPS Tracking:                                    **VIA OVERNIGHT COURIER**

1Z22445X0291859694

1Z22445X0291355513

Re:    **Notice of Insurance Default** - Franchise Agreement dated March 26, 2004 (the "Agreement")
       between Jain Inc. ("you" or "your") and Knights Franchise Systems, Inc. ("we", "our" or "us") for the
       operation of Knights® System Unit #13039-99798-03 located in Xenia, OH (the "Facility")

Dear Mr. Jain:

I have been advised that we have not received confirmation that you have obtained, and delivered to us, proof
of the minimum insurance coverage required by us. Specifically, you are required to deliver certification of
coverage, which confirms that in the event your insurance is cancelled, notification will be sent to the
additional insureds. Instead, the Certificate of Insurance provided to us indicates that there is no obligation or
responsibility to send notice to us if the current policy is cancelled. This is a material default under the
Agreement.

Please be advised that if we do not receive proof of proper insurance coverage within 30 days, we may suspend
the Facility's access to our central reservation system due to your default. Additionally, we may terminate
your right and license to operate the Facility under the Agreement anytime thereafter. By copy of this letter, we
are also informing your guarantors of your default.

Enclosed is a Site Contact form. The Site Contact form is used to update the Site Contacts for the Facility and
ensures that the contacts are current. Please complete the form and return to our attention by March 3, 2009
via regular mail or facsimile to (973) 753-8311.

Also enclosed, please find our current Insurance Requirements and a Sample Certificate of Liability Insurance.
We urge you to remedy this default immediately. If you have any questions regarding the minimum insurance
coverage, please call Joe Maida at (973) 753-7248.

Sincerely,

Carole Lennon
Director
Franchise Administration

Enclosure

cc:    Anil Jain (Site Principle Address)              Rajiv Bhatia
       Ashima Jain (Guarantor)                         Joe Maida
                                                       Valerie Capers Workman

     

     

## WYNDHAM HOTEL GROUP
## CONTACT INFORMATION FOR SITE #: <u>13039-99798-03</u>
## LOCATED IN: <u>Xenia, OH</u>
## HOTEL BRAND: <u>KNI</u>

Please enter below the information for the person in your organization who you desire to have entered into our computer database for various mailings. Upon completion please return this form to Wyndham Hotel Group: 1 Sylvan Way, Parsippany, NJ 07054, attn: Franchise Administration, or via facsimile to 973-753-8311. If you have any questions regarding this form, please contact your Franchise Services Manager.

**Site Principal Contact:** (SPR)(LEG)

Name: _____
Title: _____
Company: _____
Address: _____
_____
Phone #: _____
Fax #: _____
Email: _____

**Guest Services Contact:** (GUE)

Name: _____
Title: _____
Company: _____
Address: _____
_____
Phone #: _____
Fax #: _____
Email: _____

**General Manager:** (MGR)

Name: _____
Title: _____
Company: _____
Address: _____
_____
Phone #: _____
Fax #: _____
Email: _____

**Invoice/Statement Contact:** (INV)(STM)

Name: _____
Title: _____
Company: _____
Address: _____
_____
Phone #: _____
Fax #: _____
Email: _____

In order for changes to be made, this form must be signed below by someone listed as an owner on the Franchise Agreement.

Authorized by: _____
                    Signature

Name: _____          Date: _____
         Print

Title: _____
        **(Must be signed by an Officer or Owner)**



## CHECKLIST

## <u>INSURANCE REQUIREMENTS</u>

1. Knights Inn requires a **Certificate of Insurance**, on proper ACORD form, providing comprehensive (Broad Form CGL) commercial general liability coverage in a minimum amount of **$1,000,000** with excess liability coverage in the amount of $3,000,000 (per occurrence/per location)--total: **$4,000,000**. Limits must be per location, and defense costs must be supplementary payments. Endorsements limiting coverage for bodily injury are not accepted.

2. Coverage must be with licensed insurance companies rated no less than "A-" by A.M. Best. Cut through endorsements <u>are not</u> accepted. Claims made policies are not accepted.

3. All policies must contain a provision for notice of cancellation or non renewal to certificate holder of not less than **30** days.

4. **Knights Franchise Systems, Inc., Wyndham Worldwide Corporation, Wyndham Hotel Group, LLC, and all related entities**, must be named as additional insureds (an indication must be noted on the Certificate or the Additional Insured "Grantor of Franchise" endorsement form attached).

5. Comprehensive **Automobile Liability** insurance with minimum limits of $1,000,000 combined single limit per occurrence on all owned, hired and non-owned vehicles (if appropriate), and to be included in the excess liability coverage.

6. **Business Interruption** insurance with a minimum of $100,000 of coverage, actual loss, or 12 months sustained.

7. **Worker's Compensation and Employer's Liability** insurance in compliance with state laws.

8. **Liquor Liability** with minimum limits of $1,000,000 per occurrence (if the exposure exists--whether restaurant/lounge is operated by Licensee or leased to another party), and to be included in the excess liability coverage.

9. All individuals, entities, and their successors or assigns (as appropriate) which are named as Licensees in the License Agreement should be <u>named insureds</u>.

### LOCATION OF PROPERTY MUST BE IDENTIFIED CLEARLY
(Street Address, City, and State)

**Failure to demand compliance with insurance provisions is not a waiver of Licensee's obligations.**

Sample Certificate attached

Rev. 4/13/07

Knights Franchise Systems, Inc.
1 Sylvan Way, Parsippany, NJ 07054 Phone 973-753-7248 Fax 973-753-8311
E-mail: Joe.Maida@WyndhamWorldWide.com

# CERTIFICATE OF LIABILITY INSURANCE

| | |
|---|---|
| **PRODUCER**<br><br>ABC Insurance Agency<br>Street Address<br>City, State  ZIP | DATE (MM/DD/YY)<br>«Todays_Date» |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

### COMPANIES AFFORDING COVERAGE

| | |
|---|---|
| Company **A** | Insert Exact Carrier Name (Include A.M. Best Number) |
| Company **B** | |
| Company **C** | |
| Company **D** | |

**INSURED**

(Insert Name and Address of Insured Here)

## COVERAGES

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIODS INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY·LOCAL COUNTRY**<br>[X] Commercial General Liability<br>[ ] Claims Made  [X] Occur<br>[ ] Owner's & Contractor's Prot<br>[X] Liquor Liability | XXXX | 1/15/06 | 1/15/07 | General Aggregate<br>Products-Comp/OP Agg<br>Personal & Adv Injury<br>Each Occurrence<br>Fire Damage (Any one fire)<br>Med Exp (Any one person) | $ 1,000,000<br>$ 1,000,000<br>$ 1,000,000<br>$ 1,000,000<br>$ 50,000<br>$ 5,000 |
| B | **AUTOMOBILE LIABILITY**<br>[ ] Any Auto<br>[X] All Owned Autos<br>[ ] Scheduled Autos<br>[X] Hired Autos<br>[X] Non-Owned Autos<br>[ ] Garage Liability | XXXX | 1/15/06 | 1/15/07 | Combined Single Limit<br><br>Bodily Injury (per person)<br><br>Bodily Injury (per accident)<br><br>Property Damage | $ 1,000,000 |
| B | **EXCESS LIABILITY**<br>[X] Umbrella Form<br>[ ] Other than Umbrella Form | XXXX | 1/15/06 | 1/15/07 | Each Occurrence<br>Aggregate | $ 3,000,000<br>$ 3,000,000 |
| A | **OTHER**<br>Property | XXXX | 1/15/06 | 1/15/07 | Building<br>Contents<br>Business Interruption | $ 1,000,000<br>$ 280,000<br>$ 100,000 |

**DESCRIPTION OF OPERATIONS/LOCATIONS/SPECIAL ITEMS**

CERTIFICATE HOLDERS ARE ADDITIONAL INSURED AS RESPECTS HOTEL/MOTEL LOCATED AT:
(INSERT ADDRESS OF INSURED PROPERTY AND SITE NUMBER IF AVAILABLE)

| **CERTIFICATE HOLDER [Y] ADDITIONAL INSURED; INSURER LETTER: A** | **CANCELLATION** |
|---|---|
| KNIGHTS FRANCHISE SYSTEMS, INC.<br>WYNDHAM WORLDWIDE CORPORATION<br>WYNDHAM HOTEL GROUP, LLC.<br>1 SYLVAN WAY<br>PARSIPPANY, NJ 07054 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT. BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS, OR REPRESENTATIVES.<br><br>AUTHORIZED REPRESENTATIVE<br><br>SIGNATURE |

# EXHIBIT E



Wyndham Hotel Group
Contracts Administration
22 Sylvan Way
Parsippany, NJ 07054
973.753.6000 Phone
800.880.9445 Fax

September 24, 2010

**VIA 2nd Day Delivery Method**

Mr. Anil Jain
Jain, Inc.
1895 Rich Ct
BEAVER CREEK, OH 45432-2366

Re:    **NOTICE OF MONETARY DEFAULT relating to Knights Inn® Unit #13039-99798-03-KNI located in Xenia, OH (the "Facility")**

Dear Mr. Jain:

I write on behalf of Knights Franchise Systems, Inc. ("we," "us," or "our") regarding the License Agreement dated March 26, 2004 between Jain, Inc. ("you" or "your") and us (the "Agreement"). We write to give you formal notice that you are in default under the Agreement.

The Agreement requires you to timely pay us the Recurring Fees and other charges relating to your operation of the Facility under the System. Our Financial Services Department advises us that as of September 23, 2010 your account is past due in the amount of **$27,758.08**. Under the Agreement, you have 30 days to pay this amount to us in order to cure your default. If you do not pay this amount within the time permitted, we reserve all rights under the terms of the Agreement including but not limited to termination of the Agreement and your right to operate in the Knights Inn System.

This Notice does not modify, replace, or affect any default under the Agreement, or any other default and termination notices, if any, from us or any of our affiliates regarding the Facility. We also reserve the right to take any interim steps permitted under the Agreement because of your default. By copy of this letter, we are also informing your guarantors of your default.













We hope you will take this opportunity to resolve your monetary default. If you have any questions regarding your default or how it can be timely cured, please contact Operations Support Desk at 800-932-3300.

Sincerely yours,

Suzanne Fenimore
Director
Contracts Administration

cc:    Ashima Jain (Guarantor)
       Rajiv Bhatia
       Rob Spence
       Valerie Capers Workman

UPS CampusShip: Shipment Receipt

# Shipment Receipt

| | |
|---|---|
| **Transaction Date:** | 24 Sep 2010 |
| **Tracking Number:** | 1Z22445X0295056544 |

## 1 Address Information

**Ship To:**
Jain, Inc.
Anil Jain
Knights Inn
1895 Rich Ct
BEAVER CREEK OH 454322366
Telephone:(937) 352-0067
Residential

**Ship From:**
Wyndham Hotel Group - 22 Sylvan
Jerilyn Marino
22 Sylvan Way
Parsippany NJ 07054
Telephone:(973) 753-7253

**Return Address:**
Wyndham Hotel Group - 22 Sylvan
Jerilyn Marino
22 Sylvan Way
Parsippany NJ 07054
Telephone:(973) 753-7253

## 2 Package Information

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter | UPS Letter | | Reference # 1 - 006-5072 |

## 3 UPS Shipping Service and Shipping Options

**Service:**
UPS 2nd Day Air

**Guaranteed By:** [1]
End of Day Tuesday, 9/28/2010

| | |
|---|---|
| **Shipping Fees Subtotal:** | **14.07 USD** |
| Transportation | 10.65 USD |
| Fuel Surcharge | 0.92 USD |
| Residential Surcharge | 2.50 USD |

## 4 Payment Information

| **Bill Shipping Charges to:** | Shipper's Account 22445X |
|---|---|

Negotiated rates were applied to this shipment.

| | |
|---|---|
| Total Charged: | **14.07 USD** |
| Negotiated Total: | **6.17 USD** |

# EXHIBIT F



Wyndham Hotel Group
Contracts Administration
22 Sylvan Way
Parsippany, NJ 07054
973.753.6000 Phone
800.880.9445 Fax

December 9, 2010

**VIA OVERNIGHT COURIER**

Mr. Anil Jain
JAIN, INC.
1895 Rich Court
Beaver Creek, OH  45432-2366

RE:    NOTICE OF CONTINUING MONETARY DEFAULT RELATING TO KNIGHTS® UNIT #13039-99798-3 LOCATED IN XENIA, OH (THE "FACILITY")

Dear Mr. Jain:

I write on behalf of KNIGHTS FRANCHISE SYSTEMS, INC. ("we" or "us") regarding the Franchise Agreement dated March 26, 2004 between JAIN, INC. ("you" or "your") and us (the "Agreement").   You will recall that, on September 24, 2010, we sent you a default notice because of your failure to meet your financial obligations to us. That notice required you to cure the default within thirty days. However, you did not cure your default within the time permitted.

Your failure to cure your default within the time permitted also allows us to terminate the Agreement (including your License to operate the Facility as a Knights facility) immediately upon written notice to you.   We would prefer, however, to keep our affiliation with you. Accordingly, we will allow you an additional period of 30 days from the date of this letter to cure your default.  Please be advised that as of December 8, 2010 your account is now past due in the amount of **$33,094.89**.  We have enclosed an itemized statement detailing the fees past due.   Please understand that we are not waiving this default or any other default under the Agreement by extending your cure period.  We are simply giving you a final opportunity to avoid termination.  By copy of this letter, we are also informing your guarantor of your default.

     

    

We hope you will take this opportunity to resolve your monetary default.  If you have any questions regarding your default or how it can be timely cured, please contact Operations Support Desk at (800) 932-3300.

Sincerely yours,

Suzanne Fenimore
Director
Contracts Compliance, Legal

Enclosure

cc:    Ashima Jain (Guarantor)
       Rajiv Bhatia
       Dianna Bayas
       Valerie Capers Workman

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 84 of 151 PageID: 84

Report Date : 08-DEC-10

ITEMIZED STATEMENT
------------------

As of Date (DD-MMM-YYYY):    08-DEC-2010
Customer No              :   13039-99798-03-KNI
Category Set             :
Category Group           :
Group No                 :
Bankruptcy               :   No Bankruptcy Sites
Disputed                 :   No
Finance Charges Included:    Yes

Page 1 of 8

Report Date : 08-DEC-10

ITEMIZED STATEMENT
--------------------

Customer No :    13039-99798-03-KNI
Address :        38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:      08-DEC-2010

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----|----------------|-------|
| MAY-2009 | 40985376 | 31-MAY-09 | 5625A-PRM SUPPO | | 89.00 | 0.00 | 8.13 | 97.13 |
| | 41006834 | 31-MAY-09 | Actual-1210A-MA | | 0.00 | 0.00 | 4.17 | 4.17 |
| | | | | Sub Total | 89.00 | 0.00 | 12.30 | 101.30 |
| JUN-2009 | 10356345 | 04-JUN-09 | GUEST SRVCS TRA | | 100.00 | 0.00 | 24.35 | 124.35 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 10356344 | 04-JUN-09 | GUEST SATISFACT | 20.00 | 0.00 | 4.87 | 24.87 |
| | 23011093 | 22-JUN-09 | WYNREWARDS CRDT | (25.42) | 0.00 | 0.00 | (25.42) |
| | 23011087 | 22-JUN-09 | WYNREWARDS 5% | 71.10 | 0.00 | 16.22 | 87.32 |
| | 1010149 | 25-JUN-09 | GDS & INTERNET | 23.75 | 0.00 | 5.45 | 29.20 |
| | TC0010149 | 25-JUN-09 | T/A COMM SERVIC— | 3.56 | 0.00 | 0.83 | 4.39 |
| | TA0010149 | 25-JUN-09 | T/A COMMISSIONS | 45.89 | 0.00 | 10.46 | 56.35 |
| | TM0010149 | 25-JUN-09 | MEMBER BENEFIT | 22.80 | 0.00 | 5.16 | 27.96 |
| | 41014957 | 30-JUN-09 | 5625A-PRM SUPPO | 89.00 | 0.00 | 20.33 | 109.33 |
| | 41013213 | 30-JUN-09 | 5066A-DIRECWAY | 150.00 | 9.75 | 36.48 | 196.23 |
| | 41038843 | 30-JUN-09 | Actual-1210A-MA | 537.97 | 0.00 | 122.67 | 660.64 |
| | 41041298 | 30-JUN-09 | Actual-1000A-RO | 806.95 | 0.00 | 183.98 | 990.93 |
| | | | Sub Total | 1845.60 | 9.75 | 430.80 | 2286.15 |
| JUL-2009 | 23011412 | 22-JUL-09 | WYNREWARDS 5% | 25.15 | 0.00 | 5.35 | 30.50 |
| | TA0016954 | 23-JUL-09 | T/A COMMISSIONS | 4.50 | 0.00 | 0.97 | 5.47 |
| | 1016954 | 23-JUL-09 | GDS & INTERNET | 18.40 | 0.00 | 3.97 | 22.37 |
| | 30336762 | 31-JUL-09 | JULY-$1 VOICE R | 6.00 | 0.00 | 1.25 | 7.25 |
| | 41072318 | 31-JUL-09 | Actual-1000A-RO | 1020.43 | 0.00 | 216.89 | 1237.32 |
| | 41072003 | 31-JUL-09 | Actual-1210A-MA | 680.29 | 0.00 | 144.50 | 824.79 |
| | 41051741 | 31-JUL-09 | 5625A-PRM SUPPO | 89.00 | 0.00 | 18.94 | 107.94 |
| | | | Sub Total | 1843.77 | 0.00 | 391.87 | 2235.64 |
| AUG-2009 | 23011623 | 22-AUG-09 | WYNREWARDS 5% | 102.80 | 0.00 | 20.27 | 123.07 |
| | TA0023775 | 24-AUG-09 | T/A COMMISSIONS | 73.80 | 0.00 | 14.56 | 88.36 |
| | 1023775 | 24-AUG-09 | GDS & INTERNET | 41.15 | 0.00 | 8.16 | 49.31 |

Page 2 of 8

Report Date : 08-DEC-10

ITEMIZED STATEMENT
--------------------

Customer No :    13039-99798-03-KNI
Address :        38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:      08-DEC-2010

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 85 of 151 PageID: 85

Case 2:13-cv-05834-ES-MAH    Document 1    Filed 10/01/13    Page 86 of 151 PageID: 86

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|------------|--------------|-------------|---------|---------|------------|----------------|-------|
|  | TC0023775 | 24-AUG-09 | T/A COMM SERVIC |  | 4.01 | 0.00 | 0.78 | 4.79 |
|  | TM0023775 | 24-AUG-09 | MEMBER BENEFIT |  | 4.50 | 0.00 | 0.90 | 5.40 |
|  | 30347747 | 31-AUG-09 | AUGUST-$1 VOICE |  | 6.00 | 0.00 | 1.16 | 7.16 |
|  | 41088447 | 31-AUG-09 | 5625A-PRM SUPPO |  | 89.00 | 0.00 | 17.61 | 106.61 |
|  | 41108325 | 31-AUG-09 | Actual-1000A-RO |  | 1085.59 | 0.00 | 214.41 | 1300.00 |
|  | 41108060 | 31-AUG-09 | Actual-1210A-MA |  | 723.73 | 0.00 | 142.97 | 866.70 |
|  | 41089945 | 31-AUG-09 | 5066A-DIRECWAY |  | 150.00 | 9.75 | 31.60 | 191.35 |
|  | 30347900 | 31-AUG-09 | SEPT-$1 VOICE R |  | 8.00 | 0.00 | 1.55 | 9.55 |
|  |  |  | Sub Total |  | 2288.58 | 9.75 | 453.97 | 2752.30 |
| SEP-2009 | 1030687 | 22-SEP-09 | GDS & INTERNET |  | 38.80 | 0.00 | 7.04 | 45.84 |
|  | TC0030687 | 22-SEP-09 | T/A COMM SERVIC |  | 3.23 | 0.00 | 0.60 | 3.83 |
|  | TM0030687 | 22-SEP-09 | MEMBER BENEFIT |  | 5.70 | 0.00 | 1.06 | 6.76 |
|  | TA0030687 | 22-SEP-09 | T/A COMMISSIONS |  | 59.70 | 0.00 | 10.92 | 70.62 |
|  | 23012035 | 22-SEP-09 | WYNREWARDS 5% |  | 59.87 | 0.00 | 10.92 | 70.79 |
|  | 41123292 | 30-SEP-09 | 5066A-DIRECWAY |  | 150.00 | 9.75 | 29.12 | 188.87 |
|  | 41138744 | 30-SEP-09 | Actual-1210A-MA |  | 569.80 | 0.00 | 103.70 | 673.50 |
|  | 41125489 | 30-SEP-09 | 5625A-PRM SUPPO |  | 89.00 | 0.00 | 16.22 | 105.22 |
|  | 41138240 | 30-SEP-09 | Actual-1000A-RO |  | 854.70 | 0.00 | 155.57 | 1010.27 |
|  |  |  | Sub Total |  | 1830.80 | 9.75 | 335.15 | 2175.70 |
| OCT-2009 | 23012612 | 22-OCT-09 | WYNREWARDS 5% |  | 20.45 | 0.00 | 3.45 | 23.90 |
|  | 1037425 | 26-OCT-09 | GDS & INTERNET |  | 13.05 | 0.00 | 2.18 | 15.23 |
|  | TA0037425 | 26-OCT-09 | T/A COMMISSIONS |  | 10.20 | 0.00 | 1.70 | 11.90 |
|  | TM0037425 | 26-OCT-09 | MEMBER BENEFIT |  | 4.50 | 0.00 | 0.76 | 5.26 |
|  | 30375877 | 31-OCT-09 | OCT $4 WYN RWDS |  | 4.00 | 0.00 | 0.66 | 4.66 |
|  | 30375314 | 31-OCT-09 | OCT $1 VOICE RE |  | 6.00 | 0.00 | 0.98 | 6.98 |
|  | 30375592 | 31-OCT-09 | OCT $1 BRAND WE |  | 15.00 | 0.00 | 2.51 | 17.51 |
|  | 41174756 | 31-OCT-09 | Actual-1210A-MA |  | 490.66 | 0.00 | 81.97 | 572.63 |
|  | 41173914 | 31-OCT-09 | Actual-1000A-RO |  | 735.98 | 0.00 | 122.92 | 858.90 |
|  | 41159073 | 31-OCT-09 | 5625A-PRM SUPPO |  | 93.45 | 0.00 | 15.61 | 109.06 |
|  | 41159766 | 31-OCT-09 | 5066A-DIRECWAY |  | 150.00 | 9.75 | 26.72 | 186.47 |

Case 2:13-cv-05834-ES-MAH    Document 1    Filed 10/01/13    Page 87 of 151 PageID: 87

Report Date : 08-DEC-10

ITEMIZED STATEMENT
-------------------

Customer No :    13039-99798-03-KNI
Address :        38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:      08-DEC-2010

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | Sub Total | | 1543.29 | 9.75 | 259.46 | 1812.50 |
| NOV-2009 | 23013075 | 22-NOV-09 | WYNREWARDS CRDT | | (25.00) | 0.00 | 0.00 | (25.00) |
| | TA0044241 | 22-NOV-09 | T/A COMMISSIONS | | 2.40 | 0.00 | 0.39 | 2.79 |
| | 23013111 | 22-NOV-09 | WYNREWARDS 5% | | 29.75 | 0.00 | 4.52 | 34.27 |
| | 1044241 | 22-NOV-09 | GDS & INTERNET | | 4.35 | 0.00 | 0.69 | 5.04 |
| | 41208658 | 30-NOV-09 | Actual-1210A-MA | | 368.25 | 0.00 | 55.79 | 424.04 |
| | 41209823 | 30-NOV-09 | Actual-1000A-RO | | 552.37 | 0.00 | 83.69 | 636.06 |
| | 30377388 | 30-NOV-09 | NOV $1 WYN RWDS | | 2.00 | 0.00 | 0.30 | 2.30 |
| | 30376862 | 30-NOV-09 | NOV $1 VOICE RE | | 4.00 | 0.00 | 0.60 | 4.60 |
| | 30377029 | 30-NOV-09 | NOV $1 BRAND WE | | 8.00 | 0.00 | 1.19 | 9.19 |
| | 41196022 | 30-NOV-09 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 14.16 | 107.61 |
| | 41195104 | 30-NOV-09 | 5066A-DIRECWAY | | 150.00 | 9.75 | 24.24 | 183.99 |
| | | | Sub Total | | 1189.57 | 9.75 | 185.57 | 1384.89 |
| DEC-2009 | 23013436 | 22-DEC-09 | WYNREWARDS 5% | | 44.87 | 0.00 | 6.12 | 50.99 |
| | 1100388 | 24-DEC-09 | GDS & INTERNET | | 22.75 | 0.00 | 3.08 | 25.83 |
| | 41226671 | 31-DEC-09 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 12.71 | 106.16 |
| | 30388548 | 31-DEC-09 | DEC $1 VOICE RE | | 5.00 | 0.00 | 0.71 | 5.71 |
| | 30388908 | 31-DEC-09 | DEC $1 BRAND WE | | 9.00 | 0.00 | 1.24 | 10.24 |
| | 30389067 | 31-DEC-09 | DEC $1 WYN RWDS | | 2.00 | 0.00 | 0.27 | 2.27 |
| | 30384358 | 31-DEC-09 | DEC-09 PRORATE | | 154.84 | 10.06 | 22.44 | 187.34 |
| | 41235816 | 31-DEC-09 | Actual-1210A-MA | | 303.21 | 0.00 | 41.24 | 344.45 |
| | 41235198 | 31-DEC-09 | Actual-1000A-RO | | 454.82 | 0.00 | 61.85 | 516.67 |

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 88 of 151 PageID: 88

| Mon-Year | Invoice No | Invoice Date | Description Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|
| | | | Sub Total | 1089.94 | 10.06 | 149.66 | 1249.66 |
| JAN-2010 | 23013777 | 22-JAN-10 | WYNREWARDS 5% | 26.25 | 0.00 | 3.20 | 29.45 |
| | 1106997 | 29-JAN-10 | GDS & INTERNET | 9.70 | 0.00 | 1.20 | 10.90 |
| | 41258255 | 31-JAN-10 | 5066A-DIRECWAY | 160.00 | 10.40 | 20.80 | 191.20 |
| | 41274656 | 31-JAN-10 | Actual-1000A-RO | 424.34 | 0.00 | 51.80 | 476.14 |

Page 4 of 8

Report Date : 08-DEC-10

```
            ITEMIZED STATEMENT
            ------------------
```

Customer No :   13039-99798-03-KNI
Address :       38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:     08-DEC-2010

| Mon-Year | Invoice No | Invoice Date | Description Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|
| | 41275218 | 31-JAN-10 | Actual-1210A-MA | 282.89 | 0.00 | 34.48 | 317.37 |
| | 30399522 | 31-JAN-10 | JAN $1 BRAND WE | 12.00 | 0.00 | 1.48 | 13.48 |
| | 41257497 | 31-JAN-10 | 5625A-PRM SUPPO | 93.45 | 0.00 | 11.40 | 104.85 |
| | | | Sub Total | 1008.63 | 10.40 | 124.36 | 1143.39 |
| FEB-2010 | 23014205 | 22-FEB-10 | WYNREWARDS 5% | 4.70 | 0.00 | 0.49 | 5.19 |
| | 41289827 | 28-FEB-10 | 5066A-DIRECWAY | 160.00 | 10.40 | 18.15 | 188.55 |
| | 41290400 | 28-FEB-10 | 5625A-PRM SUPPO | 93.45 | 0.00 | 9.96 | 103.41 |
| | 30408386 | 28-FEB-10 | FEB $1 BRAND WE | 14.00 | 0.00 | 1.50 | 15.50 |
| | 41302982 | 28-FEB-10 | Actual-1210A-MA | 271.32 | 0.00 | 28.91 | 300.23 |
| | 41303064 | 28-FEB-10 | Actual-1000A-RO | 406.97 | 0.00 | 43.34 | 450.31 |
| | | | Sub Total | 950.44 | 10.40 | 102.35 | 1063.19 |
| MAR-2010 | 1113353 | 03-MAR-10 | GDS & INTERNET | 23.75 | 0.00 | 2.54 | 26.29 |

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 89 of 151 PageID: 89

| Invoice No | Invoice Date | Description | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|
| 30412441 | 12-MAR-10 | '10 GLOBAL CONF | 999.00 | 0.00 | 91.90 | 1090.90 |
| 30415429 | 15-MAR-10 | JAN-DEC 2009 RE | (26.00) | 0.00 | 0.00 | (26.00) |
| 23014340 | 22-MAR-10 | WYNREWARDS 5% | 28.05 | 0.00 | 2.55 | 30.60 |
| 1119925 | 29-MAR-10 | GDS & INTERNET | 18.40 | 0.00 | 1.71 | 20.11 |
| 41323970 | 31-MAR-10 | 5625A-PRM SUPPO | 93.45 | 0.00 | 8.55 | 102.00 |
| 41323078 | 31-MAR-10 | 5066A-DIRECWAY | 160.00 | 10.40 | 15.60 | 186.00 |
| 41345711 | 31-MAR-10 | Actual-1000A-RO | 608.60 | 0.00 | 55.68 | 664.28 |
| 41344277 | 31-MAR-10 | Actual-1210A-MA | 405.73 | 0.00 | 37.14 | 442.87 |
| 30424482 | 31-MAR-10 | MAR $1 BRAND WE | 14.00 | 0.00 | 1.29 | 15.29 |
| 30425377 | 31-MAR-10 | MAR $1 WYN RWDS | 7.00 | 0.00 | 0.66 | 7.66 |
| | | Sub Total | 2331.98 | 10.40 | 217.62 | 2560.00 |
| APR-2010 30429756 | 14-APR-10 | ONLINE LRNG LIB | 50.00 | 0.00 | 4.59 | 54.59 |
| 1126303 | 18-APR-10 | GDS & INTERNET | 18.40 | 0.00 | 1.42 | 19.82 |
| 23014842 | 22-APR-10 | WYNREWARDS 5% | 22.69 | 0.00 | 1.72 | 24.41 |
| 41362712 | 30-APR-10 | 5625A-PRM SUPPO | 93.45 | 0.00 | 7.11 | 100.56 |

Page 5 of 8

Report Date : 08-DEC-10

ITEMIZED STATEMENT
--------------------

Customer No :    13039-99798-03-KNI
Address :        38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:      08-DEC-2010

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | 30436953 | 30-APR-10 | APR $1 BRAND WE | | 3.00 | 0.00 | 0.24 | 3.24 |
| | 41360455 | 30-APR-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 12.95 | 183.35 |
| | 41373344 | 30-APR-10 | Actual-1000A-RO | | 778.22 | 0.00 | 59.13 | 837.35 |
| | 41375521 | 30-APR-10 | Actual-1210A-MA | | 518.81 | 0.00 | 39.42 | 558.23 |
| | 30436749 | 30-APR-10 | APR $4 WYN RWDS | | 16.00 | 0.00 | 1.22 | 17.22 |
| | | | Sub Total | | 1660.57 | 10.40 | 127.80 | 1798.77 |

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 90 of 151 PageID: 90

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | =========== | =========== | =========== | =========== |
| MAY-2010 | 23015215 | 22-MAY-10 | WYNREWARDS 5% | | 21.00 | 0.00 | 1.30 | 22.30 |
| | TM0132874 | 23-MAY-10 | MEMBER BENEFIT | | 24.52 | 0.00 | 1.50 | 26.02 |
| | 1132874 | 23-MAY-10 | GDS & INTERNET | | 4.35 | 0.00 | 0.28 | 4.63 |
| | 41414680 | 31-MAY-10 | Accrual-1210A-M | * | 592.08 | 0.00 | 36.12 | 628.20 |
| | 41414091 | 31-MAY-10 | Accrual-1000A-R | * | 888.12 | 0.00 | 54.18 | 942.30 |
| | 41397220 | 31-MAY-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 5.70 | 99.15 |
| | 41395043 | 31-MAY-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 10.40 | 180.80 |
| | | | Sub Total | | 1783.52 | 10.40 | 109.48 | 1903.40 |
| JUN-2010 | 30446828 | 04-JUN-10 | OTA Credit | | (4.50) | 0.00 | 0.00 | (4.50) |
| | 1139545 | 20-JUN-10 | GDS & INTERNET | | 27.10 | 0.00 | 1.24 | 28.34 |
| | 41430822 | 30-JUN-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 7.76 | 178.16 |
| | 41430728 | 30-JUN-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 4.25 | 97.70 |
| | 41442949 | 30-JUN-10 | Accrual-1000A-R | * | 805.08 | 0.00 | 36.64 | 841.72 |
| | 41444834 | 30-JUN-10 | Accrual-1210A-M | * | 536.72 | 0.00 | 24.42 | 561.14 |
| | | | Sub Total | | 1617.85 | 10.40 | 74.31 | 1702.56 |
| JUL-2010 | TA0146381 | 18-JUL-10 | T/A COMMISSIONS | | 21.24 | 0.00 | 0.64 | 21.88 |
| | 41473323 | 31-JUL-10 | Accrual-1000A-R | * | 1007.19 | 0.00 | 30.21 | 1037.40 |
| | 41457063 | 31-JUL-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 5.11 | 175.51 |
| | 41456355 | 31-JUL-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 2.81 | 96.26 |
| | 41475191 | 31-JUL-10 | Accrual-1210A-M | * | 671.46 | 0.00 | 20.15 | 691.61 |

Page 6 of 8

Report Date : 08-DEC-10

ITEMIZED STATEMENT
-------------------

```
Customer No :   13039-99798-03-KNI
Address :       38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:     08-DEC-2010
```

Case 2:13-cv-05834-ES-MAH Document 1 Filed 10/01/13 Page 91 of 151 PageID: 91

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | Sub Total | 1953.34 | 10.40 | 58.92 | 2022.66 |
| AUG-2010 | 23016173 | 22-AUG-10 | WYNREWARDS 5% | | 24.00 | 0.00 | 0.36 | 24.36 |
| | 41516262 | 31-AUG-10 | Accrual-1210A-M | * | 793.48 | 0.00 | 11.90 | 805.38 |
| | 41487239 | 31-AUG-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 2.56 | 172.96 |
| | 41487753 | 31-AUG-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 1.40 | 94.85 |
| | 41514692 | 31-AUG-10 | Accrual-1000A-R | * | 1190.22 | 0.00 | 17.85 | 1208.07 |
| | | | | Sub Total | 2261.15 | 10.40 | 34.07 | 2305.62 |
| SEP-2010 | 23016590 | 22-SEP-10 | WYNREWARDS 5% | | 7.87 | 0.00 | 0.00 | 7.87 |
| | 41525753 | 30-SEP-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 0.00 | 170.40 |
| | 41525311 | 30-SEP-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 0.00 | 93.45 |
| | 41548391 | 30-SEP-10 | Accrual-1210A-M | * | 603.68 | 0.00 | 0.00 | 603.68 |
| | 41547671 | 30-SEP-10 | Accrual-1000A-R | * | 905.52 | 0.00 | 0.00 | 905.52 |
| | | | | Sub Total | 1770.52 | 10.40 | 0.00 | 1780.92 |
| OCT-2010 | 23016771 | 22-OCT-10 | WYNREWARDS 5% | | 12.49 | 0.00 | 0.00 | 12.49 |
| | 41560038 | 31-OCT-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 0.00 | 93.45 |
| | 41571130 | 31-OCT-10 | Accrual-1000A-R | * | 759.93 | 0.00 | 0.00 | 759.93 |
| | 41561219 | 31-OCT-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 0.00 | 170.40 |
| | 41572228 | 31-OCT-10 | Accrual-1210A-M | * | 506.62 | 0.00 | 0.00 | 506.62 |
| | | | | Sub Total | 1532.49 | 10.40 | 0.00 | 1542.89 |
| NOV-2010 | 41613772 | 30-NOV-10 | Accrual-1210A-M | * | 403.80 | 0.00 | 0.00 | 403.80 |
| | 41613361 | 30-NOV-10 | Accrual-1000A-R | * | 605.70 | 0.00 | 0.00 | 605.70 |
| | 41596042 | 30-NOV-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 0.00 | 170.40 |
| | 41596104 | 30-NOV-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 0.00 | 93.45 |

Report Date : 08-DEC-10

ITEMIZED STATEMENT
--------------------

Customer No :    13039-99798-03-KNI
Address :        38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:      08-DEC-2010

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| Sub Total | | | | | 1262.95 | 10.40 | 0.00 | 1273.35 |
| Grand Total | | | | | 29853.99 | 173.21 | 3067.69 | 33094.89 |

Requested By: Jerilyn Marino

* Please note the accruals on your account are estimates.
  Make sure to promptly submit your actual gross room revenue and rooms sold.

\*\*\*\*\*\*\* END OF REPORT \*\*\*\*\*\*\*

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 92 of 151 PageID: 92

Page 10 of 10

12/8/2010

Page 8 of 8

UPS CampusShip: Shipment Receipt

Page 1 of 1

## Shipment Receipt

| | |
|---|---|
| Transaction Date: | 09 Dec 2010 |
| Tracking Number: | 1Z22445X0299822753 |

### 1 Address Information

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| Jain, Inc. | Wyndham Hotel Group - 22 Sylvan | Wyndham Hotel Group - 22 Sylvan |
| Anil Jain | Jerilyn Marino | Jerilyn Marino |
| Knights Inn | 22 Sylvan Way | 22 Sylvan Way |
| 1895 Rich Ct | Parsippany NJ 07054 | Parsippany NJ 07054 |
| BEAVER CREEK OH 454322366 | Telephone:(973) 753-7253 | Telephone:(973) 753-7253 |
| Telephone:(937) 352-0067 | | |
| Residential | | |

### 2 Package Information

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter | UPS Letter | | Reference # 1 - 006-5072 |

### 3 UPS Shipping Service and Shipping Options

Service:
UPS 2nd Day Air

Guaranteed By: [1]
End of Day Monday, 12/13/2010

| | |
|---|---|
| Shipping Fees Subtotal: | 14.47 USD |
| Transportation | 10.65 USD |
| Fuel Surcharge | 1.32 USD |
| Residential Surcharge | 2.50 USD |

### 4 Payment Information

Bill Shipping Charges to:                    Shipper's Account 22445X

| | |
|---|---|
| Negotiated rates were applied to this shipment. | |
| Total Charged: | 14.47 USD |
| Negotiated Total: | 6.35 USD |

Note: Your invoice may vary from the displayed reference rates.

[1] For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

⊠ Close Window

# EXHIBIT G



Wyndham Hotel Group
Franchise Administration
22 Sylvan Way
Parsippany, NJ 07054
973.753.6000 Phone
800.859.9145 Fax

May 31, 2011

**VIA 2 DAY DELIVERY METHOD**

Mr. Anil Jain
JAIN, INC.
1895 Rich Court
Beaver Creek, OH  45432-2366

RE: NOTICE OF CONTINUING MONETARY DEFAULT RELATING TO KNIGHTS® UNIT #13039-99798-3 LOCATED IN XENIA, OH (THE "FACILITY")

Dear Mr. Jain:

I write on behalf of KNIGHTS FRANCHISE SYSTEMS, INC. ("we" or "us") regarding the Franchise Agreement dated March 26, 2004 between JAIN, INC. ("you" or "your") and us (the "Agreement"). You will recall that, on September 24, 2010 and December 9, 2010, we sent you a default notice because of your failure to meet your financial obligations to us. That notice required you to cure the default within thirty days. However, you did not cure your default within the time permitted.

Your failure to cure your default within the time permitted also allows us to terminate the Agreement (including your License to operate the Facility as a Knights facility) immediately upon written notice to you. We would prefer, however, to keep our affiliation with you. Accordingly, we will allow you an additional period of 10 days from the date of this letter to cure your default. Please be advised that as of May 25, 2011 your account is now past due in the amount of $41,947.35. We have enclosed an itemized statement detailing the fees past due. Please understand that we are not waiving this default or any other default under the Agreement by extending your cure period. We are simply giving you a final opportunity to avoid termination. By copy of this letter, we are also informing your guarantor of your default.

     

    

Mr. Anil Jain
May 31, 2011
Page 2

We hope you will take this opportunity to resolve your monetary default. If you have any questions regarding your default or how it can be timely cured, please contact Operations Support Desk at (800) 932-3300.

Sincerely yours,

Suzanne Fenimore
Director
Contracts Compliance, Legal

Enclosure

cc:     Ashima Jain (Guarantor)
        Rajiv Bhatia
        Dianna Bayas
        Valerie Capers Workman

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 98 of 151 PageID: 98

Report Date : 25-MAY-11

ITEMIZED STATEMENT
-------------------

```
As of Date (DD-MMM-YYYY):   25-MAY-2011
Customer No               :   13039-99798-03-KNI
Category Set              :
Category Group            :
Group No                  :
Bankruptcy                :   No Bankruptcy Sites
Disputed                  :   No
Finance Charges Included:     Yes
```

Page 1 of 9

Report Date : 25-MAY-11

ITEMIZED STATEMENT
-------------------

```
Customer No :   13039-99798-03-KNI
Address :       38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:     25-MAY-2011
```

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|-------------|-------------|---------|---------|-----|---------------|-------|
| MAY-2009 | 40985376 | 31-MAY-09 | 5625A-PRM SUPPO | | 89.00 | 0.00 | 8.87 | 97.87 |
| | 41006834 | 31-MAY-09 | Actual-1210A-MA | | 0.00 | 0.00 | 4.17 | 4.17 |
| | | | | Sub Total | 89.00 | 0.00 | 13.04 | 102.04 |
| JUN-2009 | 10356345 | 04-JUN-09 | GUEST SRVCS TRA | | 100.00 | 0.00 | 33.40 | 133.40 |

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 99 of 151 PageID: 99

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
|  | 10356344 | 04-JUN-09 | GUEST SATISFACT | 20.00 | 0.00 | 6.68 | 26.68 |
|  | 23011093 | 22-JUN-09 | WYNREWARDS CRDT | (25.42) | 0.00 | 0.00 | (25.42) |
|  | 23011087 | 22-JUN-09 | WYNREWARDS 5% | 71.10 | 0.00 | 22.66 | 93.76 |
|  | 1010149 | 25-JUN-09 | GDS & INTERNET | 23.75 | 0.00 | 7.61 | 31.36 |
|  | TC0010149 | 25-JUN-09 | T/A COMM SERVIC | 3.56 | 0.00 | 1.16 | 4.72 |
|  | TA0010149 | 25-JUN-09 | T/A COMMISSIONS | 45.89 | 0.00 | 14.61 | 60.50 |
|  | TM0010149 | 25-JUN-09 | MEMBER BENEFIT | 22.80 | 0.00 | 7.21 | 30.01 |
|  | 41014957 | 30-JUN-09 | 5625A-PRM SUPPO | 89.00 | 0.00 | 28.40 | 117.40 |
|  | 41013213 | 30-JUN-09 | 5066A-DIRECWAY | 150.00 | 9.75 | 50.96 | 210.71 |
|  | 41038843 | 30-JUN-09 | Actual-1210A-MA | 537.97 | 0.00 | 171.36 | 709.33 |
|  | 41041298 | 30-JUN-09 | Actual-1000A-RO | 806.95 | 0.00 | 257.01 | 1063.96 |
|  |  |  | Sub Total | 1845.60 | 9.75 | 601.06 | 2456.41 |
| JUL-2009 | 23011412 | 22-JUL-09 | WYNREWARDS 5% | 25.15 | 0.00 | 7.63 | 32.78 |
|  | TA0016954 | 23-JUL-09 | T/A COMMISSIONS | 4.50 | 0.00 | 1.38 | 5.88 |
|  | 1016954 | 23-JUL-09 | GDS & INTERNET | 18.40 | 0.00 | 5.66 | 24.06 |
|  | 30336762 | 31-JUL-09 | JULY-$1 VOICE R | 6.00 | 0.00 | 1.78 | 7.78 |
|  | 41072318 | 31-JUL-09 | Actual-1000A-RO | 1020.43 | 0.00 | 309.26 | 1329.69 |
|  | 41072003 | 31-JUL-09 | Actual-1210A-MA | 680.29 | 0.00 | 206.04 | 886.33 |
|  | 41051741 | 31-JUL-09 | 5625A-PRM SUPPO | 89.00 | 0.00 | 27.01 | 116.01 |
|  |  |  | Sub Total | 1843.77 | 0.00 | 558.76 | 2402.53 |
| AUG-2009 | 23011623 | 22-AUG-09 | WYNREWARDS 5% | 102.80 | 0.00 | 29.56 | 132.36 |
|  | TA0023775 | 24-AUG-09 | T/A COMMISSIONS | 73.80 | 0.00 | 21.23 | 95.03 |
|  | 1023775 | 24-AUG-09 | GDS & INTERNET | 41.15 | 0.00 | 11.90 | 53.05 |

Report Date : 25-MAY-11

ITEMIZED STATEMENT
--------------------

Customer No :    13039-99798-03-KNI
Address :        38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:      25-MAY-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|------|----------------|-------|
|  | TC0023775 | 24-AUG-09 | T/A COMM SERVIC | 4.01 | 0.00 | 1.14 | 5.15 |
|  | TM0023775 | 24-AUG-09 | MEMBER BENEFIT | 4.50 | 0.00 | 1.31 | 5.81 |
|  | 30347747 | 31-AUG-09 | AUGUST-$1 VOICE | 6.00 | 0.00 | 1.69 | 7.69 |
|  | 41088447 | 31-AUG-09 | 5625A-PRM SUPPO | 89.00 | 0.00 | 25.68 | 114.68 |
|  | 41108325 | 31-AUG-09 | Actual-1000A-RO | 1085.59 | 0.00 | 312.66 | 1398.25 |
|  | 41108060 | 31-AUG-09 | Actual-1210A-MA | 723.73 | 0.00 | 208.48 | 932.21 |
|  | 41089945 | 31-AUG-09 | 5066A-DIRECWAY | 150.00 | 9.75 | 46.08 | 205.83 |
|  | 30347900 | 31-AUG-09 | SEPT-$1 VOICE R | 8.00 | 0.00 | 2.26 | 10.26 |
|  |  |  | Sub Total | 2288.58 | 9.75 | 661.99 | 2960.32 |
| SEP-2009 | 1030687 | 22-SEP-09 | GDS & INTERNET | 38.80 | 0.00 | 10.54 | 49.34 |
|  | TC0030687 | 22-SEP-09 | T/A COMM SERVIC | 3.23 | 0.00 | 0.90 | 4.13 |
|  | TM0030687 | 22-SEP-09 | MEMBER BENEFIT | 5.70 | 0.00 | 1.59 | 7.29 |
|  | TA0030687 | 22-SEP-09 | T/A COMMISSIONS | 59.70 | 0.00 | 16.35 | 76.05 |
|  | 23012035 | 22-SEP-09 | WYNREWARDS 5% | 59.87 | 0.00 | 16.35 | 76.22 |
|  | 41123292 | 30-SEP-09 | 5066A-DIRECWAY | 150.00 | 9.75 | 43.60 | 203.35 |
|  | 41138744 | 30-SEP-09 | Actual-1210A-MA | 569.80 | 0.00 | 155.27 | 725.07 |
|  | 41125489 | 30-SEP-09 | 5625A-PRM SUPPO | 89.00 | 0.00 | 24.29 | 113.29 |
|  | 41138240 | 30-SEP-09 | Actual-1000A-RO | 854.70 | 0.00 | 232.93 | 1087.63 |
|  |  |  | Sub Total | 1830.80 | 9.75 | 501.82 | 2342.37 |
| OCT-2009 | 23012612 | 22-OCT-09 | WYNREWARDS 5% | 20.45 | 0.00 | 5.32 | 25.77 |
|  | 1037425 | 26-OCT-09 | GDS & INTERNET | 13.05 | 0.00 | 3.36 | 16.41 |
|  | TA0037425 | 26-OCT-09 | T/A COMMISSIONS | 10.20 | 0.00 | 2.62 | 12.82 |
|  | TM0037425 | 26-OCT-09 | MEMBER BENEFIT | 4.50 | 0.00 | 1.17 | 5.67 |
|  | 30375877 | 31-OCT-09 | OCT $4 WYN RWDS | 4.00 | 0.00 | 1.02 | 5.02 |
|  | 30375314 | 31-OCT-09 | OCT $1 VOICE RE | 6.00 | 0.00 | 1.51 | 7.51 |
|  | 30375592 | 31-OCT-09 | OCT $1 BRAND WE | 15.00 | 0.00 | 3.87 | 18.87 |
|  | 41174756 | 31-OCT-09 | Actual-1210A-MA | 490.66 | 0.00 | 126.39 | 617.05 |
|  | 41173914 | 31-OCT-09 | Actual-1000A-RO | 735.98 | 0.00 | 189.53 | 925.51 |
|  | 41159073 | 31-OCT-09 | 5625A-PRM SUPPO | 93.45 | 0.00 | 24.07 | 117.52 |
|  | 41159766 | 31-OCT-09 | 5066A-DIRECWAY | 150.00 | 9.75 | 41.20 | 200.95 |

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 100 of 151 PageID: 100

5/25/2011

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 101 of 151 PageID: 101

Report Date : 25-MAY-11

ITEMIZED STATEMENT
-------------------

Customer No :    13039-99798-03-KNI
Address :        38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:      25-MAY-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------------|-------|-------|
| | | | | ============ | ============ | ============ | ============ |
| | | | Sub Total | 1543.29 | 9.75 | 400.06 | 1953.10 |
| | | | | ============ | ============ | ============ | ============ |
| NOV-2009 | 23013075 | 22-NOV-09 | WYNREWARDS CRDT | (25.00) | 0.00 | 0.00 | (25.00) |
| | TA0044241 | 22-NOV-09 | T/A COMMISSIONS | 2.40 | 0.00 | 0.62 | 3.02 |
| | 23013111 | 22-NOV-09 | WYNREWARDS 5% | 29.75 | 0.00 | 7.22 | 36.97 |
| | 1044241 | 22-NOV-09 | GDS & INTERNET | 4.35 | 0.00 | 1.10 | 5.45 |
| | 41208658 | 30-NOV-09 | Actual-1210A-MA | 368.25 | 0.00 | 89.12 | 457.37 |
| | 41209823 | 30-NOV-09 | Actual-1000A-RO | 552.37 | 0.00 | 133.68 | 686.05 |
| | 30377388 | 30-NOV-09 | NOV $1 WYN RWDS | 2.00 | 0.00 | 0.48 | 2.48 |
| | 30376862 | 30-NOV-09 | NOV $1 VOICE RE | 4.00 | 0.00 | 0.96 | 4.96 |
| | 30377029 | 30-NOV-09 | NOV $1 BRAND WE | 8.00 | 0.00 | 1.90 | 9.90 |
| | 41196022 | 30-NOV-09 | 5625A-PRM SUPPO | 93.45 | 0.00 | 22.62 | 116.07 |
| | 41195104 | 30-NOV-09 | 5066A-DIRECWAY | 150.00 | 9.75 | 38.72 | 198.47 |
| | | | | ============ | ============ | ============ | ============ |
| | | | Sub Total | 1189.57 | 9.75 | 296.42 | 1495.74 |
| | | | | ============ | ============ | ============ | ============ |
| DEC-2009 | 23013436 | 22-DEC-09 | WYNREWARDS 5% | 44.87 | 0.00 | 10.19 | 55.06 |
| | 1100388 | 24-DEC-09 | GDS & INTERNET | 22.75 | 0.00 | 5.13 | 27.88 |
| | 41226671 | 31-DEC-09 | 5625A-PRM SUPPO | 93.45 | 0.00 | 21.17 | 114.62 |
| | 30388548 | 31-DEC-09 | DEC $1 VOICE RE | 5.00 | 0.00 | 1.18 | 6.18 |
| | 30388908 | 31-DEC-09 | DEC $1 BRAND WE | 9.00 | 0.00 | 2.07 | 11.07 |
| | 30389067 | 31-DEC-09 | DEC $1 WYN RWDS | 2.00 | 0.00 | 0.45 | 2.45 |
| | 30384358 | 31-DEC-09 | DEC-09 PRORATE | 154.84 | 10.06 | 37.37 | 202.27 |
| | 41235816 | 31-DEC-09 | Actual-1210A-MA | 303.21 | 0.00 | 68.68 | 371.89 |
| | 41235198 | 31-DEC-09 | Actual-1000A-RO | 454.82 | 0.00 | 103.01 | 557.83 |
| | | | | ============ | ============ | ============ | ============ |

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 102 of 151 PageID: 102

|  |  |  |  | Sub Total | 1089.94 | 10.06 | 249.25 | 1349.25 |
|---|---|---|---|---|---|---|---|---|

| Mon-Year | Invoice No | Invoice Date | Description |  | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| JAN-2010 | 23013777 | 22-JAN-10 | WYNREWARDS 5% | | 26.25 | 0.00 | 5.58 | 31.83 |
| | 1106997 | 29-JAN-10 | GDS & INTERNET | | 9.70 | 0.00 | 2.09 | 11.79 |
| | 41258255 | 31-JAN-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 36.23 | 206.63 |
| | 41257497 | 31-JAN-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 19.86 | 113.31 |

Report Date : 25-MAY-11

## ITEMIZED STATEMENT

Customer No :   13039-99798-03-KNI
Address :       38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:     25-MAY-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | 30399522 | 31-JAN-10 | JAN $1 BRAND WE | | 12.00 | 0.00 | 2.58 | 14.58 |
| | 41275218 | 31-JAN-10 | Actual-1210A-MA | | 282.89 | 0.00 | 60.06 | 342.95 |
| | 41274656 | 31-JAN-10 | Actual-1000A-RO | | 424.34 | 0.00 | 90.22 | 514.56 |
| | | | | Sub Total | 1008.63 | 10.40 | 216.62 | 1235.65 |
| FEB-2010 | 23014205 | 22-FEB-10 | WYNREWARDS 5% | | 4.70 | 0.00 | 0.91 | 5.61 |
| | 41290400 | 28-FEB-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 18.42 | 111.87 |
| | 41303064 | 28-FEB-10 | Actual-1000A-RO | | 406.97 | 0.00 | 80.17 | 487.14 |
| | 41289827 | 28-FEB-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 33.58 | 203.98 |
| | 41302982 | 28-FEB-10 | Actual-1210A-MA | | 271.32 | 0.00 | 53.48 | 324.80 |
| | 30408386 | 28-FEB-10 | FEB $1 BRAND WE | | 14.00 | 0.00 | 2.78 | 16.78 |
| | | | | Sub Total | 950.44 | 10.40 | 189.34 | 1150.18 |
| MAR-2010 | 1113353 | 03-MAR-10 | GDS & INTERNET | | 23.75 | 0.00 | 4.70 | 28.45 |

Case 2:13-cv-05834-ES-MAH  Document 1  Filed 10/01/13  Page 103 of 151 PageID: 103

| | | | | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|
| | 30412441 | 12-MAR-10 | '10 GLOBAL CONF | 999.00 | 0.00 | 182.31 | 1181.31 |
| | 30415429 | 15-MAR-10 | JAN-DEC 2009 RE | (26.00) | 0.00 | 0.00 | (26.00) |
| | 23014340 | 22-MAR-10 | WYNREWARDS 5% | 28.05 | 0.00 | 5.07 | 33.12 |
| | 1119925 | 29-MAR-10 | GDS & INTERNET | 18.40 | 0.00 | 3.40 | 21.80 |
| | 30425377 | 31-MAR-10 | MAR $1 WYN RWDS | 7.00 | 0.00 | 1.31 | 8.31 |
| | 41323078 | 31-MAR-10 | 5066A-DIRECWAY | 160.00 | 10.40 | 31.03 | 201.43 |
| | 41344277 | 31-MAR-10 | Actual-1210A-MA | 405.73 | 0.00 | 73.87 | 479.60 |
| | 41323970 | 31-MAR-10 | 5625A-PRM SUPPO | 93.45 | 0.00 | 17.01 | 110.46 |
| | 30424482 | 31-MAR-10 | MAR $1 BRAND WE | 14.00 | 0.00 | 2.57 | 16.57 |
| | 41345711 | 31-MAR-10 | Actual-1000A-RO | 608.60 | 0.00 | 110.75 | 719.35 |
| | | | Sub Total | 2331.98 | 10.40 | 432.02 | 2774.40 |
| APR-2010 | 30429756 | 14-APR-10 | ONLINE LRNG LIB | 50.00 | 0.00 | 9.13 | 59.13 |
| | 1126303 | 18-APR-10 | GDS & INTERNET | 18.40 | 0.00 | 3.11 | 21.51 |
| | 23014842 | 22-APR-10 | WYNREWARDS 5% | 22.69 | 0.00 | 3.77 | 26.46 |
| | 41362712 | 30-APR-10 | 5625A-PRM SUPPO | 93.45 | 0.00 | 15.57 | 109.02 |

Page 5 of 9

Report Date : 25-MAY-11

ITEMIZED STATEMENT
----------------------

Customer No :    13039-99798-03-KNI
Address :        38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:      25-MAY-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|
| | 41375521 | 30-APR-10 | Actual-1210A-MA | 518.81 | 0.00 | 86.36 | 605.17 |
| | 30436749 | 30-APR-10 | APR $4 WYN RWDS | 16.00 | 0.00 | 2.67 | 18.67 |
| | 30436953 | 30-APR-10 | APR $1 BRAND WE | 3.00 | 0.00 | 0.53 | 3.53 |
| | 41360455 | 30-APR-10 | 5066A-DIRECWAY | 160.00 | 10.40 | 28.38 | 198.78 |
| | 41373344 | 30-APR-10 | Actual-1000A-RO | 778.22 | 0.00 | 129.55 | 907.77 |
| | | | Sub Total | 1660.57 | 10.40 | 279.07 | 1950.04 |

5/25/2011

Case 2:13-cv-05834-ES-MAH    Document 1    Filed 10/01/13    Page 104 of 151 PageID: 104

| Month | Reference | Date | Description | | Amount | Tax1 | Tax2 | Total |
|---|---|---|---|---|---|---|---|---|
| | | | | | =========== | =========== | =========== | =========== |
| MAY-2010 | 23015215 | 22-MAY-10 | WYNREWARDS 5% | | 21.00 | 0.00 | 3.22 | 24.22 |
| | 1132874 | 23-MAY-10 | GDS & INTERNET | | 4.35 | 0.00 | 0.69 | 5.04 |
| | TM0132874 | 23-MAY-10 | MEMBER BENEFIT | | 24.52 | 0.00 | 3.72 | 28.24 |
| | 41395043 | 31-MAY-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 25.83 | 196.23 |
| | 41414091 | 31-MAY-10 | Accrual-1000A-R | * | 888.12 | 0.00 | 134.56 | 1022.68 |
| | 41397220 | 31-MAY-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 14.16 | 107.61 |
| | 41414680 | 31-MAY-10 | Accrual-1210A-M | * | 592.08 | 0.00 | 89.71 | 681.79 |
| | | | | | =========== | =========== | =========== | =========== |
| | | | Sub Total | | 1783.52 | 10.40 | 271.89 | 2065.81 |
| | | | | | =========== | =========== | =========== | =========== |
| JUN-2010 | 30446828 | 04-JUN-10 | OTA Credit | | (4.50) | 0.00 | 0.00 | (4.50) |
| | 1139545 | 20-JUN-10 | GDS & INTERNET | | 27.10 | 0.00 | 3.70 | 30.80 |
| | 41444834 | 30-JUN-10 | Accrual-1210A-M | * | 536.72 | 0.00 | 72.99 | 609.71 |
| | 41430728 | 30-JUN-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 12.71 | 106.16 |
| | 41430822 | 30-JUN-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 23.19 | 193.59 |
| | 41442949 | 30-JUN-10 | Accrual-1000A-R | * | 805.08 | 0.00 | 109.51 | 914.59 |
| | | | | | =========== | =========== | =========== | =========== |
| | | | Sub Total | | 1617.85 | 10.40 | 222.10 | 1850.35 |
| | | | | | =========== | =========== | =========== | =========== |
| JUL-2010 | TA0146381 | 18-JUL-10 | T/A COMMISSIONS | | 21.24 | 0.00 | 2.57 | 23.81 |
| | 41475191 | 31-JUL-10 | Accrual-1210A-M | * | 671.46 | 0.00 | 80.92 | 752.38 |
| | 41473323 | 31-JUL-10 | Accrual-1000A-R | * | 1007.19 | 0.00 | 121.36 | 1128.55 |
| | 41457063 | 31-JUL-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 20.54 | 190.94 |
| | 41456355 | 31-JUL-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 11.27 | 104.72 |

Report Date : 25-MAY-11

ITEMIZED STATEMENT
-------------------

Customer No :    13039-99798-03-KNI
Address :        38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:      25-MAY-2011

5/25/2011

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 105 of 151 PageID: 105

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----|----------------|-------|
| | | | | | =========== | =========== | =========== | =========== |
| | | | Sub Total | | 1953.34 | 10.40 | 236.66 | 2200.40 |
| | | | | | =========== | =========== | =========== | =========== |
| AUG-2010 | 23016173 | 22-AUG-10 | WYNREWARDS 5% | | 24.00 | 0.00 | 2.53 | 26.53 |
| | 41514692 | 31-AUG-10 | Accrual-1000A-R | * | 1190.22 | 0.00 | 125.56 | 1315.78 |
| | 41487753 | 31-AUG-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 9.86 | 103.31 |
| | 41487239 | 31-AUG-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 17.99 | 188.39 |
| | 41516262 | 31-AUG-10 | Accrual-1210A-M | * | 793.48 | 0.00 | 83.71 | 877.19 |
| | | | | | =========== | =========== | =========== | =========== |
| | | | Sub Total | | 2261.15 | 10.40 | 239.65 | 2511.20 |
| | | | | | =========== | =========== | =========== | =========== |
| SEP-2010 | 23016590 | 22-SEP-10 | WYNREWARDS 5% | | 7.87 | 0.00 | 0.70 | 8.57 |
| | 41525311 | 30-SEP-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 8.42 | 101.87 |
| | 41547671 | 30-SEP-10 | Accrual-1000A-R | * | 905.52 | 0.00 | 81.51 | 987.03 |
| | 41548391 | 30-SEP-10 | Accrual-1210A-M | * | 603.68 | 0.00 | 54.34 | 658.02 |
| | 41525753 | 30-SEP-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 15.34 | 185.74 |
| | | | | | =========== | =========== | =========== | =========== |
| | | | Sub Total | | 1770.52 | 10.40 | 160.31 | 1941.23 |
| | | | | | =========== | =========== | =========== | =========== |
| OCT-2010 | 23016771 | 22-OCT-10 | WYNREWARDS 5% | | 12.49 | 0.00 | 0.93 | 13.42 |
| | 41572228 | 31-OCT-10 | Accrual-1210A-M | * | 506.62 | 0.00 | 37.99 | 544.61 |
| | 41571130 | 31-OCT-10 | Accrual-1000A-R | * | 759.93 | 0.00 | 57.00 | 816.93 |
| | 41560038 | 31-OCT-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 7.01 | 100.46 |
| | 41561219 | 31-OCT-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 12.79 | 183.19 |
| | | | | | =========== | =========== | =========== | =========== |
| | | | Sub Total | | 1532.49 | 10.40 | 115.72 | 1658.61 |
| | | | | | =========== | =========== | =========== | =========== |
| NOV-2010 | 41613361 | 30-NOV-10 | Accrual-1000A-R | * | 605.70 | 0.00 | 36.05 | 641.75 |
| | 41596042 | 30-NOV-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 10.15 | 180.55 |
| | 41596104 | 30-NOV-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 5.56 | 99.01 |
| | 41613772 | 30-NOV-10 | Accrual-1210A-M | * | 403.80 | 0.00 | 24.03 | 427.83 |

5/25/2011

Case 2:13-cv-05834-ES-MAH    Document 1    Filed 10/01/13    Page 106 of 151 PageID: 106

Report Date : 25-MAY-11

## ITEMIZED STATEMENT

Customer No :     13039-99798-03-KNI
Address :         38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:       25-MAY-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | Sub Total | 1262.95 | 10.40 | 75.79 | 1349.14 |
| DEC-2010 | 23017411 | 22-DEC-10 | WYNREWARDS 5% | | 5.00 | 0.00 | 0.23 | 5.23 |
| | 41629859 | 31-DEC-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 7.50 | 177.90 |
| | 41641058 | 31-DEC-10 | Accrual-1210A-M | * | 325.82 | 0.00 | 14.34 | 340.16 |
| | 41639605 | 31-DEC-10 | Accrual-1000A-R | * | 488.73 | 0.00 | 21.51 | 510.24 |
| | 41628035 | 31-DEC-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 4.11 | 97.56 |
| | | | | Sub Total | 1073.00 | 10.40 | 47.69 | 1131.09 |
| JAN-2011 | 41653969 | 31-JAN-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 3.46 | 96.91 |
| | 41677332 | 31-JAN-11 | Accrual-1000A-R | * | 456.84 | 0.00 | 16.90 | 473.74 |
| | 41679751 | 31-JAN-11 | Accrual-1210A-M | * | 304.56 | 0.00 | 11.27 | 315.83 |
| | 41653742 | 31-JAN-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 6.31 | 176.71 |
| | | | | Sub Total | 1014.85 | 10.40 | 37.94 | 1063.19 |
| FEB-2011 | 41701285 | 28-FEB-11 | Accrual-1000A-R | * | 449.37 | 0.00 | 10.33 | 459.70 |
| | 41691495 | 28-FEB-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 2.15 | 95.60 |
| | 41690106 | 28-FEB-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 3.92 | 174.32 |
| | 41703159 | 28-FEB-11 | Accrual-1210A-M | * | 299.58 | 0.00 | 6.89 | 306.47 |
| | | | | Sub Total | 1002.40 | 10.40 | 23.29 | 1036.09 |

Case 2:13-cv-05834-ES-MAH    Document 1    Filed 10/01/13    Page 107 of 151 PageID: 107

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| MAR-2011 | 41722318 | 31-MAR-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 0.70 | 94.15 |
| | 41739709 | 31-MAR-11 | Accrual-1000A-R | * | 642.96 | 0.00 | 4.82 | 647.78 |
| | 41740928 | 31-MAR-11 | Accrual-1210A-M | * | 428.64 | 0.00 | 3.21 | 431.85 |
| | 41721009 | 31-MAR-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 1.28 | 171.68 |

Page 8 of 9

Report Date : 25-MAY-11

ITEMIZED STATEMENT
--------------------

Customer No :    13039-99798-03-KNI
Address :        38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:      25-MAY-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | | | | | ============ | ============ | ============ | ============ |
| | | | | Sub Total | 1325.05 | 10.40 | 10.01 | 1345.46 |
| | | | | | ============ | ============ | ============ | ============ |
| APR-2011 | 41753573 | 30-APR-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 0.00 | 170.40 |
| | 41770192 | 30-APR-11 | Accrual-1210A-M | * | 543.56 | 0.00 | 0.00 | 543.56 |
| | 41771424 | 30-APR-11 | Accrual-1000A-R | * | 815.34 | 0.00 | 0.00 | 815.34 |
| | 41752542 | 30-APR-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 0.00 | 93.45 |
| | | | | | ============ | ============ | ============ | ============ |
| | | | | Sub Total | 1612.35 | 10.40 | 0.00 | 1622.75 |
| | | | | | ============ | ============ | ============ | ============ |
| | | | | | ============ | ============ | ============ | ============ |
| | | | | Grand Total | 35881.64 | 225.21 | 5840.50 | 41947.35 |
| | | | | | ============ | ============ | ============ | ============ |

5/25/2011

Requested By: Yelena Danishevsky

* Please note the accruals on your account are estimates.
  Make sure to promptly submit your actual gross room revenue and rooms sold.


\*\*\*\*\*\*\* END OF REPORT \*\*\*\*\*\*\*



Page 9 of 9

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 108 of 151 PageID: 108

5/25/2011

UPS CampusShip: Shipment Receipt



**Shipment Receipt**

Transaction Date: 01 Jun 2011
Tracking Number: 1Z22445X0295985102

**1  Address Information**

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| Jain, Inc. | Wyndham Hotel Group – 22 Sylvan | Wyndham Hotel Group – 22 Sylvan |
| Anil Jain | Elena Danishevsky | Elena Danishevsky |
| Knights Inn | 22 Sylvan Way | 22 Sylvan Way |
| 1895 Rich Ct | Parsippany NJ 07054 | Parsippany NJ 07054 |
| BEAVER CREEK OH 454322366 | Telephone:973-753-7236 | Telephone:973-753-7236 |
| Telephone:(937) 352-0067 | | |
| Residential | | |

**2  Package Information**

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter | UPS Letter | | Reference # 1 - 006-5072 |

**3  UPS Shipping Service and Shipping Options**

Service:
UPS 2nd Day Air

Guaranteed By: [1]
End of Day Friday, 6/03/2011

| Shipping Fees Subtotal: | 16.04 USD |
|---|---|
| Transportation | 11.20 USD |
| Fuel Surcharge | 2.09 USD |
| Residential Surcharge | 2.75 USD |

**4  Payment Information**

Bill Shipping Charges to:                Shipper's Account 22445X

Daily rates were applied to this shipment

| Total Charged: | 16.04 USD |
|---|---|

Note: Your invoice may vary from the displayed reference rates.

* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

Close Window

# EXHIBIT H



HOTEL GROUP

Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 • fax (800) 880-9445
www.wyndhamworldwide.com

August 26, 2011

**VIA 2ND DAY DELIVERY METHOD**

Mr. Anil Jain
JAIN, INC.
1895 Rich Court
Beaver Creek, OH 45432-2366

RE:    **NOTICE OF INSURANCE DEFAULT** - License Agreement dated March 26, 2004 (the "Agreement") between JAIN, INC. ("you" or "your") and KNIGHTS FRANCHISE SYSTEMS, INC. ("we", "our" or "us") for the operation of Knights® Unit #13039-99798-3 located in Xenia, OH (the "Facility")

Dear Mr. Jain:

I have been advised that we have not received confirmation that you have obtained, and delivered to us, proof of the minimum insurance coverage required by us. This is a material default under the Agreement.

As you are aware, the Facility's access to our central reservation system has been suspended since April 6, 2010 for outstanding monetary issues. If we do not receive proof of proper insurance coverage within the 30 day cure period, we will add Insurance to the reasons for suspension of access to our central reservation system. Furthermore, we may pursue our remedies for default, which may include termination of the License to operate the Facility under the Howard Johnson® System as provided in the Agreement at anytime thereafter. By copy of this letter, we are also informing your guarantor of your default.

Enclosed, please find our current Insurance Requirements and a Sample Certificate of Liability Insurance. We urge you to remedy this default immediately. If you have any questions regarding the minimum insurance coverage, please call Mike Torre directly at (973) 753-6685.

Sincerely,

Suzanne Fenimore
Director
Contracts Compliance, Legal

Enclosure

cc:    Ashima Jain (Guarantor)
       Rajiv Bhatia
       Valerie Capers Workman

**WYNDHAM**
HOTEL GROUP

       

       



Knights Franchise Systems Inc.
22 Sylvan Way
Parsippany, NJ 07054

Email: Insurance.Administration@wyn.com
Fax: 973-753-8343

## CHECKLIST
### INSURANCE REQUIREMENTS

1.    Knights Inn requires a **Certificate of Insurance**, on proper ACORD form, providing comprehensive (Broad Form CGL) commercial general liability coverage in a minimum amount of $1,000,000 with excess liability coverage in the amount of $3,000,000 (per occurrence/per location)--total: $4,000,000. Limits must be per location, and defense costs must be supplementary payments. Endorsements limiting coverage for bodily injury are not accepted.

2.    Coverage must be with licensed insurance companies rated no less than "A-" by A.M. Best. Cut through endorsements <u>are not</u> accepted. Claims made policies are not accepted.

3.    All individuals, entities, and their successors or assigns (as appropriate) which are named as Licensees in the License Agreement should be <u>named insureds</u>.

4.    **Knights Franchise Systems, Inc., Wyndham Worldwide Corporation, Wyndham Hotel Group, LLC, and all related entities, must be named as additional insureds** (an indication must be noted on the Certificate or the Additional Insured "Grantor of Franchise" endorsement form attached).

5.    All policies must contain a provision for notice of cancellation or non renewal to certificate holder of not less than 30 days.

6.    **Liquor Liability** with minimum limits of $1,000,000 (if the exposure exists--whether restaurant/lounge is operated by Licensee or leased to another party), and to be included in the excess liability coverage.

7.    Comprehensive **Automobile Liability** insurance with minimum limits of $1,000,000 combined single limit per occurrence on all owned, hired and non-owned vehicles (if appropriate), and to be included in the excess liability coverage.

8.    **Business Interruption** insurance with a minimum of $100,000 of coverage, actual loss, or 12 months sustained.

9.    **Worker's Compensation and Employer's Liability** insurance in compliance with state laws.

### *LOCATION OF PROPERTY MUST BE IDENTIFIED CLEARLY*
(Street Address, City, and State)

**Failure to demand compliance with insurance provisions is not a waiver of Licensee's obligations.**

Sample Certificate attached

Rev. 8/22/2011

# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YY) |
|---|---|
| | «Todays_Date» |

**PRODUCER**

ABC Insurance Agency
Street Address
City, State  ZIP

(Phone Number) (Fax Number)
(Agent E-mail)

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

**COMPANIES AFFORDING COVERAGE**

| | |
|---|---|
| Company **A** | Insert Exact Carrier Name (Include A.M. Best Number) |
| Company **B** | |
| Company **C** | |
| Company **D** | |

**INSURED**

(Insert Name and Address of Insured Here)

## COVERAGES

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIODS INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY-LOCAL COUNTRY** [X] Commercial General Liability [ ] Claims Made [X] Occur [ ] Owner's & Contractor's Prot [X] Liquor Liability | XXXX | 8/17/12 | 8/17/12 | General Aggregate | $ 1,000,000 |
| | | | | | Products-Comp/OP Agg | $ 1,000,000 |
| | | | | | Personal & Adv Injury | $ 1,000,000 |
| | | | | | Each Occurrence | $ 1,000,000 |
| | | | | | Fire Damage (Any one fire) | $ 50,000 |
| | | | | | Med Exp (Any one person) | $ 5,000 |
| B | **AUTOMOBILE LIABILITY** [ ] Any Auto [X] All Owned Autos [ ] Scheduled Autos [X] Hired Autos [X] Non-Owned Autos [ ] Garage Liability | XXXX | 8/17/11 | 8/17/12 | Combined Single Limit | $ 1,000,000 |
| | | | | | Bodily Injury (per person) | |
| | | | | | Bodily Injury (per accident) | |
| | | | | | Property Damage | |
| B | **EXCESS LIABILITY** [X] Umbrella Form [ ] Other than Umbrella Form | XXXX | 8/17/11 | 8/17/12 | Each Occurrence | $ 3,000,000 |
| | | | | | Aggregate | $ 3,000,000 |
| A | **OTHER** Property | XXXX | 8/17/11 | 8/17/12 | Building | $ 1,000,000 |
| | | | | | Contents | $ 280,000 |
| | | | | | Business Interruption | $ 100,000 |

**DESCRIPTION OF OPERATIONS/LOCATIONS/SPECIAL ITEMS**

CERTIFICATE HOLDERS ARE ADDITIONAL INSURED AS RESPECTS HOTEL/MOTEL LOCATED AT:
(INSERT ADDRESS OF INSURED PROPERTY AND SITE NUMBER IF AVAILABLE)

| CERTIFICATE HOLDER [Y] ADDITIONAL INSURED INSURER LETTER: A | CANCELLATION |
|---|---|
| KNIGHTS FRANCHISE SYSTEMS, INC. WYNDHAM WORLDWIDE CORPORATION WYNDHAM HOTEL GROUP, LLC 22 SYLVAN WAY PARSIPPANY, NJ 07054 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT. BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS, OR REPRESENTATIVES. |
| | AUTHORIZED REPRESENTATIVE SIGNATURE |

UPS CampusShip: Shipment Receipt

## Shipment Receipt

Transaction Date:                26 Aug 2011
Tracking Number:                 1Z22445X0295837745

### ①  Address Information

| Ship To: | Ship From: |
| --- | --- |
| Jain, Inc. | Wyndham Hotel Group - 22 Sylvan |
| Anil Jain | Jerilyn Marino |
| Knights Inn | 22 Sylvan Way |
| 1895 Rich Ct | Parsippany NJ 07054 |
| BEAVER CREEK OH 454322366 | Telephone:(973) 753-7253 |
| Telephone:(937) 352-0067 | **Return Address:** |
| Residential | Wyndham Hotel Group - 22 Sylvan |
|  | Jerilyn Marino |
|  | 22 Sylvan Way |
|  | Parsippany NJ 07054 |
|  | Telephone:(973) 753-7253 |

### ②  Package Information

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
| --- | --- | --- | --- | --- |
| 1. | Letter | UPS Letter | | Reference # 1 - 006-5072 |

### ③  UPS Shipping Service and Shipping Options

Service:
UPS 2nd Day Air
Guaranteed By:
End of Day Tuesday, 8/30/11

| Shipping Fees Subtotal: | 15.97 USD |
| --- | --- |
| Transportation | 11.20 USD |
| Fuel Surcharge | 2.02 USD |
| Residential Surcharge | 2.75 USD |

### ④  Payment Information

Bill Shipping Charges to:            Shipper's Account 22445X

| Daily rates were applied to this shipment | |
| --- | --- |
| Total Charged: | 15.97 USD |

Note: Your invoice may vary from the displayed reference rates.

* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

# EXHIBIT I



**HOTEL GROUP**

Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 • fax (800) 880-9445
www.wyndhamworldwide.com

October 27, 2011

**VIA 2 DAY DELIVERY METHOD**

Mr. Anil Jain
JAIN, INC.
1895 Rich Court
Beaver Creek, OH  45432-2366

RE:   **NOTICE OF CONTINUING INSURANCE DEFAULT** – Franchise Agreement dated March 26, 2004 (the "Agreement") between JAIN, INC. ("you" or "your") and KNIGHTS FRANCHISE SYSTEMS, INC. ("we", "our" or "us") for the operation of Knights® Unit #13039-99798-3 located in Xenia, OH (the "Facility")

Dear Mr. Jain:

I have been advised that we have not received confirmation that you have obtained, and delivered to us, proof of the minimum insurance coverage required by us.  This is a material default under the Agreement.

You were advised of this default in my letter dated August 26, 2011, and unfortunately, you failed to submit proof of proper insurance coverage. As you are aware, the Facility's access to our central reservation system has been suspended since April 6, 2010 for outstanding monetary issues.  Please be advised that if we do not receive proof of proper insurance coverage by November 1, 2011, we will add Insurance to the reasons for suspension of access to our central reservation system.  Please be advised that the Facility's access to our central reservation system will remain suspended until the monetary issue has been cured to our satisfaction. Additionally, we may terminate your right and license to operate the Facility under the Agreement anytime thereafter. By copy of this letter, we are also informing your guarantor of your default.

Please be advised that in the event of a termination, you will be obligated to comply with the post-termination provisions imposed by the Agreement and Franchise Operating Manual.

**WYNDHAM**

**HOTEL GROUP**



       

       

Enclosed, please find our current Insurance Requirements and a Sample Certificate of Liability Insurance. We urge you to remedy this default immediately. If you have any questions regarding the minimum insurance coverage, please call Mike Torre at (973) 753-6685.

Sincerely,

Suzanne Fenimore
Director
Contracts Compliance, Legal

Enclosure

cc:    Ashima Jain (Guarantor)
       Rajiv Bhatia
       Valerie Capers Workman



Knights Franchise Systems, Inc.                                        Email: Insurance.Administration@wyn.com
22 Sylvan Way                                                         Fax: 973-753-8343
Parsippany, NJ 07054

## CHECKLIST
## INSURANCE REQUIREMENTS

1.      Knights Inn requires a **Certificate of Insurance**, on proper ACORD form, providing comprehensive (Broad Form CGL) commercial general liability coverage in a minimum amount of **$1,000,000** with excess liability coverage in the amount of **$3,000,000** (per occurrence/per location)--total: **$4,000,000**. Limits must be per location, and defense costs must be supplementary payments. Endorsements limiting coverage for bodily injury are not accepted.

2.      Coverage must be with licensed insurance companies rated no less than "A-" by A.M. Best. Cut through endorsements are not accepted. Claims made policies are not accepted.

3.      All individuals, entities, and their successors or assigns (as appropriate) which are named as Licensees in the License Agreement should be named insureds.

4.      **Knights Franchise Systems, Inc., Wyndham Worldwide Corporation, Wyndham Hotel Group, LLC, and all related entities**, must be named as additional insureds (an indication must be noted on the Certificate or the Additional Insured "Grantor of Franchise" endorsement form attached).

5.      All policies must contain a provision for notice of cancellation or non renewal to certificate holder of not less than 30 days.

6.      **Liquor Liability** with minimum limits of $1,000,000 (if the exposure exists--whether restaurant/lounge is operated by Licensee or leased to another party), and to be included in the excess liability coverage.

7.      Comprehensive **Automobile Liability** insurance with minimum limits of $1,000,000 combined single limit per occurrence on all owned, hired and non-owned vehicles (if appropriate), and to be included in the excess liability coverage.

8.      Business Interruption insurance with a minimum of $100,000 of coverage, actual loss, or 12 months sustained.

9.      **Worker's Compensation and Employer's Liability** insurance in compliance with state laws.

### *LOCATION OF PROPERTY MUST BE IDENTIFIED CLEARLY*
**(Street Address, City, and State)**

**Failure to demand compliance with insurance provisions is not a waiver of Licensee's obligations.**

Sample Certificate attached

Rev. 8/22/2011

# CERTIFICATE OF LIABILITY INSURANCE

| | |
|---|---|
| DATE (MM/DD/YY) | «Todays_Date» |

**PRODUCER**

ABC Insurance Agency
Street Address
City, State ZIP

(Phone Number) (Fax Number)
(Agent E-mail)

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

**COMPANIES AFFORDING COVERAGE**

Company **A**   Insert Exact Carrier Name (Include A.M. Best Number)

**INSURED**

(Insert Name and Address of Insured Here)

Company **B**

Company **C**

Company **D**

**COVERAGES**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIODS INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES, LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY-LOCAL COUNTRY**<br>X Commercial General Liability<br>☐ Claims Made  X Occur<br>☐ Owner's & Contractor's Prot<br>X Liquor Liability | XXXX | 8/17/12 | 8/17/12 | General Aggregate | $ 1,000,000 |
| | | | | | Products-Comp/OP Agg | $ 1,000,000 |
| | | | | | Personal & Adv Injury | $ 1,000,000 |
| | | | | | Each Occurrence | $ 1,000,000 |
| | | | | | Fire Damage (Any one fire) | $ 50,000 |
| | | | | | Med Exp (Any one person) | $ 5,000 |
| B | **AUTOMOBILE LIABILITY**<br>☐ Any Auto<br>X All Owned Autos<br>☐ Scheduled Autos<br>X Hired Autos<br>X Non-Owned Autos<br>☐ Garage Liability | XXXX | 8/17/11 | 8/17/12 | Combined Single Limit | $ 1,000,000 |
| | | | | | Bodily Injury (per person) | |
| | | | | | Bodily Injury (per accident) | |
| | | | | | Property Damage | |
| B | **EXCESS LIABILITY**<br>X Umbrella Form<br>☐ Other than Umbrella Form | XXXX | 8/17/11 | 8/17/12 | Each Occurrence | $ 3,000,000 |
| | | | | | Aggregate | $ 3,000,000 |
| A | **OTHER**<br>Property | XXXX | 8/17/11 | 8/17/12 | Building | $ 1,000,000 |
| | | | | | Contents | $ 280,000 |
| | | | | | Business Interruption | $ 100,000 |

**DESCRIPTION OF OPERATIONS/LOCATIONS/SPECIAL ITEMS**

CERTIFICATE HOLDERS ARE ADDITIONAL INSURED AS RESPECTS HOTEL/MOTEL LOCATED AT:
(INSERT ADDRESS OF INSURED PROPERTY AND SITE NUMBER IF AVAILABLE)

**CERTIFICATE HOLDER [X] ADDITIONAL INSURED; INSURER LETTER: A**

KNIGHTS FRANCHISE SYSTEMS, INC.
WYNDHAM WORLDWIDE CORPORATION
WYNDHAM HOTEL GROUP, LLC
22 SYLVAN WAY
PARSIPPANY, NJ 07054

**CANCELLATION**

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT. BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS, OR REPRESENTATIVES.

**AUTHORIZED REPRESENTATIVE**

SIGNATURE

# EXHIBIT J



# WYNDHAM
## HOTEL GROUP

Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 ● fax (800) 880-9445
www.wyndhamworldwide.com

November 10, 2011

**VIA 2 DAY DELIVERY METHOD**

Mr. Anil Jain
JAIN, INC.
1895 Rich Court
Beaver Creek, OH  45432-2366

**RE:    NOTICE OF MONETARY DEFAULT RELATING TO KNIGHTS® UNIT #13039-99798-3 LOCATED IN XENIA, OH (THE "FACILITY")**

Dear Mr. Jain:

I write on behalf of KNIGHTS FRANCHISE SYSTEMS, INC. ("we," "our," or "us") regarding the Franchise Agreement dated March 26, 2004 between JAIN, INC. ("you" or "your") and us (the "Agreement").  We write to give you formal notice that you are in default under the Agreement.

The Agreement requires you to timely pay us the Recurring Fees and other charges relating to your operation of the Facility under the System.  Our Financial Services Department advises us that as of November 9, 2011 your account is past due in the amount of $61,583.96.  We have enclosed an itemized statement detailing the fees past due.  Under the Agreement, you have ten (10) days to pay this amount to us in order to cure your default.  If you do not pay this amount within the time permitted, we reserve all rights under the terms of the Agreement including but not limited to termination of the Agreement and your right to operate in the Knights System.

This Notice does not modify, replace, or affect any default under the Agreement, or any other default and termination notices, if any, from us or any of our affiliates regarding the Facility.  We also reserve the right to take any interim steps permitted under the Agreement because of your default.  By copy of this letter, we are also informing your guarantor of your default.



# WYNDHAM
## HOTEL GROUP

       

       

We hope you will take this opportunity to resolve your monetary default. If you have any questions regarding your default or how it can be timely cured, please contact Operations Support Desk at (800) 932-3300.

Sincerely yours,

Suzanne Fenimore
Director
Contracts Compliance, Legal

Enclosure

cc:     Ashima Jain (Guarantor)
        Rajiv Bhatia
        Dianna Bayas
        Valerie Capers Workman

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 123 of 151 PageID: 123

Report Date : 09-NOV-11

ITEMIZED STATEMENT
------------------

As of Date (DD-MMM-YYYY):  09-NOV-2011
Customer No              :  13039-99798-03-KNI
Category Set             :
Category Group           :
Group No                 :
Bankruptcy               :  No Bankruptcy Sites
Disputed                 :  No
Finance Charges Included:  Yes

Page 1 of 11

Report Date : 09-NOV-11

ITEMIZED STATEMENT
------------------

Customer No :   13039-99798-03-KNI
Address :       38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:     09-NOV-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| MAY-2009 | 40985376 | 31-MAY-09 | 5625A-PRM SUPPO | | 89.00 | 0.00 | 9.50 | 98.50 |
| | 41006834 | 31-MAY-09 | Actual-1210A-MA | | 0.00 | 0.00 | 4.17 | 4.17 |
| | | | | Sub Total | 89.00 | 0.00 | 13.67 | 102.67 |
| JUN-2009 | 10356345 | 04-JUN-09 | GUEST SRVCS TRA | | 100.00 | 0.00 | 41.05 | 141.05 |

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 124 of 151 PageID: 124

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 10356344 | 04-JUN-09 | GUEST SATISFACT | 20.00 | 0.00 | 8.21 | 28.21 |
| | 23011093 | 22-JUN-09 | WYNREWARDS CRDT | (25.42) | 0.00 | 0.00 | (25.42) |
| | 23011087 | 22-JUN-09 | WYNREWARDS 5% | 71.10 | 0.00 | 28.10 | 99.20 |
| | 1010149 | 25-JUN-09 | GDS & INTERNET | 23.75 | 0.00 | 9.44 | 33.19 |
| | TC0010149 | 25-JUN-09 | T/A COMM SERVIC | 3.56 | 0.00 | 1.44 | 5.00 |
| | TA0010149 | 25-JUN-09 | T/A COMMISSIONS | 45.89 | 0.00 | 18.12 | 64.01 |
| | TM0010149 | 25-JUN-09 | MEMBER BENEFIT | 22.80 | 0.00 | 8.94 | 31.74 |
| | 41014957 | 30-JUN-09 | 5625A-PRM SUPPO | 89.00 | 0.00 | 35.22 | 124.22 |
| | 41013213 | 30-JUN-09 | 5066A-DIRECWAY | 150.00 | 9.75 | 63.20 | 222.95 |
| | 41038843 | 30-JUN-09 | Actual-1210A-MA | 537.97 | 0.00 | 212.52 | 750.49 |
| | 41041298 | 30-JUN-09 | Actual-1000A-RO | 806.95 | 0.00 | 318.74 | 1125.69 |
| | | | | ============ | ============ | ============ | ============ |
| | | | Sub Total | 1845.60 | 9.75 | 744.98 | 2600.33 |
| | | | | ============ | ============ | ============ | ============ |
| JUL-2009 | 23011412 | 22-JUL-09 | WYNREWARDS 5% | 25.15 | 0.00 | 9.56 | 34.71 |
| | TA0016954 | 23-JUL-09 | T/A COMMISSIONS | 4.50 | 0.00 | 1.73 | 6.23 |
| | 1016954 | 23-JUL-09 | GDS & INTERNET | 18.40 | 0.00 | 7.09 | 25.49 |
| | 30336762 | 31-JUL-09 | JULY-$1 VOICE R | 6.00 | 0.00 | 2.23 | 8.23 |
| | 41072318 | 31-JUL-09 | Actual-1000A-RO | 1020.43 | 0.00 | 387.34 | 1407.77 |
| | 41072003 | 31-JUL-09 | Actual-1210A-MA | 680.29 | 0.00 | 258.06 | 938.35 |
| | 41051741 | 31-JUL-09 | 5625A-PRM SUPPO | 89.00 | 0.00 | 33.83 | 122.83 |
| | | | | ============ | ============ | ============ | ============ |
| | | | Sub Total | 1843.77 | 0.00 | 699.84 | 2543.61 |
| | | | | ============ | ============ | ============ | ============ |
| AUG-2009 | 23011623 | 22-AUG-09 | WYNREWARDS 5% | 102.80 | 0.00 | 37.41 | 140.21 |
| | TA0023775 | 24-AUG-09 | T/A COMMISSIONS | 73.80 | 0.00 | 26.87 | 100.67 |
| | 1023775 | 24-AUG-09 | GDS & INTERNET | 41.15 | 0.00 | 15.06 | 56.21 |

Report Date : 09-NOV-11

ITEMIZED STATEMENT
--------------------

```
Customer No :    13039-99798-03-KNI
Address :        38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:      09-NOV-2011
```

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 125 of 151 PageID: 125

| Mon-Year | Invoice No | Invoice Date | Description | Accrued Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|-----|----------------|-------|
| | TC0023775 | 24-AUG-09 | T/A COMM SERVIC | 4.01 | 0.00 | 1.44 | 5.45 |
| | TM0023775 | 24-AUG-09 | MEMBER BENEFIT | 4.50 | 0.00 | 1.66 | 6.16 |
| | 30347747 | 31-AUG-09 | AUGUST-$1 VOICE | 6.00 | 0.00 | 2.14 | 8.14 |
| | 41088447 | 31-AUG-09 | 5625A-PRM SUPPO | 89.00 | 0.00 | 32.50 | 121.50 |
| | 41108325 | 31-AUG-09 | Actual-1000A-RO | 1085.59 | 0.00 | 395.71 | 1481.30 |
| | 41108060 | 31-AUG-09 | Actual-1210A-MA | 723.73 | 0.00 | 263.86 | 987.59 |
| | 41089945 | 31-AUG-09 | 5066A-DIRECWAY | 150.00 | 9.75 | 58.32 | 218.07 |
| | 30347900 | 31-AUG-09 | SEPT-$1 VOICE R | 8.00 | 0.00 | 2.86 | 10.86 |
| | | | Sub Total | 2288.58 | 9.75 | 837.83 | 3136.16 |
| SEP-2009 | 1030687 | 22-SEP-09 | GDS & INTERNET | 38.80 | 0.00 | 13.50 | 52.30 |
| | TC0030687 | 22-SEP-09 | T/A COMM SERVIC | 3.23 | 0.00 | 1.15 | 4.38 |
| | TM0030687 | 22-SEP-09 | MEMBER BENEFIT | 5.70 | 0.00 | 2.04 | 7.74 |
| | TA0030687 | 22-SEP-09 | T/A COMMISSIONS | 59.70 | 0.00 | 20.94 | 80.64 |
| | 23012035 | 22-SEP-09 | WYNREWARDS 5% | 59.87 | 0.00 | 20.94 | 80.81 |
| | 41123292 | 30-SEP-09 | 5066A-DIRECWAY | 150.00 | 9.75 | 55.84 | 215.59 |
| | 41138744 | 30-SEP-09 | Actual-1210A-MA | 569.80 | 0.00 | 198.86 | 768.66 |
| | 41125489 | 30-SEP-09 | 5625A-PRM SUPPO | 89.00 | 0.00 | 31.11 | 120.11 |
| | 41138240 | 30-SEP-09 | Actual-1000A-RO | 854.70 | 0.00 | 298.32 | 1153.02 |
| | | | Sub Total | 1830.80 | 9.75 | 642.70 | 2483.25 |
| OCT-2009 | 23012612 | 22-OCT-09 | WYNREWARDS 5% | 20.45 | 0.00 | 6.90 | 27.35 |
| | 1037425 | 26-OCT-09 | GDS & INTERNET | 13.05 | 0.00 | 4.36 | 17.41 |
| | TA0037425 | 26-OCT-09 | T/A COMMISSIONS | 10.20 | 0.00 | 3.40 | 13.60 |
| | TM0037425 | 26-OCT-09 | MEMBER BENEFIT | 4.50 | 0.00 | 1.52 | 6.02 |
| | 30375877 | 31-OCT-09 | OCT $4 WYN RWDS | 4.00 | 0.00 | 1.32 | 5.32 |
| | 30375314 | 31-OCT-09 | OCT $1 VOICE RE | 6.00 | 0.00 | 1.96 | 7.96 |
| | 30375592 | 31-OCT-09 | OCT $1 BRAND WE | 15.00 | 0.00 | 5.02 | 20.02 |
| | 41174756 | 31-OCT-09 | Actual-1210A-MA | 490.66 | 0.00 | 163.94 | 654.60 |
| | 41173914 | 31-OCT-09 | Actual-1000A-RO | 735.98 | 0.00 | 245.84 | 981.82 |
| | 41159073 | 31-OCT-09 | 5625A-PRM SUPPO | 93.45 | 0.00 | 31.22 | 124.67 |
| | 41159766 | 31-OCT-09 | 5066A-DIRECWAY | 150.00 | 9.75 | 53.44 | 213.19 |

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 126 of 151 PageID: 126

Report Date : 09-NOV-11

ITEMIZED STATEMENT
------------------

Customer No :    13039-99798-03-KNI
Address :        38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:      09-NOV-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|-------------|-------------|---------|---------|-----|----------------|-------|
| | | | | Sub Total | 1543.29 | 9.75 | 518.92 | 2071.96 |
| NOV-2009 | 23013075 | 22-NOV-09 | WYNREWARDS CRDT | | (25.00) | 0.00 | 0.00 | (25.00) |
| | TA0044241 | 22-NOV-09 | T/A COMMISSIONS | | 2.40 | 0.00 | 0.82 | 3.22 |
| | 23013111 | 22-NOV-09 | WYNREWARDS 5% | | 29.75 | 0.00 | 9.50 | 39.25 |
| | 1044241 | 22-NOV-09 | GDS & INTERNET | | 4.35 | 0.00 | 1.45 | 5.80 |
| | 41208658 | 30-NOV-09 | Actual-1210A-MA | | 368.25 | 0.00 | 117.29 | 485.54 |
| | 41209823 | 30-NOV-09 | Actual-1000A-RO | | 552.37 | 0.00 | 175.94 | 728.31 |
| | 30377388 | 30-NOV-09 | NOV $1 WYN RWDS | | 2.00 | 0.00 | 0.63 | 2.63 |
| | 30376862 | 30-NOV-09 | NOV $1 VOICE RE | | 4.00 | 0.00 | 1.26 | 5.26 |
| | 30377029 | 30-NOV-09 | NOV $1 BRAND WE | | 8.00 | 0.00 | 2.50 | 10.50 |
| | 41196022 | 30-NOV-09 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 29.77 | 123.22 |
| | 41195104 | 30-NOV-09 | 5066A-DIRECWAY | | 150.00 | 9.75 | 50.96 | 210.71 |
| | | | | Sub Total | 1189.57 | 9.75 | 390.12 | 1589.44 |
| DEC-2009 | 23013436 | 22-DEC-09 | WYNREWARDS 5% | | 44.87 | 0.00 | 13.63 | 58.50 |
| | 1100388 | 24-DEC-09 | GDS & INTERNET | | 22.75 | 0.00 | 6.86 | 29.61 |
| | 41226671 | 31-DEC-09 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 28.32 | 121.77 |
| | 30388548 | 31-DEC-09 | DEC $1 VOICE RE | | 5.00 | 0.00 | 1.58 | 6.58 |
| | 30388908 | 31-DEC-09 | DEC $1 BRAND WE | | 9.00 | 0.00 | 2.77 | 11.77 |
| | 30389067 | 31-DEC-09 | DEC $1 WYN RWDS | | 2.00 | 0.00 | 0.60 | 2.60 |
| | 30384358 | 31-DEC-09 | DEC-09 PRORATE | | 154.84 | 10.06 | 49.99 | 214.89 |
| | 41235816 | 31-DEC-09 | Actual-1210A-MA | | 303.21 | 0.00 | 91.88 | 395.09 |
| | 41235198 | 31-DEC-09 | Actual-1000A-RO | | 454.82 | 0.00 | 137.80 | 592.62 |

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 127 of 151 PageID: 127

| | | | | | Sub Total | 1089.94 | 10.06 | 333.43 | 1433.43 |

| Mon-Year | Invoice No | Invoice Date | Description | | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---|---------|------------|----------------|-------|
| JAN-2010 | 23013777 | 22-JAN-10 | WYNREWARDS 5% | | 26.25 | 0.00 | 7.59 | 33.84 |
| | 1106997 | 29-JAN-10 | GDS & INTERNET | | 9.70 | 0.00 | 2.84 | 12.54 |
| | 41258255 | 31-JAN-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 49.27 | 219.67 |
| | 41257497 | 31-JAN-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 27.01 | 120.46 |

Page 4 of 11

Report Date : 09-NOV-11

ITEMIZED STATEMENT
--------------------

Customer No :    13039-99798-03-KNI
Address :        38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:      09-NOV-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | 30399522 | 31-JAN-10 | JAN $1 BRAND WE | | 12.00 | 0.00 | 3.51 | 15.51 |
| | 41275218 | 31-JAN-10 | Actual-1210A-MA | | 282.89 | 0.00 | 81.68 | 364.57 |
| | 41274656 | 31-JAN-10 | Actual-1000A-RO | | 424.34 | 0.00 | 122.70 | 547.04 |
| | | | | Sub Total | 1008.63 | 10.40 | 294.60 | 1313.63 |
| FEB-2010 | 23014205 | 22-FEB-10 | WYNREWARDS 5% | | 4.70 | 0.00 | 1.26 | 5.96 |
| | 41290400 | 28-FEB-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 25.57 | 119.02 |
| | 41303064 | 28-FEB-10 | Actual-1000A-RO | | 406.97 | 0.00 | 111.30 | 518.27 |
| | 41289827 | 28-FEB-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 46.62 | 217.02 |
| | 41302982 | 28-FEB-10 | Actual-1210A-MA | | 271.32 | 0.00 | 74.25 | 345.57 |
| | 30408386 | 28-FEB-10 | FEB $1 BRAND WE | | 14.00 | 0.00 | 3.86 | 17.86 |
| | | | | Sub Total | 950.44 | 10.40 | 262.86 | 1223.70 |
| MAR-2010 | 1113353 | 03-MAR-10 | GDS & INTERNET | | 23.75 | 0.00 | 6.53 | 30.28 |

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 128 of 151 PageID: 128

| Invoice No | Invoice Date | Description | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|
| 30412441 | 12-MAR-10 | '10 GLOBAL CONF | 999.00 | 0.00 | 258.73 | 1257.73 |
| 30415429 | 15-MAR-10 | JAN-DEC 2009 RE | (26.00) | 0.00 | 0.00 | (26.00) |
| 23014340 | 22-MAR-10 | WYNREWARDS 5% | 28.05 | 0.00 | 7.20 | 35.25 |
| 1119925 | 29-MAR-10 | GDS & INTERNET | 18.40 | 0.00 | 4.83 | 23.23 |
| 30424482 | 31-MAR-10 | MAR $1 BRAND WE | 14.00 | 0.00 | 3.65 | 17.65 |
| 41344277 | 31-MAR-10 | Actual-1210A-MA | 405.73 | 0.00 | 104.92 | 510.65 |
| 41323078 | 31-MAR-10 | 5066A-DIRECWAY | 160.00 | 10.40 | 44.07 | 214.47 |
| 41345711 | 31-MAR-10 | Actual-1000A-RO | 608.60 | 0.00 | 157.30 | 765.90 |
| 41323970 | 31-MAR-10 | 5625A-PRM SUPPO | 93.45 | 0.00 | 24.16 | 117.61 |
| 30425377 | 31-MAR-10 | MAR $1 WYN RWDS | 7.00 | 0.00 | 1.86 | 8.86 |
| | | Sub Total | 2331.98 | 10.40 | 613.25 | 2955.63 |

| Mon-Year | Invoice No | Invoice Date | Description | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|
| APR-2010 | 30429756 | 14-APR-10 | ONLINE LRNG LIB | 50.00 | 0.00 | 12.97 | 62.97 |
| | 1126303 | 18-APR-10 | GDS & INTERNET | 18.40 | 0.00 | 4.54 | 22.94 |
| | 23014842 | 22-APR-10 | WYNREWARDS 5% | 22.69 | 0.00 | 5.50 | 28.19 |
| | 41362712 | 30-APR-10 | 5625A-PRM SUPPO | 93.45 | 0.00 | 22.72 | 116.17 |

Page 5 of 11

Report Date : 09-NOV-11

ITEMIZED STATEMENT
--------------------

```
Customer No :    13039-99798-03-KNI
Address :        38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:      09-NOV-2011
```

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | 41375521 | 30-APR-10 | Actual-1210A-MA | | 518.81 | 0.00 | 126.04 | 644.85 |
| | 30436749 | 30-APR-10 | APR $4 WYN RWDS | | 16.00 | 0.00 | 3.90 | 19.90 |
| | 30436953 | 30-APR-10 | APR $1 BRAND WE | | 3.00 | 0.00 | 0.78 | 3.78 |
| | 41360455 | 30-APR-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 41.42 | 211.82 |
| | 41373344 | 30-APR-10 | Actual-1000A-RO | | 778.22 | 0.00 | 189.07 | 967.29 |
| | | | Sub Total | | 1660.57 | 10.40 | 406.94 | 2077.91 |

| Month | Ref | Date | Description | | Amount | Col2 | Col3 | Total |
|---|---|---|---|---|---|---|---|---|
| MAY-2010 | 23015215 | 22-MAY-10 | WYNREWARDS 5% | | 21.00 | 0.00 | 4.85 | 25.85 |
| | 1132874 | 23-MAY-10 | GDS & INTERNET | | 4.35 | 0.00 | 1.04 | 5.39 |
| | TM0132874 | 23-MAY-10 | MEMBER BENEFIT | | 24.52 | 0.00 | 5.60 | 30.12 |
| | 41414091 | 31-MAY-10 | Accrual-1000A-R | * | 888.12 | 0.00 | 202.51 | 1090.63 |
| | 41397220 | 31-MAY-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 21.31 | 114.76 |
| | 41395043 | 31-MAY-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 38.87 | 209.27 |
| | 41414680 | 31-MAY-10 | Accrual-1210A-M | * | 592.08 | 0.00 | 135.01 | 727.09 |
| | | | Sub Total | | 1783.52 | 10.40 | 409.19 | 2203.11 |
| JUN-2010 | 30446828 | 04-JUN-10 | OTA Credit | | (4.50) | 0.00 | 0.00 | (4.50) |
| | 1139545 | 20-JUN-10 | GDS & INTERNET | | 27.10 | 0.00 | 5.78 | 32.88 |
| | 41430822 | 30-JUN-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 36.23 | 206.63 |
| | 41430728 | 30-JUN-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 19.86 | 113.31 |
| | 41444834 | 30-JUN-10 | Accrual-1210A-M | * | 536.72 | 0.00 | 114.05 | 650.77 |
| | 41442949 | 30-JUN-10 | Accrual-1000A-R | * | 805.08 | 0.00 | 171.11 | 976.19 |
| | | | Sub Total | | 1617.85 | 10.40 | 347.03 | 1975.28 |
| JUL-2010 | TA0146381 | 18-JUL-10 | T/A COMMISSIONS | | 21.24 | 0.00 | 4.20 | 25.44 |
| | 41475191 | 31-JUL-10 | Accrual-1210A-M | * | 671.46 | 0.00 | 132.29 | 803.75 |
| | 41473323 | 31-JUL-10 | Accrual-1000A-R | * | 1007.19 | 0.00 | 198.41 | 1205.60 |
| | 41457063 | 31-JUL-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 33.58 | 203.98 |
| | 41456355 | 31-JUL-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 18.42 | 111.87 |

Page 6 of 11

Report Date : 09-NOV-11

ITEMIZED STATEMENT
--------------------

Customer No :  13039-99798-03-KNI
Address :      38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:    09-NOV-2011

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 130 of 151 PageID: 130

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | Sub Total | 1953.34 | 10.40 | 386.90 | 2350.64 |
| AUG-2010 | 23016173 | 22-AUG-10 | WYNREWARDS 5% | | 24.00 | 0.00 | 4.36 | 28.36 |
| | 41487239 | 31-AUG-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 31.03 | 201.43 |
| | 41487753 | 31-AUG-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 17.01 | 110.46 |
| | 41516262 | 31-AUG-10 | Accrual-1210A-M | * | 793.48 | 0.00 | 144.41 | 937.89 |
| | 41514692 | 31-AUG-10 | Accrual-1000A-R | * | 1190.22 | 0.00 | 216.61 | 1406.83 |
| | | | | Sub Total | 2261.15 | 10.40 | 413.42 | 2684.97 |
| SEP-2010 | 23016590 | 22-SEP-10 | WYNREWARDS 5% | | 7.87 | 0.00 | 1.30 | 9.17 |
| | 41525753 | 30-SEP-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 28.38 | 198.78 |
| | 41525311 | 30-SEP-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 15.57 | 109.02 |
| | 41548391 | 30-SEP-10 | Accrual-1210A-M | * | 603.68 | 0.00 | 100.54 | 704.22 |
| | 41547671 | 30-SEP-10 | Accrual-1000A-R | * | 905.52 | 0.00 | 150.79 | 1056.31 |
| | | | | Sub Total | 1770.52 | 10.40 | 296.58 | 2077.50 |
| OCT-2010 | 23016771 | 22-OCT-10 | WYNREWARDS 5% | | 12.49 | 0.00 | 1.88 | 14.37 |
| | 41572228 | 31-OCT-10 | Accrual-1210A-M | * | 506.62 | 0.00 | 76.74 | 583.36 |
| | 41561219 | 31-OCT-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 25.83 | 196.23 |
| | 41560038 | 31-OCT-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 14.16 | 107.61 |
| | 41571130 | 31-OCT-10 | Accrual-1000A-R | * | 759.93 | 0.00 | 115.14 | 875.07 |
| | | | | Sub Total | 1532.49 | 10.40 | 233.75 | 1776.64 |
| NOV-2010 | 41613772 | 30-NOV-10 | Accrual-1210A-M | * | 403.80 | 0.00 | 54.93 | 458.73 |
| | 41613361 | 30-NOV-10 | Accrual-1000A-R | * | 605.70 | 0.00 | 82.40 | 688.10 |
| | 41596042 | 30-NOV-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 23.19 | 193.59 |
| | 41596104 | 30-NOV-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 12.71 | 106.16 |

2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 131 of 151 PageID: 131

Page 9 of 13

Report Date : 09-NOV-11

ITEMIZED STATEMENT
---------------------

Customer No :    13039-99798-03-KNI
Address :        38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:      09-NOV-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|------------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | | | | | |
| | | | | Sub Total | 1262.95 | 10.40 | 173.23 | 1446.58 |
| | | | | | | | | |
| DEC-2010 | 23017411 | 22-DEC-10 | WYNREWARDS 5% | | 5.00 | 0.00 | 0.63 | 5.63 |
| | 41629859 | 31-DEC-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 20.54 | 190.94 |
| | 41628035 | 31-DEC-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 11.26 | 104.71 |
| | 41641058 | 31-DEC-10 | Accrual-1210A-M | * | 325.82 | 0.00 | 39.27 | 365.09 |
| | 41639605 | 31-DEC-10 | Accrual-1000A-R | * | 488.73 | 0.00 | 58.91 | 547.64 |
| | | | | Sub Total | 1073.00 | 10.40 | 130.61 | 1214.01 |
| | | | | | | | | |
| JAN-2011 | 41653969 | 31-JAN-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 10.61 | 104.06 |
| | 41679751 | 31-JAN-11 | Accrual-1210A-M | * | 304.56 | 0.00 | 34.57 | 339.13 |
| | 41677332 | 31-JAN-11 | Accrual-1000A-R | * | 456.84 | 0.00 | 51.84 | 508.68 |
| | 41653742 | 31-JAN-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 19.35 | 189.75 |
| | | | | Sub Total | 1014.85 | 10.40 | 116.37 | 1141.62 |
| | | | | | | | | |
| FEB-2011 | 41690106 | 28-FEB-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 16.96 | 187.36 |
| | 41703159 | 28-FEB-11 | Accrual-1210A-M | * | 299.58 | 0.00 | 29.79 | 329.37 |
| | 41691495 | 28-FEB-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 9.30 | 102.75 |
| | 41701285 | 28-FEB-11 | Accrual-1000A-R | * | 449.37 | 0.00 | 44.72 | 494.09 |
| | | | | Sub Total | 1002.40 | 10.40 | 100.77 | 1113.57 |

https://oracle.wvndhamworldwide.com:8005/OA CGI/FNDWRR.exe?temp id=2511283556                    11/9/2011

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 132 of 151 PageID: 132

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| MAR-2011 | 41721009 | 31-MAR-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 14.32 | 184.72 |
| | 41740928 | 31-MAR-11 | Accrual-1210A-M | * | 428.64 | 0.00 | 35.99 | 464.63 |
| | 41722318 | 31-MAR-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 7.85 | 101.30 |
| | 41739709 | 31-MAR-11 | Accrual-1000A-R | * | 642.96 | 0.00 | 54.01 | 696.97 |

Page 8 of 11

Report Date : 09-NOV-11

ITEMIZED STATEMENT
--------------------

Customer No :    13039-99798-03-KNI
Address :        38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:      09-NOV-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | | | | Sub Total | 1325.05 | 10.40 | 112.17 | 1447.62 |
| APR-2011 | 41753573 | 30-APR-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 11.76 | 182.16 |
| | 41770192 | 30-APR-11 | Accrual-1210A-M | * | 543.56 | 0.00 | 37.51 | 581.07 |
| | 41752542 | 30-APR-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 6.45 | 99.90 |
| | 41771424 | 30-APR-11 | Accrual-1000A-R | * | 815.34 | 0.00 | 56.26 | 871.60 |
| | | | | Sub Total | 1612.35 | 10.40 | 111.98 | 1734.73 |
| MAY-2011 | 41783416 | 31-MAY-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 5.00 | 98.45 |
| | 41789656 | 31-MAY-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 9.12 | 179.52 |
| | 41800963 | 31-MAY-11 | Accrual-1210A-M | * | 838.62 | 0.00 | 44.87 | 883.49 |
| | 41799739 | 31-MAY-11 | Accrual-1000A-R | * | 1257.93 | 0.00 | 67.30 | 1325.23 |

Case 2:13-cv-05834-ES-MAH Document 1 Filed 10/01/13 Page 133 of 151 PageID: 133

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | | | Sub Total | | 2350.00 | 10.40 | 126.29 | 2486.69 |
| JUN-2011 | 41819034 | 30-JUN-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 6.56 | 176.96 |
| | 41833995 | 30-JUN-11 | Accrual-1210A-M | * | 926.72 | 0.00 | 35.67 | 962.39 |
| | 41833252 | 30-JUN-11 | Accrual-1000A-R | * | 1390.08 | 0.00 | 53.52 | 1443.60 |
| | 41819188 | 30-JUN-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 3.60 | 97.05 |
| | | | Sub Total | | 2570.25 | 10.40 | 99.35 | 2680.00 |
| JUL-2011 | 41845915 | 31-JUL-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 3.92 | 174.32 |
| | 41846080 | 31-JUL-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 2.15 | 95.60 |
| | 41863886 | 31-JUL-11 | Accrual-1210A-M | * | 1052.32 | 0.00 | 24.20 | 1076.52 |
| | 41862597 | 31-JUL-11 | Accrual-1000A-R | * | 1578.48 | 0.00 | 36.31 | 1614.79 |

Page 9 of 11

Report Date : 09-NOV-11

ITEMIZED STATEMENT
--------------------

Customer No :   13039-99798-03-KNI
Address :       38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:     09-NOV-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | | | Sub Total | | 2884.25 | 10.40 | 66.58 | 2961.23 |
| AUG-2011 | 41902002 | 31-AUG-11 | Accrual-1210A-M | * | 992.22 | 0.00 | 7.44 | 999.66 |
| | 41884601 | 31-AUG-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 0.70 | 94.15 |
| | 41900993 | 31-AUG-11 | Accrual-1000A-R | * | 1488.33 | 0.00 | 11.16 | 1499.49 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 41883136 | 31-AUG-11 | 5066A-DIRECWAY | 160.00 | 10.40 | 1.28 | 171.68 |
| | | | Sub Total | 2734.00 | 10.40 | 20.58 | 2764.98 |
| SEP-2011 | 30619959 | 15-SEP-11 | ONLINE LRNG LIB | 50.00 | 0.00 | 0.00 | 50.00 |
| | 30629958 | 28-SEP-11 | GLOBAL CONFEREN | 999.00 | 0.00 | 0.00 | 999.00 |
| | 41906601 | 30-SEP-11 | 5625A-PRM SUPPO | 93.45 | 0.00 | 0.00 | 93.45 |
| | 41904780 | 30-SEP-11 | 5066A-DIRECWAY | 160.00 | 10.40 | 0.00 | 170.40 |
| | 41932553 | 30-SEP-11 | Accrual-1210A-M  * | 871.20 | 0.00 | 0.00 | 871.20 |
| | 41931680 | 30-SEP-11 | Accrual-1000A-R  * | 1306.80 | 0.00 | 0.00 | 1306.80 |
| | | | Sub Total | 3480.45 | 10.40 | 0.00 | 3490.85 |
| OCT-2011 | 41941935 | 31-OCT-11 | 5066A-DIRECWAY | 160.00 | 10.40 | 0.00 | 170.40 |
| | 41942990 | 31-OCT-11 | 5625A-PRM SUPPO | 98.12 | 0.00 | 0.00 | 98.12 |
| | 41959331 | 31-OCT-11 | Accrual-1000A-R  * | 1340.22 | 0.00 | 0.00 | 1340.22 |
| | 41960019 | 31-OCT-11 | Accrual-1210A-M  * | 893.48 | 0.00 | 0.00 | 893.48 |
| | | | Sub Total | 2491.82 | 10.40 | 0.00 | 2502.22 |
| | | | Grand Total | 52392.41 | 287.61 | 8903.94 | 61583.96 |

Report Date : 09-NOV-11

ITEMIZED STATEMENT
--------------------

Requested By: Jerilyn Marino


* Please note the accruals on your account are estimates.
  Make sure to promptly submit your actual gross room revenue and rooms sold.

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 134 of 151 PageID: 134

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 135 of 151 PageID: 135

******* END OF REPORT *******

Page 11 of 11

## Shipment Receipt

| | |
|---|---|
| Transaction Date: | 10 Nov 2011 |
| Tracking Number: | 1Z22445X0292585433 |

### 1  Address Information

**Ship To:**
Jain, Inc.
Anil Jain
Knights Inn
1895 Rich Ct
BEAVER CREEK OH 454322366
Telephone:(937) 352-0067
Residential

**Ship From:**
Wyndham Hotel Group - 22 Sylvan
Jerilyn Marino
22 Sylvan Way
Parsippany NJ 07054
Telephone:(973) 753-7253
**Return Address:**
Wyndham Hotel Group - 22 Sylvan
Jerilyn Marino
22 Sylvan Way
Parsippany NJ 07054
Telephone:(973) 753-7253

### 2  Package Information

| Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|
| 1. Letter | UPS Letter | | Reference # 1 - 006-5072 |

### 3  UPS Shipping Service and Shipping Options

**Service:**
UPS 2nd Day Air
**Guaranteed By:**
End of Day Monday, 11/14/11

| | |
|---|---|
| **Shipping Fees Subtotal:** | **15.90 USD** |
| Transportation | 11.20 USD |
| Fuel Surcharge | 1.95 USD |
| Residential Surcharge | 2.75 USD |

### 4  Payment Information

| Bill Shipping Charges to: | Shipper's Account 22445X |
|---|---|

A discount has been applied to the Daily rates for this shipment

| | |
|---|---|
| Total Charged: | **15.90 USD** |
| Negotiated Total: | **7.04 USD** |

Note: Your invoice may vary from the displayed reference rates.

* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

# EXHIBIT K



# WYNDHAM
## HOTEL GROUP

Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 □□fax (800) 880-9445
www.wyndhamworldwide.com

February 22, 2012

**VIA 2 DAY DELIVERY METHOD**

Mr. Anil Jain
Jain Inc.
38 South Allison Avenue
Xenia, OH 45385

RE:    **NOTICE OF TERMINATION of Franchise Agreement, dated March 26, 2004, (the "Agreement") between Jain Inc. ("you" or "your") and Knights Franchise Systems, Inc. ("we", "our" or "us") for the Knights® lodging facility located at Xenia, OH / #13039-99798-03 (the "Facility")**

Dear Mr. Jain:

We write to give you formal notice of the termination of the License granted under the Agreement to operate the Facility as part of the Knights System (the "Notice"). This termination is a result of your failure to cure your default under the Agreement, due to your failure to satisfy the required Insurance Standards and your failure to meet your financial obligations. The termination of your Agreement is effective as of the date of this letter (the "Termination Date").

Because your License is terminated, you must now perform your post-termination obligations such as removal of all items that display or refer to the Knights Inn brand at the Facility. The de-identification procedures are specified in the attachment to this letter. These de-identification procedures must be completed within 14 days after the date of this Notice.

You must also immediately pay us the full amount of all Recurring Fees and other charges due under the Agreement through the date you complete the de-identification process. We estimate that, as of February 21, 2012, you owe us $70,837.92 in Recurring Fees. This amount is described in more detail in the attached itemized statement. Additionally, you must pay us Liquidated Damages of $88,000.00 as specified in Section 18.1 of the Agreement. You must also pay Liquidated Damages of $1,000.00 for early termination of the Addendum to the Agreement for Satellite Connectivity Services (the "Addendum"). The Addendum has also terminated on the Termination Date.

# WYNDHAM
## HOTEL GROUP



















Mr. Anil Jain
February 22, 2012
Page Two

Please know that, because the license has terminated, you have also lost the right to continue to use the seamless interface version of your property management system. You must now make your own arrangements with the software vendor for a new license. If the Facility has WynGuest system installed, please be advised that due to the termination you will have limited functionality from the system. Should you wish to continue using an independent version of the software and be interested in a minimum continuation agreement of 24 months, you may contact Innlink Central Reservation Systems at 800-525-4658, an authorized reseller of the WynGuest product. If you are planning to migrate to another property management system in less than 24 months, you may contact the provider to expedite the installation. If you would like to inquire about the data maintained in the system, you may contact Scott Robertson at 506-631-2104 to obtain reporting of that data.

If you do not timely complete each of these post-termination obligations, we will refer this matter to our legal department to ensure that we recover from you all amounts owed and that all of your post-termination obligations to us are performed.

This Notice does not modify, replace or affect any default under the Agreement, or any other default and termination notices, if any, from us or any of our affiliates regarding the Facility. Please consider this letter to be a notice and demand for payment under any Guaranty of the Agreement, directed to all of your Guarantors.

If you have any questions regarding your obligations under this letter, please contact Larry Geer, Senior Director of Settlements at (973) 753-7131.

Sincerely,

Suzanne Fenimore
Director
Contracts & Compliance

Enclosures

cc: Ashima Jain (Guarantor)
Rajiv Bhatia
Larry Geer

## DE-IDENTIFICATION PROCEDURES

You must complete each of the following within 14 days after the Termination Date:

1. Remove, replace or cover with an opaque cover the primary Facility signage.

2. Remove all interior signage that contains Knights Marks.

3. Change advertising billboards to remove Knights Marks.

4. Stop answering Facility telephone as Knights guest lodging facility.

5. Remove Knights name and Marks from any domain name, advertising and brochures.

6. Return to us all confidential operations and training manuals.

7. Remove the Knights name and Marks from the following items:

   | | |
   |---|---|
   | Stationery, pads and pens | Soap/shampoo |
   | Directories and brochures | Key tags |
   | Business cards | Credit card imprinter |
   | Folios and registration cards | Laundry bags |
   | Do-not-disturb cards | Name tags/uniforms |
   | Comment cards | Ice buckets/trays |
   | Telephone plates | Ashtrays/matches |
   | Telephone dialing instructions | Plaques |
   | TV channel ID plates | Guest checks/receipts |
   | Rate/law cards | Menus |
   | Door signage | |

8. Paint over or remove any distinctive Knights trade dress, paint schemes or architectural features.

9. It is prohibited to re-name the Facility with a confusingly similar name or color scheme as a Knights facility.

10. Our quality assurance inspectors will visit the Facility at any time after 14 days after the Termination Date to verify that you have performed these de-identification obligations.

ITEMIZED STATEMENT
--------------------

As of Date (DD-MMM-YYYY):   21-FEB-2012
Customer No               :  13039-99798-03-KNI
Category Set              :
Category Group            :
Group No                  :
Bankruptcy                :  No Bankruptcy Sites
Disputed                  :  No
Finance Charges Included:   Yes

Page 1 of 11

Case 2:13-cv-05834-ES-MAH    Document 1    Filed 10/01/13    Page 141 of 151 PageID: 141

ITEMIZED STATEMENT
--------------------

Customer No :    13039-99798-03-KNI
Address :        38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:      21-FEB-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| MAY-2009 | 40985376 | 31-MAY-09 | 5625A-PRM SUPPO | | 89.00 | 0.00 | 10.01 | 99.01 |
| | 41006834 | 31-MAY-09 | Actual-1210A-MA | | 0.00 | 0.00 | 4.17 | 4.17 |
| | | | Sub Total | | 89.00 | 0.00 | 14.18 | 103.18 |
| JUN-2009 | 10356345 | 04-JUN-09 | GUEST SRVCS TRA | | 100.00 | 0.00 | 47.20 | 147.20 |
| | 10356344 | 04-JUN-09 | GUEST SATISFACT | | 20.00 | 0.00 | 9.44 | 29.44 |
| | 23011093 | 22-JUN-09 | WYNREWARDS CRDT | | (25.42) | 0.00 | 0.00 | (25.42) |
| | 23011087 | 22-JUN-09 | WYNREWARDS 5% | | 71.10 | 0.00 | 32.47 | 103.57 |
| | 1010149 | 25-JUN-09 | GDS & INTERNET | | 23.75 | 0.00 | 10.91 | 34.66 |
| | TC0010149 | 25-JUN-09 | T/A COMM SERVIC | | 3.56 | 0.00 | 1.67 | 5.23 |
| | TA0010149 | 25-JUN-09 | T/A COMMISSIONS | | 45.89 | 0.00 | 20.94 | 66.83 |
| | TM0010149 | 25-JUN-09 | MEMBER BENEFIT | | 22.80 | 0.00 | 10.33 | 33.13 |
| | 41014957 | 30-JUN-09 | 5625A-PRM SUPPO | | 89.00 | 0.00 | 40.70 | 129.70 |
| | 41013213 | 30-JUN-09 | 5066A-DIRECWAY | | 150.00 | 9.75 | 73.04 | 232.79 |
| | 41038843 | 30-JUN-09 | Actual-1210A-MA | | 537.97 | 0.00 | 245.61 | 783.58 |
| | 41041298 | 30-JUN-09 | Actual-1000A-RO | | 806.95 | 0.00 | 368.37 | 1175.32 |
| | | | Sub Total | | 1845.60 | 9.75 | 860.68 | 2716.03 |
| JUL-2009 | 23011412 | 22-JUL-09 | WYNREWARDS 5% | | 25.15 | 0.00 | 11.11 | 36.26 |
| | TA0016954 | 23-JUL-09 | T/A COMMISSIONS | | 4.50 | 0.00 | 2.01 | 6.51 |
| | 1016954 | 23-JUL-09 | GDS & INTERNET | | 18.40 | 0.00 | 8.24 | 26.64 |
| | 30336762 | 31-JUL-09 | JULY-$1 VOICE R | | 6.00 | 0.00 | 2.59 | 8.59 |
| | 41072318 | 31-JUL-09 | Actual-1000A-RO | | 1020.43 | 0.00 | 450.11 | 1470.54 |
| | 41072003 | 31-JUL-09 | Actual-1210A-MA | | 680.29 | 0.00 | 299.88 | 980.17 |
| | 41051741 | 31-JUL-09 | 5625A-PRM SUPPO | | 89.00 | 0.00 | 39.31 | 128.31 |
| | | | Sub Total | | 1843.77 | 0.00 | 813.25 | 2657.02 |
| AUG-2009 | 23011623 | 22-AUG-09 | WYNREWARDS 5% | | 102.80 | 0.00 | 43.72 | 146.52 |
| | TA0023775 | 24-AUG-09 | T/A COMMISSIONS | | 73.80 | 0.00 | 31.40 | 105.20 |
| | 1023775 | 24-AUG-09 | GDS & INTERNET | | 41.15 | 0.00 | 17.60 | 58.75 |

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 142 of 151 PageID: 142

ITEMIZED STATEMENT
--------------------

Case 2:13-cv-05834-ES-MAH Document 1 Filed 10/01/13 Page 143 of 151 PageID: 143

Customer No :    13039-99798-03-KNI
Address :        38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:      21-FEB-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|-----|----------------|-------|
|          | TC0023775 | 24-AUG-09 | T/A COMM SERVIC | 4.01 | 0.00 | 1.68 | 5.69 |
|          | TM0023775 | 24-AUG-09 | MEMBER BENEFIT | 4.50 | 0.00 | 1.94 | 6.44 |
|          | 30347747 | 31-AUG-09 | AUGUST-$1 VOICE | 6.00 | 0.00 | 2.50 | 8.50 |
|          | 41088447 | 31-AUG-09 | 5625A-PRM SUPPO | 89.00 | 0.00 | 37.98 | 126.98 |
|          | 41108325 | 31-AUG-09 | Actual-1000A-RO | 1085.59 | 0.00 | 462.48 | 1548.07 |
|          | 41108060 | 31-AUG-09 | Actual-1210A-MA | 723.73 | 0.00 | 308.38 | 1032.11 |
|          | 41089945 | 31-AUG-09 | 5066A-DIRECWAY | 150.00 | 9.75 | 68.16 | 227.91 |
|          | 30347900 | 31-AUG-09 | SEPT-$1 VOICE R | 8.00 | 0.00 | 3.34 | 11.34 |
|          |          |            | Sub Total | 2288.58 | 9.75 | 979.18 | 3277.51 |
| SEP-2009 | 1030687 | 22-SEP-09 | GDS & INTERNET | 38.80 | 0.00 | 15.88 | 54.68 |
|          | TC0030687 | 22-SEP-09 | T/A COMM SERVIC | 3.23 | 0.00 | 1.35 | 4.58 |
|          | TM0030687 | 22-SEP-09 | MEMBER BENEFIT | 5.70 | 0.00 | 2.40 | 8.10 |
|          | TA0030687 | 22-SEP-09 | T/A COMMISSIONS | 59.70 | 0.00 | 24.63 | 84.33 |
|          | 23012035 | 22-SEP-09 | WYNREWARDS 5% | 59.87 | 0.00 | 24.63 | 84.50 |
|          | 41123292 | 30-SEP-09 | 5066A-DIRECWAY | 150.00 | 9.75 | 65.68 | 225.43 |
|          | 41138744 | 30-SEP-09 | Actual-1210A-MA | 569.80 | 0.00 | 233.90 | 803.70 |
|          | 41125489 | 30-SEP-09 | 5625A-PRM SUPPO | 89.00 | 0.00 | 36.59 | 125.59 |
|          | 41138240 | 30-SEP-09 | Actual-1000A-RO | 854.70 | 0.00 | 350.89 | 1205.59 |
|          |          |            | Sub Total | 1830.80 | 9.75 | 755.95 | 2596.50 |
| OCT-2009 | 23012612 | 22-OCT-09 | WYNREWARDS 5% | 20.45 | 0.00 | 8.17 | 28.62 |
|          | 1037425 | 26-OCT-09 | GDS & INTERNET | 13.05 | 0.00 | 5.16 | 18.21 |
|          | TA0037425 | 26-OCT-09 | T/A COMMISSIONS | 10.20 | 0.00 | 4.03 | 14.23 |
|          | TM0037425 | 26-OCT-09 | MEMBER BENEFIT | 4.50 | 0.00 | 1.80 | 6.30 |
|          | 30375877 | 31-OCT-09 | OCT $4 WYN RWDS | 4.00 | 0.00 | 1.56 | 5.56 |
|          | 30375314 | 31-OCT-09 | OCT $1 VOICE RE | 6.00 | 0.00 | 2.32 | 8.32 |
|          | 30375592 | 31-OCT-09 | OCT $1 BRAND WE | 15.00 | 0.00 | 5.94 | 20.94 |
|          | 41174756 | 31-OCT-09 | Actual-1210A-MA | 490.66 | 0.00 | 194.13 | 684.79 |
|          | 41173914 | 31-OCT-09 | Actual-1000A-RO | 735.98 | 0.00 | 291.11 | 1027.09 |
|          | 41159073 | 31-OCT-09 | 5625A-PRM SUPPO | 93.45 | 0.00 | 36.97 | 130.42 |
|          | 41159766 | 31-OCT-09 | 5066A-DIRECWAY | 150.00 | 9.75 | 63.28 | 223.03 |

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 144 of 151 PageID: 144

Customer No :  13039-99798-03-KNI
Address :      38 SOUTH ALLISON AVENUE, XENIA, OH, 45385, US
As of Date:    21-FEB-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued Billing | Amount Tax | FinanceCharges | Total |
|----------|------------|--------------|-------------|---------|------------|----------------|-------|
| | | | Sub Total | 1543.29 | 9.75 | 614.47 | 2167.51 |
| NOV-2009 | 23013075 | 22-NOV-09 | WYNREWARDS CRDT | (25.00) | 0.00 | 0.00 | (25.00) |
| | TA0044241 | 22-NOV-09 | T/A COMMISSIONS | 2.40 | 0.00 | 0.98 | 3.38 |
| | 23013111 | 22-NOV-09 | WYNREWARDS 5% | 29.75 | 0.00 | 11.33 | 41.08 |
| | 1044241 | 22-NOV-09 | GDS & INTERNET | 4.35 | 0.00 | 1.73 | 6.08 |
| | 41208658 | 30-NOV-09 | Actual-1210A-MA | 368.25 | 0.00 | 139.94 | 508.19 |
| | 41209823 | 30-NOV-09 | Actual-1000A-RO | 552.37 | 0.00 | 209.91 | 762.28 |
| | 30377388 | 30-NOV-09 | NOV $1 WYN RWDS | 2.00 | 0.00 | 0.75 | 2.75 |
| | 30376862 | 30-NOV-09 | NOV $1 VOICE RE | 4.00 | 0.00 | 1.50 | 5.50 |
| | 30377029 | 30-NOV-09 | NOV $1 BRAND WE | 8.00 | 0.00 | 2.98 | 10.98 |
| | 41196022 | 30-NOV-09 | 5625A-PRM SUPPO | 93.45 | 0.00 | 35.52 | 128.97 |
| | 41195104 | 30-NOV-09 | 5066A-DIRECWAY | 150.00 | 9.75 | 60.80 | 220.55 |
| | | | Sub Total | 1189.57 | 9.75 | 465.44 | 1664.76 |
| DEC-2009 | 23013436 | 22-DEC-09 | WYNREWARDS 5% | 44.87 | 0.00 | 16.40 | 61.27 |
| | 1100388 | 24-DEC-09 | GDS & INTERNET | 22.75 | 0.00 | 8.25 | 31.00 |
| | 41226671 | 31-DEC-09 | 5625A-PRM SUPPO | 93.45 | 0.00 | 34.07 | 127.52 |
| | 30388548 | 31-DEC-09 | DEC $1 VOICE RE | 5.00 | 0.00 | 1.90 | 6.90 |
| | 30388908 | 31-DEC-09 | DEC $1 BRAND WE | 9.00 | 0.00 | 3.33 | 12.33 |
| | 30389067 | 31-DEC-09 | DEC $1 WYN RWDS | 2.00 | 0.00 | 0.72 | 2.72 |
| | 30384358 | 31-DEC-09 | DEC-09 PRORATE | 154.84 | 10.06 | 60.14 | 225.04 |
| | 41235816 | 31-DEC-09 | Actual-1210A-MA | 303.21 | 0.00 | 110.53 | 413.74 |
| | 41235198 | 31-DEC-09 | Actual-1000A-RO | 454.82 | 0.00 | 165.77 | 620.59 |
| | | | Sub Total | 1089.94 | 10.06 | 401.11 | 1501.11 |
| JAN-2010 | 23013777 | 22-JAN-10 | WYNREWARDS 5% | 26.25 | 0.00 | 9.21 | 35.46 |
| | 1106997 | 29-JAN-10 | GDS & INTERNET | 9.70 | 0.00 | 3.44 | 13.14 |
| | 41258255 | 31-JAN-10 | 5066A-DIRECWAY | 160.00 | 10.40 | 59.75 | 230.15 |
| | 41257497 | 31-JAN-10 | 5625A-PRM SUPPO | 93.45 | 0.00 | 32.76 | 126.21 |

Customer No :   13039-99798-03-KNI
Address :       38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:     21-FEB-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|------------|----------------|-------|
|  | 30399522 | 31-JAN-10 | JAN $1 BRAND WE | 12.00 | 0.00 | 4.26 | 16.26 |
|  | 41275218 | 31-JAN-10 | Actual-1210A-MA | 282.89 | 0.00 | 99.06 | 381.95 |
|  | 41274656 | 31-JAN-10 | Actual-1000A-RO | 424.34 | 0.00 | 148.81 | 573.15 |
|  |  |  | Sub Total | 1008.63 | 10.40 | 357.29 | 1376.32 |
| FEB-2010 | 23014205 | 22-FEB-10 | WYNREWARDS 5% | 4.70 | 0.00 | 1.54 | 6.24 |
|  | 41290400 | 28-FEB-10 | 5625A-PRM SUPPO | 93.45 | 0.00 | 31.32 | 124.77 |
|  | 41303064 | 28-FEB-10 | Actual-1000A-RO | 406.97 | 0.00 | 136.33 | 543.30 |
|  | 41289827 | 28-FEB-10 | 5066A-DIRECWAY | 160.00 | 10.40 | 57.10 | 227.50 |
|  | 41302982 | 28-FEB-10 | Actual-1210A-MA | 271.32 | 0.00 | 90.95 | 362.27 |
|  | 30408386 | 28-FEB-10 | FEB $1 BRAND WE | 14.00 | 0.00 | 4.73 | 18.73 |
|  |  |  | Sub Total | 950.44 | 10.40 | 321.97 | 1282.81 |
| MAR-2010 | 1113353 | 03-MAR-10 | GDS & INTERNET | 23.75 | 0.00 | 8.00 | 31.75 |
|  | 30412441 | 12-MAR-10 | '10 GLOBAL CONF | 999.00 | 0.00 | 320.16 | 1319.16 |
|  | 30415429 | 15-MAR-10 | JAN-DEC 2009 RE | (26.00) | 0.00 | 0.00 | (26.00) |
|  | 23014340 | 22-MAR-10 | WYNREWARDS 5% | 28.05 | 0.00 | 8.91 | 36.96 |
|  | 1119925 | 29-MAR-10 | GDS & INTERNET | 18.40 | 0.00 | 5.98 | 24.38 |
|  | 41323078 | 31-MAR-10 | 5066A-DIRECWAY | 160.00 | 10.40 | 54.55 | 224.95 |
|  | 41344277 | 31-MAR-10 | Actual-1210A-MA | 405.73 | 0.00 | 129.88 | 535.61 |
|  | 30425377 | 31-MAR-10 | MAR $1 WYN RWDS | 7.00 | 0.00 | 2.30 | 9.30 |
|  | 30424482 | 31-MAR-10 | MAR $1 BRAND WE | 14.00 | 0.00 | 4.52 | 18.52 |
|  | 41345711 | 31-MAR-10 | Actual-1000A-RO | 608.60 | 0.00 | 194.72 | 803.32 |
|  | 41323970 | 31-MAR-10 | 5625A-PRM SUPPO | 93.45 | 0.00 | 29.91 | 123.36 |
|  |  |  | Sub Total | 2331.98 | 10.40 | 758.93 | 3101.31 |
| APR-2010 | 30429756 | 14-APR-10 | ONLINE LRNG LIB | 50.00 | 0.00 | 16.06 | 66.06 |
|  | 1126303 | 18-APR-10 | GDS & INTERNET | 18.40 | 0.00 | 5.69 | 24.09 |
|  | 23014842 | 22-APR-10 | WYNREWARDS 5% | 22.69 | 0.00 | 6.89 | 29.58 |
|  | 41362712 | 30-APR-10 | 5625A-PRM SUPPO | 93.45 | 0.00 | 28.47 | 121.92 |

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 146 of 151 PageID: 146

Customer No :   13039-99798-03-KNI
Address :       38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:     21-FEB-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|------------|--------------|-------------|---------|---------|------------|----------------|-------|
|          | 41373344   | 30-APR-10    | Actual-1000A-RO |     | 778.22  | 0.00       | 236.92         | 1015.14 |
|          | 41360455   | 30-APR-10    | 5066A-DIRECWAY |      | 160.00  | 10.40      | 51.90          | 222.30 |
|          | 30436953   | 30-APR-10    | APR $1 BRAND WE |     | 3.00    | 0.00       | 0.98           | 3.98 |
|          | 30436749   | 30-APR-10    | APR $4 WYN RWDS |     | 16.00   | 0.00       | 4.89           | 20.89 |
|          | 41375521   | 30-APR-10    | Actual-1210A-MA |     | 518.81  | 0.00       | 157.94         | 676.75 |
|          |            |              | Sub Total   |         | 1660.57 | 10.40      | 509.74         | 2180.71 |
| MAY-2010 | 23015215   | 22-MAY-10    | WYNREWARDS 5% |       | 21.00   | 0.00       | 6.16           | 27.16 |
|          | 1132874    | 23-MAY-10    | GDS & INTERNET |      | 4.35    | 0.00       | 1.32           | 5.67 |
|          | TM0132874  | 23-MAY-10    | MEMBER BENEFIT |      | 24.52   | 0.00       | 7.11           | 31.63 |
|          | 41414091   | 31-MAY-10    | Accrual-1000A-R | *   | 888.12  | 0.00       | 257.14         | 1145.26 |
|          | 41395043   | 31-MAY-10    | 5066A-DIRECWAY |      | 160.00  | 10.40      | 49.35          | 219.75 |
|          | 41414680   | 31-MAY-10    | Accrual-1210A-M | *   | 592.08  | 0.00       | 171.43         | 763.51 |
|          | 41397220   | 31-MAY-10    | 5625A-PRM SUPPO |     | 93.45   | 0.00       | 27.06          | 120.51 |
|          |            |              | Sub Total   |         | 1783.52 | 10.40      | 519.57         | 2313.49 |
| JUN-2010 | 30446828   | 04-JUN-10    | OTA Credit  |         | (4.50)  | 0.00       | 0.00           | (4.50) |
|          | 1139545    | 20-JUN-10    | GDS & INTERNET |      | 27.10   | 0.00       | 7.45           | 34.55 |
|          | 41442949   | 30-JUN-10    | Accrual-1000A-R | *   | 805.08  | 0.00       | 220.63         | 1025.71 |
|          | 41430728   | 30-JUN-10    | 5625A-PRM SUPPO |     | 93.45   | 0.00       | 25.61          | 119.06 |
|          | 41444834   | 30-JUN-10    | Accrual-1210A-M | *   | 536.72  | 0.00       | 147.06         | 683.78 |
|          | 41430822   | 30-JUN-10    | 5066A-DIRECWAY |      | 160.00  | 10.40      | 46.71          | 217.11 |
|          |            |              | Sub Total   |         | 1617.85 | 10.40      | 447.46         | 2075.71 |
| JUL-2010 | TA0146381  | 18-JUL-10    | T/A COMMISSIONS |     | 21.24   | 0.00       | 5.51           | 26.75 |
|          | 41475191   | 31-JUL-10    | Accrual-1210A-M | *   | 671.46  | 0.00       | 173.59         | 845.05 |
|          | 41473323   | 31-JUL-10    | Accrual-1000A-R | *   | 1007.19 | 0.00       | 260.35         | 1267.54 |
|          | 41457063   | 31-JUL-10    | 5066A-DIRECWAY |      | 160.00  | 10.40      | 44.06          | 214.46 |
|          | 41456355   | 31-JUL-10    | 5625A-PRM SUPPO |     | 93.45   | 0.00       | 24.17          | 117.62 |

ITEMIZED STATEMENT
--------------------

Customer No :   13039-99798-03-KNI
Address :       38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:     21-FEB-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | | | | Sub Total | 1953.34 | 10.40 | 507.68 | 2471.42 |
| AUG-2010 | 23016173 | 22-AUG-10 | WYNREWARDS 5% | | 24.00 | 0.00 | 5.83 | 29.83 |
| | 41487239 | 31-AUG-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 41.51 | 211.91 |
| | 41487753 | 31-AUG-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 22.76 | 116.21 |
| | 41516262 | 31-AUG-10 | Accrual-1210A-M | * | 793.48 | 0.00 | 193.21 | 986.69 |
| | 41514692 | 31-AUG-10 | Accrual-1000A-R | * | 1190.22 | 0.00 | 289.81 | 1480.03 |
| | | | | Sub Total | 2261.15 | 10.40 | 553.12 | 2824.67 |
| SEP-2010 | 23016590 | 22-SEP-10 | WYNREWARDS 5% | | 7.87 | 0.00 | 1.78 | 9.65 |
| | 41525753 | 30-SEP-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 38.86 | 209.26 |
| | 41525311 | 30-SEP-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 21.32 | 114.77 |
| | 41548391 | 30-SEP-10 | Accrual-1210A-M | * | 603.68 | 0.00 | 137.68 | 741.36 |
| | 41547671 | 30-SEP-10 | Accrual-1000A-R | * | 905.52 | 0.00 | 206.49 | 1112.01 |
| | | | | Sub Total | 1770.52 | 10.40 | 406.13 | 2187.05 |
| OCT-2010 | 23016771 | 22-OCT-10 | WYNREWARDS 5% | | 12.49 | 0.00 | 2.64 | 15.13 |
| | 41572228 | 31-OCT-10 | Accrual-1210A-M | * | 506.62 | 0.00 | 107.89 | 614.51 |
| | 41561219 | 31-OCT-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 36.31 | 206.71 |
| | 41560038 | 31-OCT-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 19.91 | 113.36 |
| | 41571130 | 31-OCT-10 | Accrual-1000A-R | * | 759.93 | 0.00 | 161.88 | 921.81 |
| | | | | Sub Total | 1532.49 | 10.40 | 328.63 | 1871.52 |
| NOV-2010 | 41613772 | 30-NOV-10 | Accrual-1210A-M | * | 403.80 | 0.00 | 79.77 | 483.57 |
| | 41613361 | 30-NOV-10 | Accrual-1000A-R | * | 605.70 | 0.00 | 119.66 | 725.36 |
| | 41596042 | 30-NOV-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 33.67 | 204.07 |
| | 41596104 | 30-NOV-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 18.46 | 111.91 |

Customer No :     13039-99798-03-KNI
Address :         38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:       21-FEB-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----|----------------|-------|
| | | | | | ============= | ============= | ============= | ============= |
| | | | Sub Total | | 1262.95 | 10.40 | 251.56 | 1524.91 |
| | | | | | ============= | ============= | ============= | ============= |
| DEC-2010 | 23017411 | 22-DEC-10 | WYNREWARDS 5% | | 5.00 | 0.00 | 0.95 | 5.95 |
| | 41629859 | 31-DEC-10 | 5066A-DIRECWAY | | 160.00 | 10.40 | 31.02 | 201.42 |
| | 41628035 | 31-DEC-10 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 17.01 | 110.46 |
| | 41641058 | 31-DEC-10 | Accrual-1210A-M | * | 325.82 | 0.00 | 59.31 | 385.13 |
| | 41639605 | 31-DEC-10 | Accrual-1000A-R | * | 488.73 | 0.00 | 88.98 | 577.71 |
| | | | | | ============= | ============= | ============= | ============= |
| | | | Sub Total | | 1073.00 | 10.40 | 197.27 | 1280.67 |
| | | | | | ============= | ============= | ============= | ============= |
| JAN-2011 | 41653969 | 31-JAN-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 16.36 | 109.81 |
| | 41677332 | 31-JAN-11 | Accrual-1000A-R | * | 456.84 | 0.00 | 79.93 | 536.77 |
| | 41653742 | 31-JAN-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 29.83 | 200.23 |
| | 41679751 | 31-JAN-11 | Accrual-1210A-M | * | 304.56 | 0.00 | 53.30 | 357.86 |
| | | | | | ============= | ============= | ============= | ============= |
| | | | Sub Total | | 1014.85 | 10.40 | 179.42 | 1204.67 |
| | | | | | ============= | ============= | ============= | ============= |
| FEB-2011 | 41703159 | 28-FEB-11 | Accrual-1210A-M | * | 299.58 | 0.00 | 48.20 | 347.78 |
| | 41691495 | 28-FEB-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 15.05 | 108.50 |
| | 41690106 | 28-FEB-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 27.44 | 197.84 |
| | 41701285 | 28-FEB-11 | Accrual-1000A-R | * | 449.37 | 0.00 | 72.37 | 521.74 |
| | | | | | ============= | ============= | ============= | ============= |
| | | | Sub Total | | 1002.40 | 10.40 | 163.06 | 1175.86 |
| | | | | | ============= | ============= | ============= | ============= |
| MAR-2011 | 41739709 | 31-MAR-11 | Accrual-1000A-R | * | 642.96 | 0.00 | 93.56 | 736.52 |
| | 41740928 | 31-MAR-11 | Accrual-1210A-M | * | 428.64 | 0.00 | 62.34 | 490.98 |
| | 41721009 | 31-MAR-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 24.80 | 195.20 |
| | 41722318 | 31-MAR-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 13.60 | 107.05 |

ITEMIZED STATEMENT
-------------------

Customer No : 13039-99798-03-KNI
Address :     38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:   21-FEB-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | Sub Total | | 1325.05 | 10.40 | 194.30 | 1529.75 |
| APR-2011 | 41771424 | 30-APR-11 | Accrual-1000A-R | * | 815.34 | 0.00 | 106.41 | 921.75 |
| | 41752542 | 30-APR-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 12.20 | 105.65 |
| | 41753573 | 30-APR-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 22.24 | 192.64 |
| | 41770192 | 30-APR-11 | Accrual-1210A-M | * | 543.56 | 0.00 | 70.95 | 614.51 |
| | | | Sub Total | | 1612.35 | 10.40 | 211.80 | 1834.55 |
| MAY-2011 | 41789656 | 31-MAY-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 19.60 | 190.00 |
| | 41799739 | 31-MAY-11 | Accrual-1000A-R | * | 1257.93 | 0.00 | 144.67 | 1402.60 |
| | 41800963 | 31-MAY-11 | Accrual-1210A-M | * | 838.62 | 0.00 | 96.45 | 935.07 |
| | 41783416 | 31-MAY-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 10.75 | 104.20 |
| | | | Sub Total | | 2350.00 | 10.40 | 271.47 | 2631.87 |
| JUN-2011 | 41819188 | 30-JUN-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 9.35 | 102.80 |
| | 41833252 | 30-JUN-11 | Accrual-1000A-R | * | 1390.08 | 0.00 | 139.02 | 1529.10 |
| | 41833995 | 30-JUN-11 | Accrual-1210A-M | * | 926.72 | 0.00 | 92.65 | 1019.37 |
| | 41819034 | 30-JUN-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 17.04 | 187.44 |
| | | | Sub Total | | 2570.25 | 10.40 | 258.06 | 2838.71 |
| JUL-2011 | 41845915 | 31-JUL-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 14.40 | 184.80 |
| | 41846080 | 31-JUL-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 7.90 | 101.35 |
| | 41862597 | 31-JUL-11 | Accrual-1000A-R | * | 1578.48 | 0.00 | 133.40 | 1711.88 |
| | 41863886 | 31-JUL-11 | Accrual-1210A-M | * | 1052.32 | 0.00 | 88.91 | 1141.23 |

ITEMIZED STATEMENT
--------------------

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 150 of 151 PageID: 150

Customer No :   13039-99798-03-KNI
Address :       38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date:     21-FEB-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | | ============= | ============= | ============= | ============= |
| | | | Sub Total | | 2884.25 | 10.40 | 244.61 | 3139.26 |
| | | | | | ============= | ============= | ============= | ============= |
| AUG-2011 | 41902002 | 31-AUG-11 | Accrual-1210A-M | * | 992.22 | 0.00 | 68.46 | 1060.68 |
| | 41884601 | 31-AUG-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 6.45 | 99.90 |
| | 41900993 | 31-AUG-11 | Accrual-1000A-R | * | 1488.33 | 0.00 | 102.69 | 1591.02 |
| | 41883136 | 31-AUG-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 11.76 | 182.16 |
| | | | | | ============= | ============= | ============= | ============= |
| | | | Sub Total | | 2734.00 | 10.40 | 189.36 | 2933.76 |
| | | | | | ============= | ============= | ============= | ============= |
| SEP-2011 | 30619959 | 15-SEP-11 | ONLINE LRNG LIB | | 50.00 | 0.00 | 3.09 | 53.09 |
| | 30629958 | 28-SEP-11 | GLOBAL CONFEREN | | 999.00 | 0.00 | 0.00 | 999.00 |
| | 41904780 | 30-SEP-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 9.20 | 179.60 |
| | 41932553 | 30-SEP-11 | Accrual-1210A-M | * | 871.20 | 0.00 | 47.04 | 918.24 |
| | 41906601 | 30-SEP-11 | 5625A-PRM SUPPO | | 93.45 | 0.00 | 5.05 | 98.50 |
| | 41931680 | 30-SEP-11 | Accrual-1000A-R | * | 1306.80 | 0.00 | 70.57 | 1377.37 |
| | | | | | ============= | ============= | ============= | ============= |
| | | | Sub Total | | 3480.45 | 10.40 | 134.95 | 3625.80 |
| | | | | | ============= | ============= | ============= | ============= |
| OCT-2011 | 41960019 | 31-OCT-11 | Accrual-1210A-M | * | 893.48 | 0.00 | 34.40 | 927.88 |
| | 41941935 | 31-OCT-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 6.56 | 176.96 |
| | 41959331 | 31-OCT-11 | Accrual-1000A-R | * | 1340.22 | 0.00 | 51.59 | 1391.81 |
| | 41942990 | 31-OCT-11 | 5625A-PRM SUPPO | | 98.12 | 0.00 | 3.78 | 101.90 |
| | | | | | ============= | ============= | ============= | ============= |
| | | | Sub Total | | 2491.82 | 10.40 | 96.33 | 2598.55 |
| | | | | | ============= | ============= | ============= | ============= |
| NOV-2011 | 41977152 | 30-NOV-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 4.00 | 174.40 |
| | 41978734 | 30-NOV-11 | 5625A-PRM SUPPO | | 98.12 | 0.00 | 2.30 | 100.42 |
| | 41992699 | 30-NOV-11 | Accrual-1000A-R | * | 1187.79 | 0.00 | 27.91 | 1215.70 |
| | 41995294 | 30-NOV-11 | Accrual-1210A-M | * | 791.86 | 0.00 | 18.60 | 810.46 |

Page 10 of 11

Customer No : 13039-99798-03-KNI
Address : 38 SOUTH ALLISON AVENUE,XENIA,OH,45385,US
As of Date: 21-FEB-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | Sub Total | 2237.77 | 10.40 | 52.81 | 2300.98 |
| DEC-2011 | 42007204 | 31-DEC-11 | 5625A-PRM SUPPO | | 98.12 | 0.00 | 0.78 | 98.90 |
| | 42007145 | 31-DEC-11 | 5066A-DIRECWAY | | 160.00 | 10.40 | 1.36 | 171.76 |
| | 42020682 | 31-DEC-11 | Accrual-1210A-M | * | 680.96 | 0.00 | 5.45 | 686.41 |
| | 42021382 | 31-DEC-11 | Accrual-1000A-R | * | 1021.44 | 0.00 | 8.17 | 1029.61 |
| | | | | Sub Total | 1960.52 | 10.40 | 15.76 | 1986.68 |
| JAN-2012 | 42057434 | 31-JAN-12 | Accrual-1000A-R | * | 956.85 | 0.00 | 0.00 | 956.85 |
| | 42035148 | 31-JAN-12 | 5066A-DIRECWAY | | 160.00 | 10.40 | 0.00 | 170.40 |
| | 42035638 | 31-JAN-12 | 5625A-PRM SUPPO | | 98.12 | 0.00 | 0.00 | 98.12 |
| | 42058607 | 31-JAN-12 | Accrual-1210A-M | * | 637.90 | 0.00 | 0.00 | 637.90 |
| | | | | Sub Total | 1852.87 | 10.40 | 0.00 | 1863.27 |
| | | | | Grand Total | 58443.57 | 318.81 | 12075.54 | 70837.92 |

Requested By: Brenda Melendez

* Please note the accruals on your account are estimates.
  Make sure to promptly submit your actual gross room revenue and rooms sold.

******* END OF REPORT *******

Case 2:13-cv-05834-ES-MAH   Document 1   Filed 10/01/13   Page 151 of 151 PageID: 151